1

1            UNITED STATES DISTRICT COURT

2            WESTERN DISTRICT OF NEW YORK

3

4    - - - - - - - - - - - - - -X
     UNITED STATES OF AMERICA            15-CR-157(A)

5
     vs.
6                                        Buffalo, New York
     COREY KRUG,                         January 21, 2016
7             Defendant.                 10:59 a.m.
     - - - - - - - - - - - - - -X

8

9              TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE H. KENNETH SCHROEDER, JR.
10              UNITED STATES MAGISTRATE JUDGE

11

12                  WILLIAM J. HOCHUL, ESQ.
                    United States Attorney
                    BY: JOHN E. ROGOWSKI, ESQ.
13                  Assistant United States Attorney
                    138 Delaware Avenue
14                  Buffalo, New York 14202

15
                    CONNORS, LLP
16                  BY:  TERRENCE M. CONNORS, ESQ.
                    1000 Liberty Building
17                  424 Main Street
                    Buffalo, New York 14202
18                  Appearing on behalf of the Defendant

19

20
     AUDIO RECORDER:    Llane M. Guidotti
21

22   TRANSCRIBER:       Christi A. Macri, FAPR-CRR
                        Kenneth B. Keating Federal Building
23                      100 State Street, Room 2120
                        Rochester, New York 14614
24

25   (Proceedings recorded by electronic sound recording,
     transcript produced by computer).

**P R O C E E D I N G S**

*    *    *

(**WHEREUPON**, the defendant is present).

**THE CLERK:** United States versus Corey Krug, Docket No. 15-CR-157(A).  This is argument on pretrial motions.

Assistant United States Attorney John Rogowski appearing on behalf of the Government.

And Terrence Connors appearing with defendant.

**MAGISTRATE JUDGE SCHROEDER:**  Good morning.

**MR. CONNORS:** Good morning, Your Honor.

**MR. ROGOWSKI:** Good morning, Your Honor.

**MAGISTRATE JUDGE SCHROEDER:**  We're here for argument of defendant's pretrial motions.  Are we ready to proceed?

**MR. CONNORS:** We are.

**MAGISTRATE JUDGE SCHROEDER:**  All right. Mr. Connors.

**MR. CONNORS:** May it please the Court, Your Honor, on May 8th, 2015, a federal grand jury was empaneled to hear allegations against police officer Corey Krug.

That day was the commencement of the grand jury presentation with respect to three series of allegations.  No. 1 was an allegation that allegedly occurred on November 27th, 2014, the Devin Ford incident.  You may remember it was on

1    Thanksgiving eve, about six months prior to the time that the

2    grand jury was empaneled.

3         The other item for consideration by the grand

4    jurors was a February 4th, 2011 incident, the arrest of Daniel

5    Rashada, something that occurred four years and seven months

6    prior to the impaneling of the grand jury.

7         The last incident for consideration was an incident

8    involving Marcus Worthy.  That allegedly occurred on

9    August 29th, 2010, almost five years to the day when the

10   indictment eventually gets returned.

11        **MAGISTRATE JUDGE SCHROEDER:**  Would you not agree

12   the statute of limitations had not run on any of those events?

13        **MR. CONNORS:** I do agree.  There was two days left

14   on the statute of limitations for Marcus Worthy.

15        And you may note in some of the documents that both

16   Jack and I have submitted, sometimes it's referred to as the

17   August 27th date, sometimes August 28th.  We now believe, for

18   the benefit of the Court, it was -- August 27th was the return

19   of the Worthy indictment, two days before the statute of

20   limitations expired.

21        But what I'd like to bring to your attention is a

22   matter that's I think unusual, but the subject of some review

23   by us in our motions because while that grand jury was

24   considering the evidence, while they were deliberating in an

25   impartial and unbiased fashion as they are required to by

1  statute, a criminal complaint was filed against Corey.

2          **MAGISTRATE JUDGE SCHROEDER:**  On two of the events.

3          **MR. CONNORS:** On August 12th, 2015, on one of the

4  events.

5          **MAGISTRATE JUDGE SCHROEDER:**  One of the events.

6          **MR. CONNORS:** Interestingly, Your Honor, the event

7  that was not stale, not timely, the Thanksgiving eve event.

8  Why that criminal complaint in all its detail had to be filed

9  is something that escapes me, but we do think it's something

10 that you should consider because you have the grand jury

11 considering evidence involving three incidents.

12         Then all of a sudden there's a criminal complaint

13 filed in which the Government says we believe there's probable

14 cause to arrest and charge Officer Krug, and then a swarm of

15 media attaches; the video gets played again from Thanksgiving

16 eve, there's coverage on all the outlets, all the stations.

17 Frankly, I think even this one there was an AP outlet as well

18 that was covered.

19         So you have a situation where grand jurors are

20 supposedly deliberating and considering and they have

21 essentially been told publicly that we believe that there is

22 probable cause and here it is laid out in a sworn affidavit.

23         So that -- that particular event precedes the

24 return of the first indictment because it was roughly 16 days

25 later that the indictment of Corey Krug for the Marcus Worthy

1   incident occurs.

2          That's the one that has the statute of limitations

3   just about to expire.  And then a week later the superseding

4   indictment is returned naming all three of the incidents in a

5   superseding indictment.  Years apart, but, nevertheless,

6   joined for trial, which would be the subject of one of our

7   arguments today.

8          **MAGISTRATE JUDGE SCHROEDER:**  On that, so you don't

9   take up time needlessly, the severance motion has got to be

10  considered by the trial judge.

11         **MR. CONNORS:** I did know in my research that some of

12  the severance motions were considered by some of the other

13  magistrates before and with a recommendation to the presiding

14  Article III judge.

15         **MAGISTRATE JUDGE SCHROEDER:**  Right.  But that's

16  been changed and, in fact, it expressly states in the

17  scheduling order all motions for severance are to be made to

18  the trial judge because there was an area of doubt for some

19  period of time until finally the Second Circuit Court of

20  Appeals said that severance motions are for the Article III

21  judge.

22         **MR. CONNORS:** Yes, thank you.  That will cut us a

23  little bit short, but it does -- I did think perhaps a

24  recommendation would still be in order.

25         But, nevertheless --

1          **MAGISTRATE JUDGE SCHROEDER:**  But I haven't had that

2   referred to me, so I wouldn't have jurisdiction.  If the

3   Article III judge doesn't refer the issue, we don't have it

4   under the statute.

5          **MR. CONNORS:** So on the referral order it has to

6   specifically say consider Rule 8(a) or 14(a) severance motions

7   as well?

8          **MAGISTRATE JUDGE SCHROEDER:**  Right.

9          **MR. CONNORS:** Okay, thank you for telling me that.

10         Well, I've got a fair amount to talk about on the

11  pre-indictment delay.  And we've been here before, we visited

12  this issue once before, Your Honor.  This one is a little

13  different and I think in some respects far more interesting

14  and a much better argument than the last time we appeared

15  before you to make this on another indictment.

16         I understand full well, and I've been told in every

17  presentation by the Government that the statute of limitations

18  is the primary guarantee against stale and untimely charges.

19  I get that, I understand that.

20         I go into this argument with that as a given, but

21  it's not the only protection for the public against stale and

22  untimely charges.  Without question, the due process clause

23  allows you to challenge an indictment that's old, untimely,

24  maybe within the statute of limitations if you can demonstrate

25  a violation of due process of law, and we believe we can in

1  this particular case.

2          **MAGISTRATE JUDGE SCHROEDER:**  But the case law would

3  say the violation of due process is one in which the delay was

4  done for the benefit of the prosecution to obtain an

5  advantage.

6          **MR. CONNORS:** A tactical advantage.  I think I can

7  establish that here.  You know, it's interesting, I was

8  telling Jack earlier I must have read every speedy trial case

9  in the last two days preparing for this, and even within our

10 circuit there's a split on the quality of analysis that has to

11 be done in determining what you must show under due process

12 claim.

13          But before I get to that, in my preparation for

14 this I came across an issue that I'd like to preserve, if

15 possible.  I recognize that it wasn't specifically identified

16 in our brief, but it's simply another ground for the

17 pre-indictment delay.

18          I believe that you can effectively argue in this

19 particular situation that the Sixth Amendment right to a

20 speedy trial applies as well, not just the Fifth Amendment

21 right to due process, and this is why:

22          In the seminal case on this, *U.S. vs. Marion*, in

23 1971, which I think is the last time the Supreme Court has

24 visited the issue of Sixth Amendment applicable in a

25 pre-indictment posture.  There's been a lot of case law in the

1   circuit since then, and it's not -- clearly not all in my

2   favor.

