UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

                           1:15-CR-00157 RJA
                           DECISION AND ORDER

     v.


COREY KRUG,

                  Defendant.
_____

Before the Court are various motions *in limine* filed by the Government and

defendant Corey Krug. The Court's specific findings with respect to the pending motions

*in limine* are set forth in detail below.

## RELEVANT FACTS AND BACKGROUND

Defendant Corey Krug ("defendant") is charged with three counts of Deprivation of

Constitutional Right Under Color of Law in violation of Section 242 of Title 18 of the United

States Code and one count of Falsification of a Record in a Federal Matter in violation of

Section 1519 of Title 18 of the United States Code. (Dkt. No. 1) Specifically, defendant

is charged with using excessive force on three separate occasions during his employment

as a police officer for the City of Buffalo Police Department. He is further charged with

falsifying a Buffalo Police Department record as to one of the incidents.

Count One arises from the arrest of Marcus Worthy on August 29, 2010.[1] On that

date, defendant and other officers responded to a 911-call reporting a man with a gun at

_____

[1] The facts discussed herein have been taken from the Indictment, the Government and defendant's trial
memoranda, and all of the pre-trial motions and briefs filed in this matter to date.

46 Langmeyer Avenue in the City of Buffalo.  When the officers arrived, Worthy, wearing clothing matching the description of the individual identified in the 911-call, was standing near a vehicle and speaking with a female.  Officers proceeded to pat-down Worthy, and one of the officers exclaimed that Worthy had a gun.  The Government alleges that after hearing Worthy had a gun, defendant repeatedly hit Worthy on the head with his flashlight. Defendant arrested Worthy and charged him with criminal possession of a weapon, menacing, obstructing governmental administration and resisting arrest.  After he was released from jail, Worthy received four stiches to his scalp at Erie County Medical Center. On February 25, 2011, the Erie County Grand Jury declined to indict Worthy for the charges filed by defendant on August 29, 2010.  Count Two arises from defendant's completion of a Buffalo Police Department Use of Force Report P-1374 regarding his arrest of Worthy on August 29, 2010.  On that form, defendant checked the "No" box in response to whether he had used an impact weapon on Worthy.  The Government contends that this response constituted falsification of a record because defendant had in fact used an impact weapon, specifically his flashlight, to strike Worthy during the arrest.

Count Three involves the arrest of Daniel Rashada on February 4, 2011.  On that date, defendant and other officers responded to a call regarding a suspicious person on Ivy Street in the City of Buffalo.  While looking for the individual, defendant encountered Rashada on a nearby street.  Rashada was apparently walking home to his residence after work.  As Rashada passed the patrol car, defendant asked Rashada his name and where he was going.  Rashada provided his name and pointed to his residence, which was located a few houses away from where he was standing.  It is alleged that defendant

ordered Rashada to place his hands on the police vehicle, kicked his legs apart, and tripped him, causing Rashada to fall to the ground. Defendant then placed his knee on Rashada's chest and struck him in the face with a flashlight. Defendant found blue pills in Rashada's pocket. Defendant arrested Rashada and charged him with criminal possession of a controlled substance, promoting prison contraband, obstructing governmental administration and possession of a controlled substance outside of its original container. After being released from jail, Rashada received treatment for his injuries at the Erie County Medical Center. The pills found on Rashada were later determined to be over-the-counter dietary substances. The charges against Rashada were dismissed at the time of his arraignment.

Count Four involves an incident on Chippewa Street in the City of Buffalo on November 27, 2014. Chippewa Street is a well-known area in the City of Buffalo and is the location of many popular restaurants, bars and nightclubs. In addition, November 27, 2014 was the day before the Thanksgiving holiday, which is typically a busy night for bars and restaurants on Chippewa Street. Defendant worked a special detail on Chippewa Street that evening. Devon Ford and another man were ejected from a nightclub on Chippewa Street after an altercation. There was a verbal exchange on the street related to the altercation, and officers dispersed the group with pepper spray. Shortly thereafter, on the corner of Chippewa Street and Pearl Street, there was another interaction between Ford, Ford's friends, the man Ford had previously been in an altercation with, and the man's friends. It is alleged that defendant approached Ford at a fast pace while holding his nightstick horizontally in both hands, slammed Ford against the hood of a car and then pushed Ford onto the ground. Defendant then placed both knees on Ford's groin,

abdomen and chest. It is alleged that defendant then stood up and struck Ford on the legs while shouting at him to "get up." Defendant stuck Ford twice more and yelled "Get the fuck up." Another officer approached and told defendant to "relax." Officers told Ford to get up and leave the scene. Ford was not charged with a crime. The officers use of pepper spray and the use of force by defendant against Ford were captured on video by a photographer working for a local news station.