3           But essentially what *Marion* said was that an

4   accused shall enjoy the right to a speedy trial, but the

5   definition of accused was specified with respect to arrest of

6   some kind.  And, of course, Corey wasn't arrested while this

7   matter was pending.

8           But I read through the entire case and I saw that

9   there was a substantial dissent, admittedly a dissent by some

10  distinguished judges, and I recognized from the other research

11  that I've done in other cases that there are constitutional

12  rights that attach to individuals prior to the time that

13  they're arrested: Right to counsel classic example.

14          I do believe that in this particular situation we

15  can distinguish this because an accused is not just someone

16  who has been arrested.  And I think that that issue is ripe

17  for a decision by the Supreme Court again.

18          Let me tell you why Corey fits.

19          **MAGISTRATE JUDGE SCHROEDER:**  But even if that

20  premise were sound, the case law does also say, does it not,

21  that the due process violation has to be one resulting in

22  prejudice to the defendant or harm?

23          **MR. CONNORS:**  It does, and I'm going to talk about

24  that as well because I think we can establish that in this

25  particular case.

1          So for purposes of the Sixth Amendment, it occurred

2     to me that some of the criteria applies to Officer Krug.  He's

3     a member of the police force that's clearly been accused by

4     virtue of a complaint that's made to Internal Affairs at the

5     time, Professional Standards Division now.

6          That's something that we know went in at least with

7     respect -- with respect to all three, but certainly with

8     respect to the old charges.

9          That implicates a number of things that make him an

10    accused.  That implicates his right to maintain his position

11    as an officer; his job itself, that's an important matter; it

12    puts him under the scrutiny of the Internal Affairs, which is

13    sort of a quasi investigative power; it effects civil

14    litigation as well, which clearly is an accusation, not a

15    criminal accusation, but the Sixth Amendment says an accused,

16    not a criminal accused; and, finally, it subjects him to a

17    federal referral.

18         In other words, most of these cases when they are

19    prosecuted they certainly could get prosecuted by the local

20    district attorney under not constitutional law violations, but

21    under simple assaults, a number of other Penal Law violations,

22    but most of them end up getting a referral, which puts him in

23    a category, if there's a referral made, of an accused.

24         No referral was apparently made, at least not that

25    we can detect during this time period, but we do know that

 1    during this time period there was a close relationship between

 2    the Department of Justice and the City of Buffalo Police

 3    Department.  We've documented that through two agreements, the

 4    original one and the amended agreement, and some other

 5    correspondence that talks about requesting authority of DOJ

 6    for extensions of investigations.

 7              But I read through that very carefully that

 8    agreement, and it talks about a number of things, but I was

 9    struck by the fact that it talked about a requirement of

10    interaction on a monthly -- or maybe it was quarterly basis --

11              **MAGISTRATE JUDGE SCHROEDER:**  Reporting system?

12              **MR. CONNORS:** Yes, the reporting system and the

13    tracking system as well.  And under those circumstances, there

14    you have a situation, okay, it may be that the federal law

15    enforcement officers declined to prosecute during that time

16    period; it may be that the state declined to prosecute during

17    that time period.

18              But the reality is, I believe, under the

19    Sixth Amendment, that clock is ticking.

20              **MAGISTRATE JUDGE SCHROEDER:**  But how do you

21    overcome the clearly established case law by the Supreme Court

22    of the United States that says the decision to prosecute or

23    not prosecute rests exclusively in the discretion of the

24    Executive Branch?

25              **MR. CONNORS:** Here's how I overcome that -- I don't

1    disagree with the discretion afforded to a law enforcement

2    agency, state or federal, but I do disagree that they can let

3    that discretion run perilously close, and in this case the

4    last day of the statute of limitations, without being subject

5    to a challenge for due process.

6              **MAGISTRATE JUDGE SCHROEDER:**  But, once again, you

7    come back to it has to be done for either a tactical advantage

8    or it has to be such that it causes prejudicial harm to the

9    defendant.

10             **MR. CONNORS:** Let's talk a little bit about that

11   because into the analysis of *U.S. vs. Marion* and some of the

12   other cases, they talk about -- let's look at the

13   justification for the delay.  There needs to be some

14   explanation as to why cases sit for four years, 364 days.

15             And they weigh that certainly in a speedy trial

16   analysis, but they also weigh it in a due process claim.  Was

17   it an unjustified or an unreasonable delay?

18             Some courts even say because of the length of the

19   delay, you can presume that there was some prejudice that

20   attached to that delay because it took so long.  In *Marion* the

21   Court said flat out to the Government, I think it was oral

22   argument, but it's in the decision, they said you would not

23   argue with us that if this were a post-indictment delay, this

24   case would be dismissed.

25             **MAGISTRATE JUDGE SCHROEDER:**  Under the Speedy Trial

1    Act.

2              **MR. CONNORS:** And the Government conceded that.

3    But, remember, that's '71 so it's even before some of the

4    Speedy Trial Act provisions.

5              The Government conceded that.  That's a three year

6    delay.  Ours is four plus years delay, too, which is what

7    alerted me to this issue of why the Sixth Amendment might

8    apply.

9              Let me move to the questions you've raised because,

10   you know, you've raised issues that are appropriate under the

11   circumstances for my Fifth Amendment argument.

12             There's a conflict that exists within the circuits.

13   Are we required to show that it's intentional delay for the

14   Fifth Amendment to kick in?  Can we show reckless disregard?

15   Can we show just prejudice?  Do we have to show actual

16   prejudice?  Do we have to show substantial prejudice?  All of

17   those words and that criteria I took right out of the case law

18   from a couple of different circuits.

19             But what's consistent in the cases that I read is

20   that they hold that the proper inquiry is to balance the

21   prejudice to the defendant against the Government's

22   justification for delay.

23             It isn't Jack's fault.  We have no justification

24   for the delay.  There is nothing offered other than one little

25   statement that says we didn't know about it.

1          **MAGISTRATE JUDGE SCHROEDER:**  Well, they said

2     that -- the Government position, as I understand it, is that

3     there was this ongoing situation involving the City of Buffalo

4     Police Department and their investigation based on the

5     complaints made by the alleged victims, and the 50(h) hearings

6     and all of that, that nothing was brought to the Federal

7     Government for purposes of a civil rights violation or any

8     other type of criminal violation until much later.

9          And that after the Federal Government was advised

10    of these alleged incidents, it began its own investigation in

11    order to determine whether there should be a prosecution or

12    not, and that's their explanation for the delay.

13         Now, are we getting into a credibility issue or are

14    we getting into something that you say there's still this

15    tactical advantage reason that they were doing this?

16         **MR. CONNORS:**  I have no doubt that the agents on

17    this case didn't begin their investigation until shortly

18    before the indictment.  I think it was an eight month period

19    beforehand.

20         My quarrel with the Department of Justice is them

21    letting this case sit for four years, 364 days when they had

22    access to every use of force complaint made against any

23    Buffalo police officer in which they were reviewing these

24    documents on a regular basis.  And likely what had happened is

25    they made a value judgment these cases aren't prosecutable or

1    we'll wait to see what happens or maybe we'll cumulate the

2    evidence because it will provide us with a distinct tactical

3    advantage.

4              **MAGISTRATE JUDGE SCHROEDER:**  Let me just interrupt

5    you there.  When you talk about they had the use of force

6    reports, the Government alleges, and the indictment apparently

7    is based on that allegation as to some of the counts, that the

8    defendant Krug did not file a use of force report at least in

9    the one incident indicating the use of his flashlight which

10   the Government now labels a use of a weapon to strike the

11   victim with.

12             So even a review of that use of force report,

13   whatever it was that was filed, would not necessarily show

14   anything to cause alarms to go off.

15             **MR. CONNORS:**  But here's what they did have and what

16   the record establishes: They had access to the

17   Internal Affairs or the Professional Standards Division, who

18   we know conducted investigations in the two old charges

19   because that's part of the record.  It's admitted that he was

20   interviewed at that time.

21             **MAGISTRATE JUDGE SCHROEDER:**  But that becomes a

22   catch-22, doesn't it, for purposes of a criminal prosecution?

23   Because you're faced with a *Garrity* situation.

24             You have one little segregated segment of the

25   bureau, as I understand it, that would do a *Garrity* review so

1  as to prevent any taint, but they are not part of the

2  prosecution team.