## DISCUSSION

### ***Evidence of Uncharged Incidents of Excessive Force***

On January 7, 2019, the Government moved to introduce, at trial, evidence of three other instances where defendant used excessive or unnecessary force against arrestees or suspects during his employment as a Buffalo police officer. (Dkt. No. 90) The first instance relates to defendant's involvement in the arrest of Jason Shields on February 16, 2004. On that date, Shields failed to stop for officers when they attempted to pull him over for a license plate violation. When Shields did stop, he was forcibly removed from his van, subdued and handcuffed. The Government seeks to introduce evidence that after Shields was handcuffed, defendant stood on Shields' back and jumped up and down one or more times. Defendant then slammed Shields into a van. It is alleged that defendant later used an ice scraper to scrape Shields' blood off the window of the van to eliminate evidence of the altercation. Shields received stiches to his face, staples on his scalp, and dental treatment for two fractured teeth. He also had multiple contusions on his back. The second instance involves the arrest of Donald Foose by defendant, following a domestic dispute, on January 15, 2006. The Government seeks to introduce evidence that Foose was arrested by defendant, handcuffed, and placed in the back of

defendant's police car. While defendant was transporting Foose, Foose attempted to explain what happened and why he should not have been arrested. It is alleged that after telling Foose to "shut-up", defendant pulled over the car, walked around to the rear passenger-side door, opened it, and punched Foose in the jaw. The third instance involves defendant's arrest of Donald Staufenberger on December 6, 2006. It is alleged that while riding in his police car, defendant observed Staufenberger and another individual sitting in a parked car. Defendant recognized the other individual and believed he had outstanding warrants. Defendant stopped, spoke with Staufenberger and stated that he smelled marijuana. Defendant then ordered Staufenberger and the other individual to exit the car. Defendant arrested Staufenberger but the other individual fled. Defendant placed Staufenberger in the back of his police vehicle and drove around, attempting to find the other individual. It is alleged that when defendant could not locate the other individual, he pulled over the vehicle, opened the rear door and punched Staufenberger, who was handcuffed, in the jaw. Defendant then told Staufenberger to pass that along to his friend who ran. The Government contends that these other similar acts of excessive force by defendant are admissible, pursuant to Rule 404(b) of the Federal Rules of Evidence, to show defendant's intent, knowledge and absence of mistake during the incidents of excessive force alleged in the Indictment.

Defendant moves to exclude any evidence as to defendant's use of excessive force against Shields, Foose or Staufenberger. (Dkt. Nos. 85, 96) Defendant argues that the other act evidence: (1) constitutes propensity evidence which is prohibited pursuant to Rule 404(b)(1) of the Federal Rules of Evidence; (2) is inadmissible for any of the other

permitted purposes set forth in Rule 404(b)(2) of the Federal Rules of Evidence; (3) is irrelevant; and (4) is unduly prejudicial. (*Id.*)

On January 23, 2019, the Court heard oral argument as to the admissibility of the other instances of excessive force by defendant. At that time, the Government agreed that it would not reference or introduce evidence of the three other incidents during its case-in-chief. Instead, the Government intended to reserve the evidence for rebuttal. The Government acknowledged it would decide whether to introduce the other act evidence after hearing the arguments made by defendant during cross-examination of Government witnesses as well as any testimony or evidence introduced by defendant. Based upon representations made by the Government, none of the evidence regarding other incidents of excessive force by defendant is to be introduced during the Government's case-in-chief. However, the Court finds, for the reasons stated below, that the other act evidence may likely be admissible during the Government's rebuttal case, either as Rule 404(b) evidence or in response to the anticipated testimony of defendant's character witnesses.

### *Rule 404(b)*

Evidence of a prior bad act is not admissible to show a defendant's propensity to commit the crime charged. *See* Fed. R. Evid. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.") However, evidence of a prior crime, wrong, or other act is admissible for other purposes, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *See* Fed. R. Evid. 404(b)(2). To determine whether other

act evidence is properly admitted under Rule 404(b), a district court must consider whether: (1) the prior act evidence is offered for a proper purpose; (2) the evidence is relevant to a disputed issue; (3) the probative value of the prior act evidence substantially outweighs the danger of its unfair prejudice; and (4) there is an appropriate limiting instruction. *United States v. Cadet*, 664 F.3d 27 (2d. Cir. 2011). The Second Circuit "[t]akes an inclusive approach to other act evidence: it can be admitted for any purpose except to show criminal propensity." *United States v. Germosen*, 139 F.3d 127 (2d Cir. 1998).