3          So the prosecution team still is theoretically

4  without knowledge.

5          **MR. CONNORS:** Mm-hmm.  In this case, what we do know

6  from the documents that we've submitted, from the contract

7  that I was involved in the early stages of the negotiation of

8  that contract --

9          **MAGISTRATE JUDGE SCHROEDER:**  Well, I was going to

10  come to that question.  When did you start getting involved in

11  negotiating with the Government as far as whatever you were

12  negotiating before the indictments were returned?

13          Because isn't some of this delay based on that kind

14  of negotiation?

15          **MR. CONNORS:** There was never -- well, I don't --

16  the answer to that is my tenure ended with the Brown

17  administration.  I had the Masiello administration, so we had

18  the early stages of the negotiation, which is why I know so

19  much about that.  So --

20          **MAGISTRATE JUDGE SCHROEDER:**  But -- and I'm not

21  trying to get into attorney-client by any means, and I'm not

22  saying this in any way as a criticism, but it seems to me that

23  you being the good lawyer that you are, you were trying to

24  head things off at the pass before it got to a grand jury

25  stage by getting involved with the prosecution in trying to

1    negotiate something and holding everything in abeyance, so to

2    speak, and that was what I kind of read and get out of what I

3    do know about the case, that the Government was holding off on

4    going to the grand jury with whatever it ultimately went with

5    because there were these ongoing negotiations.

6                And it would have been improper for them if there

7    was some kind of agreement between you and the prosecutor to

8    discuss a possible disposition by running off to the grand

9    jury and pulling the rug out from underneath you, so to speak.

10               So there seems to me there's this element of --

11   there's defense delay for the benefit of the defendant in

12   trying to negotiate something that will prevent an indictment.

13               **MR. CONNORS:** Well, what we were primarily

14   preventing was civil litigation commenced by the Department of

15   Justice Civil Division.

16               **MAGISTRATE JUDGE SCHROEDER:**  But you already had

17   civil litigation by the alleged victims in the -- under

18   New York law when they filed their claim under Section 50 of

19   the municipal law, General Municipal Law.

20               As I understand it, there were already depositions

21   taken and discovery after complaints had been filed.

22               **MR. CONNORS:** There was civil litigation for

23   injunctive relief commenced in about four cities nationwide

24   and that was one of the objectives when they came into Buffalo

25   to discuss that, but a settlement was worked out that gave

1  them, the Department of Justice, full access, a tracking

2  system and also access to each officer's investigation

3  history, regardless of *Garrity*, privileged material, things

4  like that.  They had access to all of that and --

5          **MAGISTRATE JUDGE SCHROEDER:**  But were you -- were

6  you representing the City of Buffalo?

7          **MR. CONNORS:** We were.

8          **MAGISTRATE JUDGE SCHROEDER:**  Well, then what the

9  City of Buffalo as a municipality and governmental body was

10 doing does not necessarily equate with the rights of the

11 defendant.

12          And so whatever was going on as far as what will

13 benefit the City of Buffalo is a separate unrelated issue.

14          **MR. CONNORS:** I agree.

15          **MAGISTRATE JUDGE SCHROEDER:**  But if you were

16 negotiating with the Government to prevent grand jury action

17 or criminal action or some other kind of government action to

18 be taken against the defendant as the defendant's attorney,

19 then he's going to be accountable and attributable for that

20 delay.

21          **MR. CONNORS:** I see your point, and the answer to

22 that is unequivocally no.  The only thing we dealt with was to

23 provide access to individual reports, documentation and to set

24 up a better system for reviewing complaints and making those

25 complaints available to the Department of Justice for their

1   review.

2              **MAGISTRATE JUDGE SCHROEDER:**  In your role as

3   representing the City?

4              **MR. CONNORS:** Exactly.

5              **MAGISTRATE JUDGE SCHROEDER:**  But I thought you also

6   admitted that you at some stage were representing the

7   defendant in negotiations with the Government pre-indictment?

8              **MR. CONNORS:** No.

9              **MAGISTRATE JUDGE SCHROEDER:**  Or pre-superseding

10  indictment?

11             **MR. CONNORS:** No, no, no, no, no.

12             **MAGISTRATE JUDGE SCHROEDER:**  Oh, you never had

13  negotiations --

14             **MR. CONNORS:** No, no.

15             **MAGISTRATE JUDGE SCHROEDER:**  Okay.

16             **MR. CONNORS:** I see your point.  No, absolutely not.

17             **MAGISTRATE JUDGE SCHROEDER:**  All right.

18             **MR. CONNORS:** So the -- the issue then becomes, for

19  purposes of the Fifth Amendment analysis, what standard do we

20  apply.  What does our circuit tell us?  What does the Supreme

21  Court tell us?

22             And so the Second Circuit has had some variation in

23  the standards adopted depending upon which panel renders the

24  decision.  Very interesting.  Some panels have said actual

25  prejudice you have to show; some have said it must be

1  substantial; other panels have failed to identify and

2  articulate the degree of prejudice and have looked instead at

3  the reasons and justification for the delay.

4          For example --

5          **MAGISTRATE JUDGE SCHROEDER:**  In the context of

6  tactical advantage?

7          **MR. CONNORS:** Well, they say this -- Second Circuit

8  cases, other panels have held the defendant must show an

9  unjustifiable Government conduct, all right?  The reasons for

10 the delay were improper.  And then there was one panel, as you

11 suggest, that says unjustifiable governmental conduct, such as

12 deliberate delay to achieve a potential tactical advantage.

13         So what I want to argue here today is that that

14 occurred.  And first I will argue that the traditional

15 prejudice is inaccessible witnesses or lost evidence.

16         Here we have a situation where Marcus Worthy

17 testified that a witness named Sharona, a woman who was

18 mentally disabled at the time, subject of a domestic violence

19 report, the woman -- the report that came out, man with a gun

20 waving it around in the vicinity of the home, which is what

21 brought Corey Krug to that area in 2010.

22         The report itself alleged that she was beat with a

23 pistol.  I mean, serious allegations about emergency conduct.

24 Now, we didn't get that report in discovery.  I'm not faulting

25 Jack.  I'm sure it doesn't exist anymore.  We've tried to find

1 it.  It's gone, it doesn't exist.

2          That's a report that would obviously be helpful to

3 us.  That's a report that would identify the reasons why he

4 was there, identify the emergency nature of the situation --

5          **MAGISTRATE JUDGE SCHROEDER:**  Well, the City's CAD

6 would establish what went out in the transmission.  And from

7 what I recall reading, there's no question that there was a

8 call for a domestic violence report that Officer Krug as well

9 as other officers responded to that call, and that when

10 Officer Krug arrived, he saw the individual that was deemed to

11 be the violator and that that individual allegedly had a gun

12 tucked in his waist, and that Officer Krug then reacted to

13 that situation by allegedly physically grabbing that person

14 and putting him up against the car and securing him.

15          And then the obviously disputed issues are how he

16 did that and what he did as far as excessive use of force is

17 concerned.

18          **MR. CONNORS:** Right.

19          **MAGISTRATE JUDGE SCHROEDER:**  So in the context of

20 the indictment, I don't think there's any dispute about there

21 being a response for a domestic relations call.

22          So the absence of this victim of that domestic

23 violence doesn't really play any substantial or material role

24 in what allegedly occurred when the defendant Krug confronted

25 the person with the gun.

1          It's -- the -- the indictment relates to how that

2 person with the gun was allegedly treated by Officer Krug,

3 which is the subject matter of the indictment.

4          **MR. ROGOWSKI:** Your Honor, just to clarify slightly,

5 the factual basis in that incident, the other officers

6 arriving at the scene actually secured the individual and

7 located the gun, and Officer Krug was in slightly or as that

8 was occurring.

9          **MAGISTRATE JUDGE SCHROEDER:**  Am I mixing it up with

10 one of the --

11          **MR. ROGOWSKI:** Yes, you are.

12          **MAGISTRATE JUDGE SCHROEDER:**  -- I'm mixing it up

13 with one of the other cases?

14          I know there's three incidents.

15          **MR. CONNORS:** Right.

16          **MAGISTRATE JUDGE SCHROEDER:**  All right. I apologize

17 for that.

18          **MR. CONNORS:** No, no.  The facts essentially are

19 correct.  Jack is right, there are other officers at the scene

20 as well.

21          But the reason I raise Sharona is because she's one

22 of two missing eyewitnesses.  The second one is a woman that

23 Officer Melinda Jones identified at her examination before

24 trial.