The Court first finds that the other act evidence would be offered for a proper purpose. Specifically, defendant's past use of unnecessary violence or excessive force against arrestees or suspects on other occasions during his employment as a police officer is relevant to show that he acted willfully, or with the specific intent or state of mind, to deprive the individuals named in the Indictment of their right to be free from excessive force. Indeed, the Foose and Staufenberger incidents involve defendant punching arrestees who were handcuffed and sitting in the back of a police vehicle. The Shields incident involves defendant jumping on an arrestee multiple times after the arrestee had been apprehended and handcuffed. All three incidents show that, on other occasions, defendant used excessive force or violence with the intention of inflicting harm, pain or punishment on those suspected of criminal activity. This conduct is probative of defendant's intent or state of mind at the time of the incidents alleged in the Indictment, wherein he is accused of intentionally using unnecessary and unreasonable force while arresting or encountering suspects. *See United States v. Brown*, 250 F.3d 580, 584 (7th Cir. 2001) (evidence of prior assault by defendant officer in Section 242 case was

admissible pursuant to Rule 404(b) because the incident was "probative of [defendant's] retaliatory intent to use excessive force whenever his orders are ignored or his authority questioned [and] demonstrated more than [defendant's] general propensity of violence.").[2]

The Court rejects defendant's argument that his intent is irrelevant because all defendant must show is that his actions, at the time of charged events, were objectively reasonable. Here, the jury will be instructed that to determine whether defendant deprived victims of their constitutional rights they should consider "whether the force used by defendant was reasonable or whether it was greater than the force which would have been reasonably necessary under the circumstances to an ordinary and reasonable officer in the same circumstance". L. Sand, et al., *Modern Federal Jury Instructions: Criminal* (2017), ¶17.01, No. 17-5. Thus, should the jury conclude that the force used by defendant in each charged incident was objectively reasonable under the circumstances, they would, necessarily, find that defendant did not deprive the victims of the constitutional right to be free from excessive force. In such a scenario, defendant is correct that his subjective intent is irrelevant, since he did not violate the victim's constitutional rights. However, should the jury conclude that the force used by the defendant *was not* objectively reasonable, the Government *must also prove* that defendant acted willfully. *United States v. Propano*, 17-3466, 2019 WL 115317 (7th Cir. 2018) ("Section 242 is a specific intent crime in that it prohibits the willful deprivation of

---

[2] The Government has also suggested that the other act evidence is probative of defendant's lack of mistake or knowledge that he was violating the victims' constitutional rights. The Government does not intend to offer proof that defendant was disciplined after the other incidents and therefore the Court does not find that they are probative of his knowledge. Also, there is no indication that the defendant intends to argue that he used force inadvertently or by mistake and therefore the Court does not find, at this time, that the evidence shows absence of mistake or accident.

constitutional rights.")  In order to conclude that defendant acted willfully, the jury "must find that the defendant not only had a generally bad or evil purpose, but also that defendant had the specific intent to deprive the victim of the federal right to be free from the use of unreasonable and excessive force…[o]ne may be said to act willfully if one acts in open defiance or in reckless disregard of a known and definite federal right." *Sand, Modern Federal Jury Instructions: Criminal*, ¶17.01, No. 17-5.  Thus, contrary to defendant's contention, not only is defendant's subjective intent relevant, it is an essential element to the crime charged here and must be proven by the Government beyond a reasonable doubt.

Moreover, not only is defendant's intent a specific element of the crime, but the Court is hard-pressed to imagine a scenario where intent will not be a disputed issue during the trial.  Indeed, any testimony, evidence or arguments submitted by defendant to show that he did not intend to subject the victims in the Indictment to excessive force in violation of their constitutional rights would open the door to rebuttal evidence that on three other similar occasions, he intended to do just that with respect to other arrestees or suspects.[3]  For example, representations that defendant applied force out of concern for the safety of himself or others, that he did not treat the victims in a malicious or cruel manner, that he did not seek to injure the victims, that he was not angry at the time of the incident, that he believed the force was appropriate under the circumstances, or other similar inquiries, directly relate to defendant's intent at the time of the charged conduct.[4]

---

[3] Because the Government has agreed that any 404(b) evidence will be offered during its rebuttal case only, the Court does not render an opinion as to whether the evidence would be admissible during the Government's case-in-chief.