25          **MAGISTRATE JUDGE SCHROEDER:**  Now, were either one

1   of those ever examined in the claim against the City?

2          **MR. CONNORS:** No.

3          **MAGISTRATE JUDGE SCHROEDER:**  No depositions taken?

4          **MR. CONNORS:** Not of the witnesses.

5          **MAGISTRATE JUDGE SCHROEDER:**  No interviews?

6          **MR. CONNORS:** No, not that we can find.  We've asked

7   for them and I'm sure both Jack and I are trying to find them

8   diligently, but as far as we both know they're missing.

9          **MAGISTRATE JUDGE SCHROEDER:**  Nothing by the

10  Internal Affairs?

11         **MR. CONNORS:** We have the personnel file, but we

12  don't -- we don't have the Internal Affairs file.

13         **MAGISTRATE JUDGE SCHROEDER:**  How about the CAD

14  reports?

15         **MR. CONNORS:** We think we've -- we think that

16  you've -- Jack has gotten everything from the Buffalo Police

17  Department and we're going to follow it up ourselves with a

18  subpoena, but we don't think these exist.

19             Because it's not just that, there's pictures and

20  photos of Marcus Worthy who claims that he has an injury -- he

21  has the staples in his head, but there's other evidence as

22  well.

23             So we're missing the 911 call from Sharona; we're

24  missing Sharona; we're missing the photos of Worthy, which

25  we -- I don't think anyone disputes that he had three staples

1  in his head; but there's, as you well know, the way in which

2  evidence -- the way in which injury is created can often be

3  explanatory as to what happened.  So we don't have that

4  either.

5           And now we don't have Officer Melinda's eyewitness

6  that she described as the black female standing 2 feet away

7  from Mr. Worthy when everyone was at the scene.  She may have

8  written down her name, we talked to her, but she has no

9  recollection, she never contacted her, doesn't have them and

10 that was --

11          **MR. ROGOWSKI:** Judge, we may have that witness.  We

12 don't have Ms. Sharona.

13          **MAGISTRATE JUDGE SCHROEDER:**  When was the 50(h)

14 claim filed with the City by the individual in that event?

15          **MR. CONNORS:** Within 90 days.

16          **MAGISTRATE JUDGE SCHROEDER:**  And so within 90 days

17 and somebody's on notice that there are these witnesses and

18 there's this claim.

19          And you told me you were representing the City --

20          **MR. CONNORS:** No, no, no, I wasn't.  I was only

21 involved in the negotiations with DOJ.  They had corporation

22 counsel.

23          **MAGISTRATE JUDGE SCHROEDER:**  But the corporation

24 counsel's office --

25          **MR. CONNORS:** Exactly.

1            **MAGISTRATE JUDGE SCHROEDER:**  -- was representing

2 the City and as part of that 50(h) claim under New York

3 Municipal Law, that information would have been available or

4 theoretically --

5            **MR. CONNORS:** You get the testimony of the claimant.

6            **MAGISTRATE JUDGE SCHROEDER:**  Right, filing the

7 claim.

8            **MR. CONNORS:** Exactly.

9            **MAGISTRATE JUDGE SCHROEDER:**  But then there was

10 also -- there's background information of a domestic violence

11 call put out, Buffalo Police responding, somebody at that

12 stage is put on notice, well, we better start gathering

13 information.

14            **MR. ROGOWSKI:** And other officers testified as well,

15 Your Honor.

16            **MAGISTRATE JUDGE SCHROEDER:**  Pardon me?

17            **MR. ROGOWSKI:** Other officers testified.

18            **MAGISTRATE JUDGE SCHROEDER:**  I assumed that.

19            **MR. CONNORS:** We reached out to the civil attorneys

20 whose primary concern was what would be the exposure in the

21 civil case, and this information's unavailable at present.

22            So we look at that and we see that as a classic

23 example of witnesses that are no longer available and some

24 evidence that's lost.

25            **MAGISTRATE JUDGE SCHROEDER:**  All right, now let me

1    ask you this -- and I apologize for interrupting your train of

2    thought.

3              **MR. CONNORS:** No, no, that's okay.

4              **MAGISTRATE JUDGE SCHROEDER:**  I also do recall, and

5    I'm not sure it's Justice Thomas who wrote the opinion, the

6    Supreme Court of the United States and some of the

7    Second Circuit cases have gone so far as to say yes, we even

8    acknowledge and recognize that with the passage of time

9    memories fade, witnesses disappear and so forth, but that is

10   not enough for a due process violation.

11             **MR. CONNORS:** The way it comes up is exactly what --

12   that language that you said because if that's your only claim,

13   that some unidentified witness can't recall or that there's

14   some -- the word they use is unexplicated evidence that's

15   lost.

16             Here we've identified two witnesses and some

17   evidence as well.  We feel under our standard in the

18   Second Circuit, as varying as it is panel to panel, that we

19   need to show something specific and that's why we've

20   identified those particular individuals as lost witnesses.

21             Not just saying we lost the witness.  We've given

22   the name, we've given the significance of their testimony, we

23   think that makes the specific burden that's required of us to

24   claim a loss of due process of law.

25             **MAGISTRATE JUDGE SCHROEDER:**  Apparently, that

1    position has now been reduced by 50% based on Mr. Rogowski's

2    statement that the Government thinks they have that one

3    witness.

4              **MR. ROGOWSKI:** Actually, we have two civilian

5    witnesses.  One I believe might be the one he's referencing,

6    Judge, but we don't have the one --

7              **MAGISTRATE JUDGE SCHROEDER:**  No, that's the 50% I'm

8    talking about.  One out of two.

9              **MR. ROGOWSKI:** Right.

10             **MR. CONNORS:** But the other panels that talk about

11   the unfair tactical advantage as well.  They also mention the

12   standard of whether or not there's reckless disregard, and all

13   of these panels say what's the justification for delay?

14             **MAGISTRATE JUDGE SCHROEDER:**  Isn't that in the

15   context of prosecutorial misconduct?

16             **MR. CONNORS:** No, no, it's in the due process.

17             **MAGISTRATE JUDGE SCHROEDER:**  Reckless disregard,

18   though?

19             **MR. CONNORS:** Yes, reckless disregard -- I'm sorry,

20   I should have finished that sentence -- of the potential

21   prejudicial impact to Officer Krug.  So it's not just reckless

22   disregard for the rights, it's of the prejudicial impact.

23             And so the courts that we had given you, Supreme

24   Court cases and a couple of Second Circuit cases that say

25   improper reasons for the delay or unjustifiable Government

1   conduct was sufficient in and of itself to show a tactical

2   advantage.

3              So basically if the Government has no reason as to

4   why cases sat for more than four years, that in and of itself

5   is a tactical advantage.

6              **MAGISTRATE JUDGE SCHROEDER:**  Did they say that or

7   did they say that would create a presumption of sufficient

8   prejudice?

9              **MR. CONNORS:** Courts have held that improper reasons

10  for the delay or unjustifiable Government conduct was

11  sufficient to show tactical advantage, and that's in the

12  *Guerra* case.  But actually we have a little bit more in this

13  case.

14             I talked to you about the close relationship

15  between DOJ and the Buffalo Police Department, but I want to

16  talk to you a little bit about tactical advantage.

17             **MAGISTRATE JUDGE SCHROEDER:**  Well, that's the Civil

18  Rights Division of DOJ, which is overseeing and monitoring

19  certain municipalities in the United States and their police

20  force operations because of alleged practices that were being

21  allowed to be perpetrated.

22             **MR. CONNORS:** So a couple of months ago I stumbled

23  on this case, admittedly it's in the Appellate Division, Third

24  Department, State of New York and it was -- it caught my

25  attention because I knew the lawyer who was handling the case,

1  and the Court held that there was a delay that was per se

2  violation of due process of law without a showing of

3  prejudice.  And the case is People vs. --

4          **MAGISTRATE JUDGE SCHROEDER:**  Do you think the

5  Second Circuit will accept that?

6          **MR. CONNORS:** Every once in a while they quote the

7  Appellate Division.

8          **MAGISTRATE JUDGE SCHROEDER:**  Did Judge Bichel write

9  the decision?