[4] The examples cited herein are not meant to be an exhaustive list of the manner in which defendant might open the door to the other act evidence.

Should defendant make these types of arguments during cross-examination or during his case-in-chief, the Government would be permitted to present, on rebuttal, evidence of the other incidents of excessive force. These incidents would be offered not as proof that defendant has a propensity for violence or excessive force. Instead, they would be offered to prove that, on the dates in question, defendant acted not with a good or benign intent to carry out his job duties, but with the specific intent to deprive victims of their constitutional rights to be free from unnecessary or excessive force. *See United States v. Boone*, 828 F.3d 705, 710 (8th Cir. 2016) ("By testifying that he did not intend to hurt…or kick [the victim] in the head, but was instead trying to assist his fellow officers in securing [him], [defendant] placed his state of mind squarely at issue and rendered evidence of his prior use of unreasonable force probative of his intent, knowledge, motive and absence of mistake in his use of force against [the victim]."); *United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993) ("Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged.")

The Court rejects defendant's argument that the other act evidence is inadmissible because it is too remote in time to the charged conduct to be probative of defendant's intent. There is a difference of four years between the oldest allegation of excessive force in the Indictment and the most recent other act involving excessive force. The Court does not find a difference of four years to be so remote as to negate the other acts probative value. Indeed, the other incidents of excessive force are highly similar to the ones charged here. *See United States v. Martino*, 759 F.2d 998, 1004-05 (2d Cir. 1985) (11-year-old conviction relevant to knowledge and intent); *United States v. Shoffner*, 71 F.3d

1429, 1432 (8th Cir. 1995) ("There is no specific number of years beyond which prior bad acts are no longer relevant to the issue of intent."); *United States v. Sanchez*, 518 F. Supp. 2d 615, 616 (S.D.N.Y. 2007) (noting that gap of nine years between prior acts and charged offense "is not sufficient by itself to preclude its use at trial if other relevant criteria are satisfied"). The Court also rejects defendant's contention that the other act evidence is inadmissible because the allegations of excessive force against Shields, Foose, and Staufenberger were "unsubstantiated." The Government indicates that evidence of the other acts will consist of testimony by the victims and other witnesses to the incidents of excessive force. Given the anticipated eye-witness testimony, it cannot be said that the other incidents of excessive force are "unsubstantiated". Further, a prior act does not have to result in official discipline, charges or a conviction to be admissible pursuant to Rule 404(b). *See United States v. Cannon*, 3:05-cr-159, 2006 U.S. Dist. LEXIS 18750, *8-9 (D. Conn. April 12, 2006) ("Rule 404(b) and the relevant case law do not require either a confession by the defendant or an actual conviction as a prerequisite to the admission of evidence of prior crimes, wrongs or bad acts to establish motive, opportunity, intent, knowledge, identity or absence of mistake or accident.")

Finally, even if the Rule 404(b) evidence is both offered for a proper purpose and relevant, "the district court must determine if its potential for unfair prejudice substantially outweighs its probative value." *United States v. Curley*, 639 F.3d 50, 57 (2d. Cir. 2011). *See also Germosen*, 139 F.3d at 127 (The limits set forth in Rule 403 apply to Rule 404(b) and, as a result, other act evidence is admissible only if "the trial judge concludes that its probative value is substantially outweighed by potential for unfair prejudice.") Further, evidence is unfairly prejudicial when "it tends to have some adverse effect upon a

defendant beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Massino*, 546 F.3d 123, 132 (2d Cir. 2008). The Court acknowledges that the other act evidence is prejudicial. Indeed, in two of the instances the individuals were handcuffed, seated in the back of a police car, and offering no resistance of any kind. However, given these circumstances, the other act evidence is also highly probative of defendant's intent to use force not to carry out legitimate law enforcement duties, but to punish or to inflict fear or harm. On balance, the Court does not presently find that the probative value of the other act evidence of excessive force is substantially outweighed by the danger of unfair prejudice.