10          **MR. CONNORS:** No, no.  It was written by the chief

11  judge.  No, it wasn't -- Lahtinen is the judge, but it was --

12  here's what that -- that caught my eye, first of all, but then

13  I read through the case and I saw this, which I think is

14  particularly relevant to our situation, they were trying to

15  justify the delay and they said, well, it kind of bounced back

16  and forth, the U.S. Attorney had it for a while, the district

17  attorney involved in the county had it for a while, and the

18  Court said same thing applies here, since both offices are

19  coordinate arms of the State in the criminal law enforcement

20  field, and any delay occasioned by one is chargeable to both,

21  citing a couple of Court of Appeals cases and one

22  Appellate Division case where leave was denied.

23          So, I mean, I think you have a situation here where

24  you can't really say, well, we didn't have it, the D.A. had it

25  or we gave it to the U.S. Attorney, but they bounced it back

1  and forth, that's what caused the delay.

2            I mean, I think when a case sits, when there's

3  knowledge of a coordinate arm of law enforcement of the

4  State --

5            **MAGISTRATE JUDGE SCHROEDER:**  But wasn't that in

6  reference to the Albany County District Attorney's Office and

7  the --

8            **MR. CONNORS:** U.S. Attorney.

9            **MAGISTRATE JUDGE SCHROEDER:**  -- the

10  Appellate Division, Third Department was trying to claim that

11  the Federal Government was a coordinate that was bound by New

12  York State law to do something?

13            **MR. CONNORS:** I don't think they went that far, but

14  this is what they said: The fact that this matter was

15  initially referred to the U.S. Attorney's Office and the

16  TCPD -- that must be the county police department -- did not

17  bring this file to the Albany County D.A. until November of

18  2013 provides no justifiable excuse for the delay.  Then they

19  go into the since both offices are the coordinate arms of law

20  enforcement for the State.

21            And I think it applies here.  You can't really --

22  well, you can say it's in the arms of the district attorney

23  right now, we're not gonna deal with it or the U.S. Attorney

24  has it for a while.  You can say that all you want.

25            But when you come up four years and 364 days later

1   and try to prosecute it, you're going to be hit with a due

2   process claim.  It's a reasonable fair claim and a reasonable

3   fair reading of the due process statute.

4           **MAGISTRATE JUDGE SCHROEDER:**  I don't disagree at

5   all, but then we go to the case law that says this is what you

6   need to establish a violation of due process.

7           And the main theme that runs through all of the

8   cases, even with the disagreeing panels from the

9   Second Circuit, is either tactical advantage on behalf of the

10  prosecutor or prejudicial harm.

11          **MR. CONNORS:** Right.  So I think that the witnesses

12  we've identified takes us a long way in the prejudicial harm.

13          Tactical advantage, Judge, look, you were in

14  private practice, you were a U.S. Attorney, you know as well

15  as I do that holding on to cases to cumulate a case so that

16  you have one -- more than one case to prosecute is a

17  tremendous tactical advantage.  Two cases are better than one.

18  Three cases are even better.

19          So if you hold on to those cases in the archives of

20  the City of Buffalo until the time comes when you get a case

21  with a video and everything else and you decide to prosecute

22  that, and you throw them in there with that case, you cannot

23  say with a straight face that they're not in there for

24  tactical advantages.

25          They buttress the other case.  And, in fact, a lot

1   of the case law says one of the fears you have to worry about

2   is whether or not you take a strong -- a weak case and

3   buttress it with additional cases.  One of the other

4   reasons -- it's in a severance argument, but it's relevant

5   here, they say the danger of trying joint cases is because the

6   jury will think there's a predisposition here.  They will

7   think --

8           **MAGISTRATE JUDGE SCHROEDER:**  And that's why we have

9   a severance motion.

10          **MR. CONNORS:** They will think there's a propensity.

11          **MAGISTRATE JUDGE SCHROEDER:**  But let me back up a

12  minute because I'm a little bit confused in that in this

13  particular situation the Government came forward with the

14  earlier events and didn't come forward with the -- what I'll

15  call the Channel 7 videotaping event -- until after the other

16  two.

17          And you may recall I gave Mr. Rogowski somewhat of

18  a tongue lashing as the -- as the messenger, not him

19  personally -- as to what took the Government so long when it

20  had what appeared to be a ready made case if you got a

21  Channel 7 videographer videotaping the actual alleged assault

22  to file a complaint or to present to the grand jury.

23          So it wasn't like this is the first case that was

24  charged and then oh, let's go find some more because now we

25  got a strong case to -- we can load up on.

1          **MR. CONNORS:** That's exactly --

2          **MAGISTRATE JUDGE SCHROEDER:**  It was just the

3   opposite.

4          **MR. CONNORS:** No, no.

5          **MAGISTRATE JUDGE SCHROEDER:**  They came forward with

6   the other two first.

7          **MR. CONNORS:** No, they say that in their papers.

8   They say that when the case was brought to them after the

9   videotaping incident, they then went back and looked in the

10  archives of the City of Buffalo that were kept pursuant to

11  that agreement I keep talking about and found that there were

12  two other cases -- in fact, they found some others, but they

13  were chagrined by the fact that they weren't within the

14  statute of limitations.

15         And that's when they brought it, precisely for a

16  tactical advantage.

17         **MAGISTRATE JUDGE SCHROEDER:**  But the criminal

18  complaint that I signed --

19         **MR. CONNORS:** Yes.

20         **MAGISTRATE JUDGE SCHROEDER:**  -- was not the

21  videotape case?

22         **MR. CONNORS:** It was.

23         **MR. ROGOWSKI:** It was.

24         **MAGISTRATE JUDGE SCHROEDER:**  It was?

25         **MR. CONNORS:** It was, yeah.

1           **MAGISTRATE JUDGE SCHROEDER:**  I stand corrected.

2           **MR. CONNORS:** So you see what happened, look it,

3    you're right on the money on the -- I'm not saying you agree

4    with me, but you're right on the issue.

5           The issue becomes nobody could possibly say with a

6    straight face that they didn't cumulate the evidence to gain a

7    tactical advantage.

8           I mean, if he can get away with it, you know, I

9    understand why it's stronger.  I would do the same thing.  But

10   it is violative of due process of law to do that when you wait

11   so long for the unfair tactical advantage.

12          And we have that here.  This is a rare case, a

13   strong case.  It's bolstering the evidence.  And I know you're

14   not -- it's -- it's called the legal equivalent of piling on

15   and that really -- all the research I did on the joinder, I

16   gave you in the brief as well, but they talk about when you

17   try to join cases that are of a similar nature and that's the

18   only reason that Jack's offered, the other two or three

19   reasons he's not offered, the -- the benefit of joinder

20   largely disappears.  That's right from the case law.

21          The reason it largely disappears is because you

22   don't get that much economy, but you run the substantial risk

23   that a jury's not going to like the defendant, not have a

24   emotional response -- this is right out of the case law --

25   they will have a -- a feeling that he's a bad person as

1  opposed to whether or not the proof is guilty beyond a

2  reasonable doubt.

3        **MAGISTRATE JUDGE SCHROEDER:**  It's the classic where

4  there's smoke there's fire --

5        **MR. CONNORS:** Classic.

6        **MAGISTRATE JUDGE SCHROEDER:**  -- because there's so

7  much.  But the case law also says that can be corrected either

8  with a charge to the jury by the trial judge, or you have a

9  remedy: Severance.

10        **MR. CONNORS:** And you know I'm gonna be begging for

11  a severance, but the case law says under Rule 8(a) they're

12  seeking to joinder, seeking joinder for the one reason, same

13  or similar character that in many instances curative

14  instructions have no effect whatsoever, and all courts

15  instructively should be careful to do that, sever those counts

16  because you can't cure it.

17        You can't possibly give an instruction that's going

18  to cure that.

19        **MAGISTRATE JUDGE SCHROEDER:**  But you have a tough

20  row to hoe in establishing that's why it was done, don't you?

21        In other words, you would agree that the law says

22  you can join different events in the same indictment?

23        **MR. CONNORS:** You can.

24        **MAGISTRATE JUDGE SCHROEDER:**  So long as they're

25  relatively related.

1              **MR. CONNORS:** Meet the criteria.

2              **MAGISTRATE JUDGE SCHROEDER:**  But you're now saying

3    that motive for doing that was to gain a tactical advantage.

4              **MR. CONNORS:** But, Judge, it's logical and it is

5    realistic.  Real world evidence is such that if you -- and

6    they've -- they've admitted, and honestly and candidly they've

7    said we had the videotape incident, we went back and looked to

8    see if there were any others.