However, as stated above, the Government will decide, following defendant's cross-examination of witnesses and defendant's case-in-chief, whether it intends to offer evidence of the other instances of excessive force on rebuttal. Here, the Court has acknowledged a number of ways that defendant could open the door to the other act evidence. However, that list is not meant to be exhaustive. Indeed, the scope of the Government's permissible rebuttal is directly related to the defendant's own witnesses and cross-examination of the Government's witnesses. Therefore, should the Government indicate that it intends to offer the other act evidence in rebuttal, the Court will hear further argument from the parties at that time, in light of the requirements of 404(b) and all of the evidence and testimony that has been introduced. Also at that time, the Court will again evaluate the other act evidence pursuant to Rule 403 and consider whether, in light of all the other evidence and testimony, its probative value is substantially outweighed by the danger of unfair prejudice. Indeed, the Court may consider limiting the number of other acts the Government is permitted to introduce. Should the Court permit

the Government to offer the other act evidence, an appropriate limiting instruction will be given to the jury.[5]

<u>*Defendant's Character Witnesses*</u>

As explained in detail above, the Court finds that evidence of other instances of excessive force by defendant may be admissible pursuant to Rule 404(b).  The Court further finds that defendant's anticipated use of character witnesses may also open the door to this evidence.  Defendant notified the Court and the Government that he may call up to eight character witnesses to testify on his behalf.[6]  (Dkt. No. 95)  According to defendant, a number of these witnesses will testify that defendant has a reputation in a shared community for integrity, peacefulness and as a law-abiding individual.  (*Id.*)  Some of the witnesses will also testify as to their opinion that defendant is peaceful, law-abiding, and has integrity.  (*Id.*)  Indeed, this type of evidence is permissible pursuant to Rule 405(a) of the Federal Rules of Evidence, which provides that "[w]hen evidence of a person's character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion." *See* Fed. R. Evid. 405(a).  However, Rule 405(a) further states that "[o]n cross-examination of the character witness, the Court may allow an inquiry into relevant, specific instances of the person's conduct."  Thus, should defendant introduce character witnesses to provide an opinion that he is law-abiding, peaceful and or has integrity, or has a reputation for the same, the Government, may, on cross-examination, ask the witnesses about specific instances where defendant did not act in conformity with those character traits.  This would include posing questions

---

[5] In the event the evidence will be admitted, counsel should submit a proposed limiting instruction.
[6] The Court may limit the amount of character witness defendant is permitted to call to a reasonable number.

to the character witnesses as to their knowledge about his use of unnecessary violence or excessive force against Shields, Foose or Staufenberger during his employment, and whether their opinion of him would change after hearing about or considering this conduct. *See United States v. Birney*, 686 F.2d 102, 108 (2d Cir. 1982) (upholding trial court's admission of cross-examination question as to whether certain non-disclosures by the defendant in loan applications would affect the witness's opinion of the defendant's character); *United States v. Reich*, 420 F. Supp. 2d 75 (EDNY 2006) ("[D]efense counsel offered a character witness who testified to [defendant's] reputation for honesty and integrity in the legal community…[and] [o]n cross-examination, the prosecution [was] entitled to ask the witness about an act, based upon a good faith basis to believe that the act occurred, that tended to show [defendant's] character for dishonesty.").

Likewise, Rule 404(a)(2)(A) provides that "a defendant may offer evidence of the defendant's pertinent character trait and if the evidence is admitted, the prosecutor may offer evidence to rebut it." *See* Fed. R. Evid. 404(a)(2)(A). Pursuant to this Rule, if defendant offers the anticipated character witnesses to offer opinions that defendant is peaceful, law-abiding or has integrity, or to testify as to his reputation in the community for the same, the Government would be permitted to present evidence, in the form of reputation or opinion testimony, that defendant is violent, is not law-abiding, or does not have integrity. *See United States v. Russo*, 110 F.3d 948 (2d Cir. 1997) ("The Federal Rules of Evidence allow a defendant to put his good character in issue as part of his defense to criminal charges…once a defendant offer character testimony, the prosecution is offered substantial latitude to rebut such evidence.")

### *Expert Testimony*

Defendant seeks to offer testimony from two expert witnesses, Mark A. Tartaro and Guy Rossi.[7] These witnesses would be offered as experts in the areas of "police use of force, police defensive tactics, New York State Penal Law Article 35, and police policy and procedure." (Dkt. No. 88) The Government moves to preclude the expert testimony. (Dkt. No. 93) For the reasons stated below, the Court grants the motion to exclude the expert testimony because the anticipated testimony is unnecessary, confusing and prejudicial.