9              Why did they go back and look to see if there were

10   any others other than to get a tactical advantage?  All right,

11   I'm not saying that they necessarily are not allowed to try

12   for a tactical advantage, but it's --

13             **MAGISTRATE JUDGE SCHROEDER:**  Well, wouldn't another

14   side of the coin be anticipating a defense of, well, this

15   isn't in the nature or character of the defendant to do

16   something like this, this is just a -- a unique situation,

17   et cetera, et cetera, whereas if they want to show a pattern

18   and practice --

19             **MR. CONNORS:** Fine.

20             **MAGISTRATE JUDGE SCHROEDER:**  -- to overcome that

21   defense, isn't that a legitimate reason?

22             **MR. CONNORS:** We'll fight that out under 404(b), is

23   it motive?  Is it identity?  Is it accident?  Is it mistake?

24   Does it fit any of that criteria?

25             It clearly doesn't.  They wouldn't get it in under

1    404(b).  They might try to do that, you're absolutely right,

2    from a strategic tactical advantage they might try to bring it

3    in, but the case law on severance and joinder says, listen, we

4    wouldn't admit this under 404(b), we're not gonna join these

5    cases for trial.

6              So in this situation I just think that no one's

7    going to come out and file an affidavit and say we did this

8    for a tactical advantage.  But seriously --

9              **MAGISTRATE JUDGE SCHROEDER:**  But the other side of

10   that coin is the broad face -- bald face statement of well,

11   they did it for tactical advantage is not enough either.

12             **MR. CONNORS:** What other reason could there be other

13   than to cumulate the evidence, make the cases stronger,

14   bolster one with the other?

15             **MAGISTRATE JUDGE SCHROEDER:**  Well, the Government

16   in its response says we didn't really get this information in

17   this case until well down the road.

18             A lot of time apparently was spent by the

19   Internal Affairs people.  Then you had the 50(h) civil

20   lawsuits brought by the alleged victims of the actions of the

21   defendant in this case.

22             And by the time we, the Government, the Federal

23   Government was alerted to this we started looking into it, the

24   FBI started investigating it, and then we started to put

25   together a case, we had the videographer thing, but in doing a

1  detailed investigation that the FBI did, it decided to go back

2  and look at records to see if there was anything else and

3  that's when they found these other events.  The statute of

4  limitations was close to running, so they had to get into a

5  grand jury and that's why we did what we did.  That's their

6  explanation.

7          Now, it's kind of -- let me use the analogy of

8  employment discrimination that I know you also have

9  familiarity with.  They have articulated a legitimate reason,

10 in their opinion, for doing what they did or for what was

11 done.

12         The burden -- the burden -- there's no burden in a

13 criminal defendant, but there's a shifting then of saying

14 you've got to come with something more now to show either that

15 is an outright misrepresentation or that it has no valid

16 substance to it.

17         **MR. CONNORS:** It's predicate, it's --

18         **MAGISTRATE JUDGE SCHROEDER:** Yeah.

19         **MR. CONNORS:** The word I'm thinking of, it's --

20 well, here's something more.  When the November 27th incident

21 occurred, within a very short period of time a referral was

22 made from the Buffalo Police Department to the U.S. Attorney's

23 Office, okay?

24         So there was nothing preventing them from doing

25 that same exact thing in 2010 and 2011.  But they didn't do

1  it.  They let it sit in their archives.  The Federal

2  Government was content to do it at that point, and then lo'

3  and behold, they went back to dig into the archives clearly to

4  support and buttress the case.

5           That's what was done.  I mean, I don't think

6  there's a trial lawyer that would recognize that there's

7  another reason other than a tactical reason.

8           Even the reason they proffer is a tactical reason,

9  joining it for trial is a tactical reason, right?  I mean, I

10 suppose my argument --

11          **MAGISTRATE JUDGE SCHROEDER:**  Well, I guess the

12 operative word is unfair.

13          **MR. CONNORS:** Right, unfair tactical advantage.

14          **MAGISTRATE JUDGE SCHROEDER:**  Right.  But you can

15 have a tactical reason.  I mean, that's what trial lawyers do:

16 They set up tactically how they want to approach a case.

17          **MR. CONNORS:** I suppose my argument would be weaker

18 if they filed individual indictments and then I'd just be

19 arguing pre-indictment delay.

20          But you cannot overlook the fact that they joined

21 them all for trial.  That is a --

22          **MAGISTRATE JUDGE SCHROEDER:**  I understand that.

23 And the response to that, I guess, is well, make your motion

24 to sever.

25          **MR. CONNORS:** Which I did.

1              **MAGISTRATE JUDGE SCHROEDER:**  Right, right.

2              **MR. CONNORS:** But I'd just as soon not have to

3 sever.

4              **MAGISTRATE JUDGE SCHROEDER:**  I understand.  But

5 what we're coming back to and -- and I'm not shutting you off

6 by any means, is it's -- it's always going to come back to

7 this basic case law admonition from the Second Circuit and the

8 Supreme Court of the United States of you got a due process

9 claim, then you have to show prejudice or harm, or it was done

10 deliberately by the prosecution to gain an unfair tactical

11 advantage.

12              **MR. CONNORS:** Yeah, the cases surprisingly, because

13 I went into this research with exactly that analysis, the

14 cases are a little different in the sense that certain panels

15 will describe what you have to show a little bit differently

16 and it's not all that high a burden for me to show.

17              But every one says you look at the reasons for the

18 delay.

19              **MAGISTRATE JUDGE SCHROEDER:**  And they've

20 articulated theirs.

21              **MR. CONNORS:** No reasons articulated.

22              **MAGISTRATE JUDGE SCHROEDER:**  Well, they talked

23 about this delay in getting --

24              **MR. CONNORS:** We didn't get it, okay?  And you look

25 at the justification for the delay, the length of the delay ,

1    that's important here because when you have a delay that goes

2    that far, there's a number of cases that say you can presume

3    prejudice because of the delay.

4              Who can defend something that happened four plus

5    years ago?

6              **MAGISTRATE JUDGE SCHROEDER:**  But then I have to

7    look at the other cases that say the main protective rule of

8    law on the delay argument is the statute of limitations --

9              **MR. CONNORS:** Subject --

10             **MAGISTRATE JUDGE SCHROEDER:**  -- and that's why we

11   have a statute of limitations.  If the Government is going to

12   prosecute a case criminally, it has to do so in a timely way

13   in accordance with the appropriate statute of limitations.

14             **MR. CONNORS:** Subject to the due process clause.

15             **MAGISTRATE JUDGE SCHROEDER:**  Subject to the due

16   process clause, which brings us back to the two, unfair

17   tactical advantage or prejudicial harm suffered by the

18   defendant.

19             **MR. CONNORS:** So here's one of the considerations in

20   the myriad of cases I've read in the last two days, they say

21   this: In certain instances you have direct presentments to

22   grand juries.  So you have a situation where there is no

23   proverbial sword hanging over the defendant's head, there's no

24   public humiliation, there's no public posture.

25             In fact, the *Marion* case was an SEC investigation

1  as well.  You have nothing really that's pending.  So under

2  those circumstances, what's occurring in terms of prejudice,

3  violation of constitutional rights is not looked upon to be as

4  serious as a situation like the one we have here where you

5  have a police officer whose job is in jeopardy, who has been

6  accused in Professional Standards, who has been sued as well

7  and who at any moment in that four plus years can be the

8  recipient of a federal grand jury indictment.

9          It's just they elected not to do that.  Now, I say

10 they can't do that.  They can't wait until the eleventh hour

11 and say you know what?  We never prosecuted before, we weren't

12 going to do it, but now because we have a case with a video

13 and we can buttress that case, we're going to throw the book

14 at him.

15          We'll try that video case.  Let us try that case

16 alone.  But don't lump us up with these other cases as well

17 that are four and a half, five years old.  That's just not

18 fair.

19          That's what due process is, fundamental notions of

20 fairness.

21          **MAGISTRATE JUDGE SCHROEDER:**  That's your severance

22 argument to Judge Arcara.

23          **MR. CONNORS:** I make it to you, too.

24          **MAGISTRATE JUDGE SCHROEDER:**  You can make it, but I

25 can't do anything about it jurisdictionally.

1          **MR. CONNORS:** But this -- this is -- this is

2   interesting.  It's a different kind of an argument that really

3   has some meat to it.

4          **MAGISTRATE JUDGE SCHROEDER:**  I'm not denigrating

5   your argument at all.  I'm just saying I don't have

6   jurisdiction for purposes of the severance part.

7          **MR. CONNORS:** But you can recommend on the due

8   process.