Expert testimony is admissible only when it will "assist the trier of fact to understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702. Although the Federal Rules of Evidence "do not bar all expert testimony concerning an ultimate issue…a district court may exclude ultimate issue testimony under Federal Rule of Evidence 702 when it is not helpful to the jury, or under Rule 403 when it is unduly prejudicial." *See* Fed. R. Evid. 704; *Jackson v. Harsch*, 901 F.2d 252, 256 (2d Cir. 1990). Further, expert testimony is not admissible if it "usurps the role of the jury in applying th[e] law to the facts before it," as such testimony "undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury." *Nimely v. City of N.Y.*, 414 F.3d 381, 397 (2d Cir. 2005). *See also Hygh v. Jackson*, 961 F.2d 359 (2d Cir. 1992) (Rules 701, 702 and 403 "afford ample assurances *against the admission of opinions which would merely tell the jury what result to reach*".)

---

[7] Defense counsel indicates that Tartaro personally trained defendant at the Erie County Law Enforcement Training Academy (Regional Police Academy) on these topics. Thus, it appears that Tartaro would be offered both as a fact witness and an expert witness. Rossi, who has no personal connection to defendant, appears to be offered solely as an expert witness.

Defendant submits that Tartaro and Rossi would testify "regarding Officer Krug's use of force and defensive tactics in the Worthy, Rashada, and Ford incidents [and] regarding Officer Krug's compliance with Buffalo Police Department policies and procedures, including all police records and forms, in each incident." (Dkt. No. 88) During oral argument of the motions *in limine*, the Court asked defense counsel to provide a specific proffer as to the questions counsel intended to ask these expert witnesses. Defense counsel indicated that he would first describe the actions of the suspects or arrestees, specifically Worthy, Rashada and Ford, on the dates in question. Defense counsel would also describe the actions and responses of defendant. Defense counsel would then ask the expert if defendant's actions and responses on the dates in question were consistent with the use of force training given to Buffalo police officers.

First, the Court finds that the proffered testimony is unnecessary. As explained above, in determining whether defendant violated Section 242, the jury must find that defendant deprived the victim of the federal right to be free from unreasonable and excessive force. In making this determination, the jury will be instructed to consider "whether the force used by the defendant was reasonable or whether it was greater than the force which would have been reasonably necessary under the circumstances to an ordinary and reasonable officer in the same circumstances." *Sand*, *Modern Federal Jury Instructions: Criminal*, ¶17.01, No. 17-5. The Court finds that the jury is capable of considering the fact testimony of the witnesses and then making a determination as to whether the force used by defendant in each incident was reasonably necessary under the circumstances. The jury does not need an expert opinion to understand the fact testimony here, which will consist mostly of eye-witness accounts by the alleged victims

and witnesses to the incidents.  Moreover, any expert testimony as to whether defendant complied with Buffalo Police Department use of force training is not helpful to the jury in deciding a fact at issue.  The jury here is tasked with determining whether defendant acted as an ordinary and reasonable officer under the circumstances, not whether he complied with his use of force training.  Indeed, defendant could be charged with use of excessive force regardless of the type of training he received, or whether he no received training at all.  *See United States v. Schatzle*, 901 F.2d 252, 256 (2d. Cir. 1990) (where United States Secret Service Agent was criminally charged with depriving a victim of his constitutional rights by subjecting him to excessive force in violation of Section 242,  the district court did not err in refusing to allow defense expert to testify "as to what opinion or expert advice … he [would] have given to an agent confronted with the facts faced by" defendant because "the jury was capable of assessing the reasonableness of [defendant's] conduct on its own and the [expert] opinion on the issue might confuse the jury.")

Next, the Court finds that the proffered testimony is potentially confusing and prejudicial.  A number of courts have prohibited testimony about the reasonableness of an officer's conduct in both criminal and civil excessive force cases, on the basis that it usurps the role of the jury, substitutes the witness's or expert's judgement for the jury's judgment on an ultimate issue and tells them what result to reach.  *See Callahan v. Wilson*, 863 F.3d 144 (2d Cir. 2017) (in a civil excessive force claim, the district court acted within its discretion in precluding an expert from testifying that the defendant officer did not act reasonably under the circumstances, because the testimony would "intrude on the jury's role as the finder of fact"); *Hygh v. Jackson,* 961 F.2d 359, 364 (2d Cir. 1992)