9          **MAGISTRATE JUDGE SCHROEDER:**  Well, I will do a

10  Report and Recommendation on the due process claim, yes.

11         **MR. CONNORS:** So there's just two last points that I

12  wanted to make.  We did raise an issue with respect to the

13  sufficiency of the allegation in Count 2.

14         It's a pretty technical argument that we made and I

15  think it's a fair argument to make, but I understand the

16  response.  I just don't agree with the case that Jack gave us.

17         The claim is that the report itself was a false

18  document because you didn't check --

19         **MAGISTRATE JUDGE SCHROEDER:**  This is the knowledge

20  of --

21         **MR. CONNORS:** Impact weapon --

22         **MAGISTRATE JUDGE SCHROEDER:**  -- of what was used as

23  a weapon?

24         **MR. CONNORS:** Impact weapon.  So -- so I looked at

25  that and I said to myself, first of all, where is the federal

1 | nexus?  Where is the jurisdiction?

2 |             And he cited a good case, but a case that's easily

3 | distinguished because there clearly was a federal nexus in the

4 | *Gray* case that he cited.  But it looked to me as though this

5 | is a situation where if that's a false report, that's clear

6 | Penal Law stuff.  That's clear violations of filing a false --

7 | offering a false instrument for filing.

8 |             I don't see any federal nexus.  So I looked at it a

9 | little bit closer and I made some calls.  The box is impact

10 | weapon.  Now, impact weapon by definition is what's issued to

11 | the police officer.

12 |             **MAGISTRATE JUDGE SCHROEDER:**  And as I understand

13 | it, and I've seen them, as I'm sure you have, the flashlights

14 | that the police officers have is not just a little short

15 | plastic type thing people buy for a couple of dollars; it's a

16 | pretty big substantial --

17 |             **MR. CONNORS:** 12 inch mag light.  He buys it

18 | himself, by the way.

19 |             **MAGISTRATE JUDGE SCHROEDER:**  -- apparatus.

20 |             **MR. CONNORS:** He buys it himself.

21 |             **MAGISTRATE JUDGE SCHROEDER:**  I'm just saying

22 | physically it's a substantial piece of material.

23 |             **MR. CONNORS:** Sure.  But what if -- what if a police

24 | officer in the use of excessive force took off his shoe and

25 | started hitting someone with that?

1          Would he have to file -- it might be a violation of

2   242, but would he have to check off impact weapon on that

3   particular report?  I don't think he would.

4          And, furthermore, I think to satisfy that

5   sufficiently you would have to have someone in the grand jury

6   saying this is by definition an impact weapon -- not what

7   Merriam-Webster says, but it's an impact weapon.

8          And, by the way, the Buffalo police officers know

9   that this is an impact weapon and they should check off that

10  box.

11         **MAGISTRATE JUDGE SCHROEDER:**  So the grand jury,

12  though, all it has to say is we find there's probable cause

13  that this is a weapon.

14         This is really an issue for a jury to decide, isn't

15  it, whether the flashlight falls in the category of a weapon?

16         **MR. CONNORS:** Well, I -- I -- I was concerned that

17  you would say that.

18         **MAGISTRATE JUDGE SCHROEDER:**  I guess there's no

19  question that the report that was filed does not indicate the

20  use of the flashlight.

21         **MR. CONNORS:** The box under impact weapon is left

22  blank.

23         **MAGISTRATE JUDGE SCHROEDER:**  Right.

24         **MR. CONNORS:** There's a description of what

25  happened.

1          **MAGISTRATE JUDGE SCHROEDER:**  Right.  But there's no

2    reference made to hitting the -- a person with the flashlight.

3          **MR. CONNORS:** Jack's going to give us page 2.

4          **MR. ROGOWSKI:** It doesn't have any reference.

5          **MAGISTRATE JUDGE SCHROEDER:**  Doesn't have any

6    reference.  It just --

7          **MR. ROGOWSKI:** I will supply that.  I apologize.

8          **MAGISTRATE JUDGE SCHROEDER:**  -- talks about there

9    was an arrest made and so forth and so on.

10         **MR. CONNORS:** Injury --

11         **MAGISTRATE JUDGE SCHROEDER:**  Because the report is

12   called a use of excessive force report.

13         **MR. CONNORS:** Use of force.

14         **MAGISTRATE JUDGE SCHROEDER:**  And that what was

15   filed indicated there was no excessive force used.

16         **MR. ROGOWSKI:** It's labeled use of force and it goes

17   from the various levels from --

18         **MAGISTRATE JUDGE SCHROEDER:**  Right.

19         **MR. ROGOWSKI:** -- grabbing somebody, putting

20   somebody against the car and then using an impact weapon or a

21   weapon, a firearm.

22         **MAGISTRATE JUDGE SCHROEDER:**  Right.  And so what

23   the Government has alleged by way of the grand jury

24   indictment, as I understand it, is by failing to check that

25   box the report was not an accurate report; the indictment says

1 | it was basically a false report because the facts and

2 | circumstances that the grand jury heard were that the

3 | defendant used his flashlight to hit the person in the head

4 | and the -- the evidence developed during the 50(h)

5 | proceedings, as I understand it, there was a gash and that

6 | person was taken and stitches were applied.

7 | So that's -- that count now whether a flashlight is

8 | to be deemed a weapon, that box should have been checked, I

9 | think is a jury question.

10 | **MR. ROGOWSKI:** Your Honor, in fact, he checked no

11 | where it said use of a weapon.  It wasn't left blank, it was

12 | checked no.

13 | **MR. CONNORS:** I thought it was left blank?

14 | **MR. ROGOWSKI:** I don't have it in front of me,

15 | Judge, but I recall that.

16 | **MAGISTRATE JUDGE SCHROEDER:**  Well, in any event,

17 | whether the flashlight is a weapon or not is a jury question.

18 | **MR. CONNORS:** He didn't -- he didn't -- right, he

19 | didn't indicate it was a weapon.

20 | That answer is a very good answer, but the reason

21 | why I think that we need to probe further is that under

22 | 12(b)(3) there has to be some jurisdictional nexus to make it

23 | a federal case.

24 | And the one that's offered so far under the *Gray*

25 | case doesn't cut it, doesn't make it.  You're talking about a

1    document that's potentially a false instrument if filed with

2    the New York State agency, and I don't think there's a

3    jurisdictional basis here.

4              **MAGISTRATE JUDGE SCHROEDER:**  A governmental agency

5    regarding the civil rights of a citizen.

6              **MR. CONNORS:** Well, it's a New York State, Buffalo

7    Police Department --

8              **MAGISTRATE JUDGE SCHROEDER:**  Right, but it goes to

9    addressing what could be a potential claim of a civil rights

10   violation under Title 42 of the United States Code,

11   Section 1983, i.e., excessive force was allegedly used, my

12   constitutional right was violated either under the

13   Fourteenth Amendment or some other amendment because of that,

14   and by not disclosing this, this defendant allegedly was

15   trying to hide or obstruct justice in that being made known.

16              I guess that's the argument.

17              **MR. CONNORS:** I guess it is.  So if you go there,

18   Judge, to make that decision, you now have put the Federal

19   Government nose to nose with the State at a time when they had

20   an opportunity to prosecute.

21              If that's the jurisdictional basis for the impact

22   weapon, that means that at that time they had jurisdiction

23   under 42, U.S.C. as you suggested and probably under 18,

24   U.S.C. to do what they should have done, which was file a

25   charge so he could defend it and not wait four and a half

1 years.

2          **MAGISTRATE JUDGE SCHROEDER:**  And then I go back to

3 the case law that says when to prosecute and if to prosecute

4 is left to the discretion of the prosecution, other than the

5 requirement that they do it in a timely way by way of

6 complying with the statute of limitations.

7          **MR. CONNORS:** Unless they gain a tactical advantage

8 by doing it.

9          **MAGISTRATE JUDGE SCHROEDER:**  Then we go back to due

10 process and tactical advantage, I agree.

11         **MR. CONNORS:** So the last argument -- you've been

12 gracious with your time -- the last argument is everything

13 else, I think, worked out pretty well.  You know that we made

14 a lot of the arguments that are traditionally made with

15 respect to discovery.

16         **MAGISTRATE JUDGE SCHROEDER:**  Right, I was going to

17 address that.

18         **MR. CONNORS:** Yeah, Jack's been pretty good about

19 all of that stuff.

20         **MAGISTRATE JUDGE SCHROEDER:**  Well, let me at least

21 get that resolved so that isn't going to clutter.  Obviously

22 I've got to write on the substantial issues you've raised,

23 but --

24         **MR. CONNORS:** Bill of Particulars, fine.