(expert testimony that officer's conduct was "not justified" or totally improper" should have been excluded); *United States v. Williams*, 343 F.3d 423 (5th Cir. 2003) (in a Section 242 case involving an officer's discharge of weapon and shooting of a suspect, district court erred, under Rule 704(a), by allowing witness to testimony about the reasonableness of the shooting because reasonableness is a legal conclusion). The Court acknowledges that, during the proffer, defense counsel did not indicate that he intended to elicit an opinion from the expert as to whether defendant's actions were reasonable. However, the Court finds that the same dangers would be present should the jury be permitted to hear, from an expert witness, that defendant complied with Buffalo Police Department use of force training during his encounters with Worthy, Rashada and Ford. Indeed, should the jury find the expert's testimony credible, it would be extremely unlikely that they would then conclude that he acted unreasonably during those encounters. Thus, the practical effect of the testimony would be to provide a legal conclusion or suggest to the jury what result to reach. *See Hygh*, 961 F.2d at 364 ("Even if a jury were not misled into adopting a legal conclusion proffered by an expert witness, the testimony would remain objectionable by communicating a legal standard—explicit or implicit—to the jury.")

For these reasons, the Court grants the Government's the motion to exclude expert testimony from Mark Tartaro and Guy Rossi.

### ***Use of Force Training Bulletins and Related Manuals***

Defendant moves to exclude Government Exhibits 1-5 and 8, which include, *inter alia*, Buffalo Police Department use of force training bulletins and manuals.[8] (Dkt. No. 107) During oral argument of the motions *in limine*, defense counsel indicated that it would also object to testimony from fact witnesses regarding the use of force training provided to Buffalo Police Department officers, including defendant. Defendant contends that the exhibits and testimony would be unfairly prejudicial and would prevent the jury from making its own determination as to whether the amount of force utilized by defendant was necessary. For the reasons stated below, the Court will permit the Government to offer fact witnesses to testify regarding use of force training provided to defendant for the limited purpose of showing defendant's knowledge and experience at the time of the incidents in question. While the Government may use the use of force training bulletins and manuals to refresh the witnesses' recollection if necessary, the Government is not permitted to offer those exhibits into evidence for the jury's consideration.

As explained in detail above, the Government has the burden of proving not only that defendant used excessive force, but also that he did so willfully. The jury will be instructed that in determining whether defendant acted willfully, they may "look at the defendant's words, *experience*, *knowledge*, acts and their results in order to decide [the] issue of willfulness. *Sand, Modern Federal Jury Instructions*, ¶17.01, No. 17-6 (emphasis added). Here, the Court finds that testimony describing the use of force training provided to defendant is probative of defendant's experience and knowledge at the time of the

---

[8] In addition to the use of force training bulletins and manuals, Exhibits 1-5 and 8 also include use of force forms and use of force alerts that relate specifically to defendant. During oral argument, the Government indicated that it did not intend to offer these exhibits during their case-in-chief.

incidents in question. Thus, the evidence is directly relevant to the jury's consider of whether defendant acted willfully in depriving Worthy, Rashada, and Ford of their right to be free from excessive force. Indeed, other courts have held that evidence of departmental policies and trainings can be relevant to show intent in Section 242 cases. For example, in *United States v. Propano*, an officer was charged with using excessive force under Section 242 after firing shots at a moving sedan and injuring two occupants. 17-3466, 2019 WL 115317 (7th Cir. Jan. 7, 2019). The Seventh Circuit rejected defendant's arguments that the district court erred by allowing the Government to present evidence of defendant's training to show his intent to violate individuals' constitutional rights. In explaining the connection between the evidence and defendant's intent, the Seventh Circuit explained that "[i]f, as here, an officer has been trained that officers should not do several things when confronted with tense situations, yet he does those, the fact that he broke from his training could make it more likely that he acted willfully." *Id.* at *5-6. *See also United States v. Rodella*, 804 F.3d 1317, 1338 (10th Cir. 2015) (prior training received by officer was admissible because it demonstrated that officer knew that his pursuit of the suspect, in an unmarked vehicle, without emergency lights, and following too closely behind, was unlawful and the jury received a limiting instruction that they were only to consider the evidence in determining whether defendant acted willfully in depriving the victim of a constitutional right).