25         **MAGISTRATE JUDGE SCHROEDER:**  Right.  I'm denying

1    the application for a Bill of Particulars.

2              With the discovery material and what's been set

3    forth in the indictment, and all of the 50(h) municipal law

4    transcripts and so forth, the defendant is certainly put on

5    notice as to what the nature of the charges are and what the

6    evidence basically will consist of.

7              As far as requiring the Government to comply with

8    production of material pursuant to Rule 12 and Rule 16,

9    obviously the Government's obligated to do that and you've

10   indicated that the discovery that has been turned over appears

11   to be that way.

12             And in that same context your request for notice of

13   an expert witness and expert reports would also be required to

14   be turned over by the Government if there are going to be

15   experts --

16             **MR. ROGOWSKI:** Understood, Your Honor.

17             **MAGISTRATE JUDGE SCHROEDER:**  -- so that's granted.

18             With respect to your request for a Bill of

19   Particulars, as I said, that's denied for the reasons I've

20   stated.

21             Your request for *Brady* material, that is denied in

22   that as you well know the case law, and I start with the

23   initial case of *United States vs. Coppa*, the Second Circuit

24   Court of Appeals has ruled that *Brady* material is not required

25   to be turned over immediately or upon demand, but rather it

1  must be turned over within a reasonable time before trial to

2  allow the defendant to prepare.

3        I am directing that the Government comply with the

4  requirements set forth in *Coppa* as far as *Brady* material is

5  concerned; or in compliance with the policy established by the

6  U.S. Attorney's Office as far as turning over that material

7  and/or complying with the trial judge's order of turning over

8  materials, whichever will give the defendant the most time.

9        **MR. ROGOWSKI:** Understood, Your Honor.

10       **MAGISTRATE JUDGE SCHROEDER:**  The request for *Jencks*

11  material, as you well know, Mr. Connors, the statute says

12  *Jencks* material does not have to be turned over until the

13  witness has actually testified on direct and I think you're

14  familiar with the Second Circuit case law on that.

15       But, once again, I direct the Government to turn

16  over *Jencks* material to the defendant in keeping with an

17  established policy of the U.S. Attorney's Office; or in the

18  alternative, the trial judge's scheduling order with respect

19  to those matters, whichever will give more time to the

20  defendant.

21       **MR. ROGOWSKI:** Understood.

22       **MAGISTRATE JUDGE SCHROEDER:**  As to the request for

23  the preservation of agents' notes in the custody or control of

24  the Government, I'm granting that to the extent that those

25  agents' notes could fall in the category of being *Jencks*

1  material.

2          As to pretrial disclosure, as to evidence that

3  would be offered pursuant to Federal Rule of Evidence 807, I'm

4  granting that only because the statute requires it.  The

5  Government must give prior notice of its intent to use that

6  type of evidence at trial.

7          As to the request for disclosure of evidence

8  offered pursuant to Rule 806 of the Federal Rules of Evidence,

9  that material really falls into the realm of *Jencks* material

10 and, therefore, I'm denying that request, except for what I've

11 indicated must be done with *Jencks* material.

12         As to the request for a hearing regarding evidence

13 under Rule 404(b) and 609 of the Federal Rules of Evidence, I

14 see no requirement for a hearing.  The Government is obligated

15 if it is going to use 404(b) evidence to give prior notice to

16 the defendant and, therefore, the Government is directed to do

17 that.

18         No such prior notice requirement, though, is set

19 forth in Rule 609, but it does indicate that if there's going

20 to be an issue that's going to arise, then the parties who

21 hope to use the 609 evidence are to alert the other party of

22 such evidence beforehand.

23         So I'm directing the Government to comply with that

24 requirement of the rule itself.

25         And then reserving the defendant's right to move

1  for further relief as necessary, I'm granting that in the

2  limited context of new issues or something that is developed

3  after-the-fact, so to speak, or because of something that is

4  found and turned over that was not known beforehand.

5         **MR. CONNORS:** So the last thing would be the

6  *Garrity*, it's a very short -- this is an issue that we've

7  dealt with a number of times before.  Jack's representation

8  basically is there's -- he had no *Garrity* and there's a taint

9  team that's involved.

10        Here's the only request I have because, I mean, the

11 last time we litigated this I don't think we made ourselves as

12 clear as we should have, I think that was Mr. Cambria's --

13        **MAGISTRATE JUDGE SCHROEDER:**  You're euphemistically

14 saying I was wrong?

15        **MR. CONNORS:** I think that was Mr. Cambria's

16 argument that wasn't as clear as it should have been.

17        I'm interested in this: The AUSA has told us that a

18 subpoena went out for the personnel file at BPD.  And I'm

19 interested in if anything that went out was obtained that was

20 relative to the Internal Affairs or the PSD file, I think what

21 you should do is the same thing you did last time, you asked

22 AUSA Campana give us an affidavit tracking what you did and

23 where it went.

24        So if the subpoena went out to IA and PSD and it

25 came here and it went right to the taint team, so be it.  But

1    if the subpoena went out, got that material and it went and

2    sat in a FBI agent's office or in a U.S. Attorney's Office,

3    that's fair game because it's not just direct knowledge, it's

4    indirect knowledge.

5            And keep in mind the FBI at the time was preparing

6    that extensive complaint to file as probable cause for the

7    beginning of the commencement of the prosecution in the Devin

8    Ford case.

9            So I would just like to do that.  If we have that

10   and it's satisfied, there's probably no issue after that.

11           **MAGISTRATE JUDGE SCHROEDER:**  Okay, I understand

12   your position.  What I do recall reading from the Government's

13   response was they said that there was an FBI taint agent --

14           **MR. ROGOWSKI:** That's correct.

15           **MAGISTRATE JUDGE SCHROEDER:**  -- who was assigned to

16   do the screening and review separate from the prosecutorial

17   side of the Executive Branch for purposes of making sure that

18   *Garrity* information was not in any way shared with the

19   prosecutorial side.

20           **MR. CONNORS:** Here's what the BPD tells me, Buffalo

21   Police Department: They say that we get a subpoena from the

22   Federal Government and we send them over everything and that's

23   the last we see of it.

24           So if that happened and the BPD sent over *Garrity*

25   material, that's a potential problem.  If it went -- and who

1   would know at that point whether to send this to the taint

2   team or whether to send it directly to the FBI?

3         I just need to know where did it go when you got

4   the subpoena.

5         **MAGISTRATE JUDGE SCHROEDER:**  I agree.

6         **MR. ROGOWSKI:** I can provide that.

7         **MAGISTRATE JUDGE SCHROEDER:**  All right, so

8   Mr. Rogowski will provide that.

9         So that aspect of your motion is granted.

10        Anything else?

11        **MR. CONNORS:** Appreciate it.  No, thank you, Judge.

12        **MR. ROGOWSKI:** Judge, I think he's exhausted all

13   issues here.

14        **MAGISTRATE JUDGE SCHROEDER:**  I would say so.  So

15   I'm reserving then on the motions to dismiss for the reasons

16   stated involving the issues of due process violation by reason

17   of delay, unfair tactical advantage issue, and I guess that's

18   basically it.

19        **MR. CONNORS:** Actual prejudice, substantial

20   prejudice --

21        **MAGISTRATE JUDGE SCHROEDER:**  Actual prejudice,

22   which goes back to the due process --

23        **MR. CONNORS:** I did try to sneak in the

24   Sixth Amendment claim as well if you want to write on that,

25   Your Honor.

1      **MAGISTRATE JUDGE SCHROEDER:** All right.

2      **MR. CONNORS:** Hate to give you more work, but --

3      **MR. ROGOWSKI:** Thank you very much.

4      **MAGISTRATE JUDGE SCHROEDER:** Thank you, gentlemen.

5      **MR. CONNORS:** Appreciate it.

6      (**WHEREUPON**, the proceedings adjourned at 12:03 p.m.)

7                          *    *    *

8                  <u>**CERTIFICATE OF TRANSCRIBER**</u>

9

10         In accordance with 28, U.S.C., 753(b), I certify that

11   this is a true and correct record of proceedings from the

12   official electronic sound recording of the proceedings in the

13   United States District Court for the Western District of New

14   York before the Honorable H. Kenneth Schroeder, Jr. on January

15   21st, 2016.

16

17   <u>S/ Christi A. Macri</u>

18   Christi A. Macri, FAPR-CRR
     Official Court Reporter

19

20

21

22

23

24

25