The Court also does not find a basis to exclude testimony about the use of force training pursuant to Federal Rule of Evidence 403. *See* Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.") The

evidence is highly probative of intent, an element that the Government must prove beyond a reasonable doubt. As explained above, the use of force training is not relevant to the jury's determination as to whether the force applied by defendant was or was not reasonable. Thus, the Court will provide a limiting instruction that the jury is only to consider testimony about the use of force training in determining defendant's knowledge and intent at the time of the incidents in question and is not to consider the training in determining whether defendant actually deprived Worthy, Rashada and Ford of their rights to be free from excessive force or whether the amount of force used was reasonable under the circumstances.[9] Further, as suggested during oral argument, the Court will permit testimony regarding use of force training from witnesses but will not permit the use of force training bulletins and manuals to be entered as exhibits to be considered by the jury. This restriction is meant to limit prejudice by preventing the jury from being able to consider the documents outside the context of the witnesses' testimony. The use of force training bulletins and manuals may be used for the limited purpose of refreshing witnesses' recollection if needed.

For these reasons, the Court grants in part and denies in part defendant's motion to exclude use of force training manuals and bulletins.

### *Civil Lawsuits*

The Government has moved to exclude any testimony regarding civil lawsuits filed against the City of Buffalo and defendant as a result of the incidents alleged in the Indictment. Defendant argues that he should be permitted to ask questions of Worthy, Rashada and Ford regarding the lawsuits, but that there should be no mention that one

---

[9] Counsel is instructed to submit a proposed limiting instruction.

of the lawsuits has been settled.  (Dkt. No. 107)  The Government contends that should the Court permit testimony about the lawsuits, the Government should be permitted to ask about the settlement in order to provide the jury with a complete picture as to what has occurred.  (Dkt. No. 110)

Here, Worthy, Ford and Rashada have all filed civil lawsuits against defendant and the City of Buffalo regarding the incidents charged in the Indictment.  Worthy's lawsuit and Ford's lawsuit remain pending.  Rashada's lawsuit resulted in a settlement in the amount of $10,000.  The Court will permit defendant to ask Worthy, Ford and Rashada about their civil lawsuits against defendant and the City of Buffalo.  The civil lawsuits, and specifically the fact that the witnesses could receive a monetary benefit as a result, is relevant to show bias.  Indeed, at the conclusion of the trial, the Court provides a detailed instruction to the jury regarding how to evaluate witness testimony.  The Court specifically instructs that the jury is to consider potential biases of the witnesses, including whether the witness stands to gain anything by testifying falsely.  The Court further finds that the Government may ask Rashada if his lawsuit has been resolved.  The Court agrees that jury should be told that the lawsuit is no longer pending in order to receive a complete picture.  However, the Government is not permitted to elicit testimony from Rashada that the lawsuit settled in his favor or that he received a monetary payment.  Lawsuits settle for many different reasons, and the fact that the lawsuit settled is not probative of wrongdoing on the part of defendant or the City of Buffalo.  Should there be testimony that the lawsuit has been resolved, the Court will provide a limiting instruction that the jury is not to speculate as to the outcome of the lawsuit or why it is no longer pending.[10]

---

[10] Counsel should provide a proposed limiting instruction.

### *Remaining Motions in Limine*

The Court notes that defendant has also filed a motion *in limine* to exclude the chemical analysis of the pills found on Rashada at the time of his arrest and to exclude evidence as to the disposition of the charges against Worthy and Rashada. The Court will render a determination as to those motions before those witnesses testify. Also, at the time of oral argument as to the motions *in limine* addressed herein, the Court heard argument as to whether certain criminal convictions of witnesses could be used for impeachment. It was noted that with respect to some of the convictions, the Court needed more information as to the underlying facts or circumstances of the crime in order to determine whether the convictions could properly be used for impeachment. Thus, there are outstanding issues as to impeachment of the following witnesses: (1) Crystal Harris; (2) Phil Barlow; (3) Devon Ford; (4) Sharona Devost; and (5) Roger Crowley. Once the Court has the additional information regarding the criminal convictions at issue, it will make a determination as to their admissibility prior to these witnesses' testimony.

## CONCLUSION

The motions *in limine* as to the admissibility of uncharged incidents of excessive force, expert testimony, testimony and exhibits as to use of force training bulletins and manuals and the civil lawsuits are decided in the manner explained above.

**SO ORDERED**.

Dated:  January 28, 2019
          Buffalo, New York

                          _*s/Richard J. Arcara*_____
                          RICHARD J. ARCARA
                          Senior District Judge