UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

                                       1:15-CR-00157 RJA
                                       **DECISION AND ORDER**

     v.

COREY KRUG,

               Defendant.
_____

Defendant Corey Krug ("defendant') is charged with three counts of Deprivation of Constitutional Right under Color of Law in violation of Section 242 of Title 18 of the United States Code and one count of falsification of a Record in a Federal Matter in violation of Section 1519 of Title 18 of the United States Code. (Dkt. No. 1) Specifically, defendant is accused of using excessive force on three separate occasions during his employment as a police officer for the City of Buffalo Police Department. He is further charged with falsifying a Buffalo Police Department record as to one of the incidents.

Before the Court are motions *in limine* by the Government seeking to prohibit defendant from using certain impeachment materials during the

cross-examination of various Government witness. The Court's specific findings with respect to the motions *in limine* are set forth below.[1]

### ***Devin Ford's Prior Drug Conviction***

Defendant seeks to cross-examine Devin Ford, the alleged victim of the excessive use of force charged in Court 4 of the Indictment, with a prior conviction for criminal possession of a controlled substance. The Government objects to the admissibility of the conviction. For the reasons stated below, the Court finds that the conviction, as well as any underlying details and circumstances, are inadmissible cross-examination material.

Federal Rule of Evidence 609 explains when a witness can be impeached by evidence of a criminal conviction. Rule 609(a)(1) provides that, in a criminal case in which the witness is not the defendant, a felony must be admitted, subject to Rule 403, to attack a witness's character for truthfulness. *See* Fed. R. Evid. 609(a)(1). However, misdemeanors are only admissible if they involve a dishonest act or a false statement. *See* Fed. R. Evid. 609(a)(2). Here, the parties dispute whether Ford's conditional guilty plea to narcotics possession with intent to distribute pursuant to a Judicial

---

[1] For purposes of the instant Decision and Order, the Court assumes the parties' familiarity with the prior proceedings, filings and Decisions in this case.

Diversion Program should be treated under Rule 609(a)(1) as a felony or a misdemeanor.

On August 24, 2016, Ford pled guilty, in a designated Drug Court part of New York State Supreme Court, County of Erie, to Criminal Possession of a Controlled Substance in the Third Degree, a Class B felony, pursuant to New York Penal Law § 220.16(1). During the plea colloquy, the prosecutor explained that Ford had been admitted to the Judicial Diversion Program and had signed a contract to enter the program. A Diversion Program Contract provided that if Ford successfully completed drug, alcohol and mental-health treatment, among other requirements, "his conviction for criminal possession of a controlled substance in the third degree would be replaced with a conviction for criminal possession of a controlled substance in the seventh degree, a class A misdemeanor." Likewise, the Diversion Program Contract states that, in the event Ford completes all program requirements, including drug treatment, abstaining from drugs and alcohol, and regular meetings with his case manager, "the Court promises to allow [him] to withdraw [his] plea of guilty and plead guilty to…an "A" misdemeanor." Ford's conviction was ultimately converted or reduced to Criminal Possession of a Controlled

Substance in the Seventh Degree, a misdemeanor.[2]  Thus, notwithstanding the fact that Ford initially pled guilty to a felony, the final result of his conviction was a misdemeanor.  Currently, Ford stands convicted of a misdemeanor offense that does not involve a dishonest act or false statement.

When Ford testifies in this case, he will not have a felony conviction for Criminal Possession of a Controlled Substance in the Third Degree under Penal Law § 220.16(1).  His guilty plea to that felony was withdrawn and replaced with a misdemeanor that does not involve dishonesty or a false statement.  *See* New York Criminal Procedure Law 216.05(10).  The Court therefore finds that the felony is inadmissible for impeachment under Rule 609(a)(1)(A).  *See, United States v. Lane*, 708 F.2d 1394, 1398 (9th Cir. 1983).

Federal Rule of Evidence 609(c)(1) specifically provides that evidence of a conviction is not admissible if "the conviction has been the subject of a pardon, annulment, certification of rehabilitation, or other equivalent procedure based upon a finding that the person has been rehabilitated." *Id.* Here, Diversion Program Contract indicates that Ford was required

---

[2] It is unclear from the record when this occurred.  However, the parties are in agreement that Ford's conviction for criminal possession of narcotics has been reduced to a misdemeanor.

4

accomplish several goals prior to a replacement of his felony with the misdemeanor. These goals include consistently attending drug and alcohol treatment, not using or possessing drugs or alcohol, attending regular meetings with his case manager, attending all scheduled court appearances, completing an approved education requirement, and obtaining either full-time employment or enrolling in a full-time course of study. The subsequent reduction of Ford's conviction to the misdemeanor confirms that he satisfied the Drug Court that he accomplished these goals, all of which were aimed at his rehabilitation.

In *United States v. Pagan*, the Second Circuit concluded that a certificate setting aside a youthful offender's conviction for interstate transportation of a stolen vehicle and unconditionally discharging him from further probation prior to the maximum term of probation implied a finding of rehabilitation or "its equivalent procedure" under Rule 609(c), thus barring admission of the conviction for impeachment purposes. 721 F.2d 24 (2d. Cir. 1983). The Second Circuit noted that "despite the absence of a certificate of rehabilitation or a finding of rehabilitation in so many words by the court," the granting of an early discharge was essentially a finding that the offender had reached the rehabilitative goals of the Youthful Offender Act. *Id.* at 29-30. Similarly here, the Court finds that the Judicial Diversion

5

Program and the reduction of Ford's sentence upon completion of the program constitutes an "other equivalent procedure based upon the finding that the person has been rehabilitated.[3]"

The Court further finds that even if it were to regard the conviction for Criminal Possession of a Controlled Substance in the Third Degree under New York Penal Law § 220.16(1) as an existing felony conviction pursuant to Rule 609(a)(1)(A), or that Rule 609(c) did not apply, it would still not permit the conviction to be used for impeachment. Pursuant to Rule 609(a)(1)(A), felony convictions of witnesses are subject to a Rule 403 analysis before they are admitted. Rule 403 provides that evidence is not to be admitted if its probative value is substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403(b). Here, it is clear that the short-lived conviction for Criminal Possession of a Controlled Substance in the Third Degree has some probative value as to Ford's character for truthfulness. *See, United States v. White*, 312 F.Supp.3d 355, 359 (E.D.N.Y. 2018). But the circumstances of the substitution of the non-impeaching misdemeanor offense through the Judicial Diversion Program are potentially confusing,

---

[3] Not every felony disposition that is withdrawn pursuant to judicial diversion procedures like those in New York Criminal Procedure Law Article 16 is necessarily inadmissible under 609(c)(1). S*ee*, *U.S. v. Jackson*, 863 F. Supp. 1462, 1467 (DKan 1994) (citing cases). Ford's withdrawn felony is inadmissible because it is clear that he formally satisfied the Drug Court that he accomplished the particular and fairly extensive rehabilitative goals of his personal Diversion Program Contract.

6

would be unduly time-consuming to explain, and would tend to emphasize the original disposition more than is warranted by the potential legitimate impeachment value of the felony disposition.

It is obvious that Ford's credibility about the extent of any injuries he suffered as a result of the defendant's alleged excessive use of force will be especially critical to the defense. But is also apparent that the defendant has other substantial grounds to attempt to impeach Ford's credibility. On balance, therefore, the Court finds that the felony's probative value is substantially outweighed by the danger of confusion, by the undue delay necessary to attempt to explain the circumstances of the judicial diversion, and by the unfair prejudice that would likely result because of the emphasis the extensive testimony that would be necessary to put the felony in the correct procedural context would place on that disposition.[4]

Finally, the Court rejects defendant's argument that if Ford's conviction is not admissible pursuant to Rule 609, it is admissible pursuant to Federal Rule of Evidence 608(b). Rule 608(b) states that extrinsic evidence is not

---

[4] Defendant marked as exhibits several newspaper articles regarding Ford's arrest, which resulted in the felony conviction discussed herein. Defendant indicted that the articles would be used to refresh Ford's recollection should he deny the conviction and its underlying circumstances. Because the Court has ruled that evidence of Ford's conviction and its underlying facts and circumstances are inadmissible, the Court does not foresee any circumstances where the newspaper articles could lawfully be used to impeach Ford or to refresh his recollection.

admissible to prove specific instances of a witness's conduct in order to attack or support a witness's character for truthfulness.  *See* Fed. R. Evid. 608(b). However, specific instances of conduct can be inquired about during cross-examination if they are probative of a witness's character for truthfulness or untruthfulness.  *Id.*  The Court does not find Ford's possession of narcotics, even though he possessed narcotics with the intent to sell them, to be highly probative of his character for truthfulness.  *See United States v. Nelson*, 365 F. Supp. 2d 381 (SDNY 2005); *accord Weinstein's Federal Evidence* § 608.22(c)(i) ("Rule 608(b) is intended to be restrictive…The rule does not authorize inquiry on cross-examination into instances of conduct that do not actually indicate a lack of truthfulness."); *United States v. Turner*, 104 F.3d 217, 223 (8th Cir. 1997) ("Misconduct involving violations of narcotics laws is not an act involving dishonesty or untruthfulness and therefore may not be inquired into under Federal Rule of Evidence 608(b).").

### ***Statements by Ford on Social Media***

Defense Exhibits 26 through 29 consist of numerous statements ("posts"), that Ford made on social media internet sites from 2012 through 2014.  Defendant indicates that, with one exception which will be discussed further below, he does not intend to offer these posts as evidence.  Instead, defendant argues that these posts can be inquired about during cross-

8

examination of Ford because they demonstrate Ford's character for untruthfulness, his lack of credibility, and his bias against defendant and police officers in general.

The Confrontation Clause guarantees a defendant the right to cross-examine government witnesses to test their truthfulness or to reveal their "possible biases, prejudices, or ulterior motives" in relation to "the case at hand." *United States v. Figueroa*, 548 F.3d 222, 227 (2d Cir. 2008). This right is especially important "when applied to the government's star witness or to a witness who provides an essential link in the government's case." *United States v. Paul*, 194 Fed. App'x 792, 794 (11th Cir. 2006). Within the mandates of the Confrontation Clause, the court "may impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is . . . only marginally relevant." *Figueroa*, 548 F.3d at 227. The Court's rulings as to how defendant may question Ford about his social media posts are as follows.

### *Drinking and Drug Use*

In many of the posts spanning from 2012 through December 2014, Ford states that he is either intoxicated or high on marijuana, or that he is planning to drink alcohol or use marijuana. He posts pictures of himself with

9

alcohol or drugs and boasts about this type of behavior.  The Court finds that Ford's use of alcohol or drugs on occasions other that the night of the alleged excessive force incident is irrelevant and is not proper grounds for impeachment.  Furthermore, the fact that Ford boasted and bragged about drinking and drug use on occasions other than the night of the incident is likewise irrelevant and not grounds for impeachment.  Contrary to defendant's contention, a witness's use of drugs or alcohol, in and of itself, is not probative of their character for truthfulness.  *See Furlong v. Circle Line Statute of Liberty Ferry*, 902 F. Supp. 65, 68 (SDNY 1995) (witness's alleged cocaine use two and one-half years before the event giving rise to the lawsuit was not proper impeachment material since it could not have affected the witness's ability to observe and perceive the events and the drug use was not probative of untruthfulness).

However, drug or alcohol use at the time of the events in question is relevant to a witness's credibility, since it effects their ability to perceive the events and to recount them accurately.  Thus, defendant is permitted to ask Ford questions, on cross-examination, as to whether he drank to the point of intoxication or used drugs on the date of the incident.  Indeed, on November 27, 2014, Ford posts the statement "never drinking again!!"  Should Ford deny or attempt to minimize his alcohol consumption on that date, defendant

10

may use the November 27, 2014 social media post to refresh Ford's recollection. However, contrary to defendant's argument, the November 27, 2014 social media post is not admissible evidence. The post is inadmissible hearsay under Federal Rule of Evidence 803. It is an out-of-court statement offered for the truth of the matter asserted. Further, the post does not qualify for any of the exceptions to the hearsay rule under the Federal Rules of Evidence proposed by the defendant. Thus, the post may be used only to refresh the witness's recollection if needed.

### *Posts Regarding the Police*

Defendant has submitted the following three social media posts by Ford that reference police officers: (1) on November 8, 2013, Ford posts "fucking cops smh"; (2) on December 1, 2013, Ford posts "soon as I walk in the party cops come next party!"; and (3) on July 29, 2015, Ford posts "Cops killing people with their arms up and ur main focus is tryna harm us?". These posts may show only a generalized bias of Ford's against police officers. But defense counsel has a good faith basis to ask Ford whether has ever spoken out against police officers use of force on social media or elsewhere. Under Rule 403, the Court finds the posts should not be admitted into evidence but may only be used as a basis for cross-examination or to refresh the witness's recollection if needed.

*Other Posts*

Defendant has submitted a number of posts by Ford which reference driving illegally or without a valid license. The Court finds that these statements prove neither bias nor a lack of credibility. Therefore, they are not proper impeachment or cross-examination material.

In addition, defendant has submitted posts wherein Ford references the incident with defendant or cites to newspaper articles regarding the incident. The Court finds that these posts may be probative of bias and are relevant to his perceptions and memories of the event. Thus, those posts may be inquired about during Ford's cross-examination and used to refresh his recollection if needed.

### *Police Reports*

Defense Exhibits 87 through 89 consist of 16 police reports or complaints from 2008 through 2016 wherein Ford is mentioned as either a suspect or a victim. None of the incidents mentioned in the reports resulted in a criminal conviction. Thus, they are inadmissible pursuant to Rule 609. *See Michelson v. United States*, 335 U.S. 469, 482, 69 S. Ct. 213, 93 L. Ed. 168 (1948) ("Arrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness. It happens to the

innocent as well as the guilty. Only a conviction, therefore, may be inquired about to undermine the trustworthiness of a witness.").

Defendant argues that the police reports are admissible for impeachment pursuant to Rule 608(b) because they are probative of Ford's lack of credibility and character for untruthfulness. The Court has reviewed the police reports in detail, including the penal law provisions cited therein and the descriptions of events. To be sure, the reports detail anti-social, unlawful and sometimes violent behavior, including criminal mischief, damaging property, harassment, domestic violence, criminal trespass, possession of marijuana, assault, aggravated unlicensed of a motor vehicle, and burglary. However, none of the conduct cited in the reports involves dishonesty, fraud or false statements. Thus, the incidents are not probative of Ford's character for truthfulness and are not admissible pursuant to Rule 608(b). *See United States v. Devery*, 935 F. Sup. 393 (SDNY 1996) ("not all prior bad acts are admissible to impeach a witness…[s]uch act are only admissible insofar as they bear on a witness's propensity for truthfulness or untruthfulness.")

Defendant argues that the cumulative effect of the police reports demonstrates that Ford's conduct and behavior is so egregious, he is not credible. However, this is equivalent to stating that Ford's alleged prior bad

13

acts are indicative of bad propensities or of his character as a bad person who cannot be believed.  By logical extension, the argument would entail that any witness with a significant number of arrests could be treated as having a bad character for truthfulness, regardless of whether the arrests resulted in conviction or involved dishonesty.  This is not the law.

Finally, defendant argues that Ford's arrest for trespass by the Buffalo Police Department on April 3, 2014 is permissible cross-examination material because it demonstrates Ford's bias against Buffalo Police officers and specifically defendant.  However, there is no indication that defendant was involved in Ford's arrest on this date.  Moreover, it is a minor crime that did not result in a conviction or punishment.  Indeed, the only narrative of the event states that "defendant did push way through bar when he was told to leave the premises."  This incident is simply too attenuated from any of the events charged in this case to be probative of Ford's bias against Buffalo Police officers or defendant.  Thus, it cannot be used for impeachment.

### *Daniel Rashada*

Daniel Rashada is the victim in Count 3 of the Indictment and will testify as to his encounter with defendant.  Defense Exhibit 35 contains a number of social media posts by Rashada, wherein he discusses police brutality, racial inequality or abuses of authority by police officers.  As stated during

oral argument, some of these posts are permissible cross-examination material because they may be probative of Rashada's specific bias against police officers. For the reasons stated above, the social media posts are not admissible evidence and may only be used as a basis for cross-examination and to refresh the witness's recollection if needed. In addition, the Court may limit the questioning to a reasonable number of posts, should the evidence or questioning become cumulative.

### Sean Deschant

Sean Deschant will be called as a Government witness to testify about the events involving defendant and Ford on November 26, 2014. Defendant has submitted a social media post by Sean Deschant on November 26, 2014, stating "Biggest Drinking Day of the Year…Let's Get Shwasted." As stated above, a witness's use of alcohol at the time of the event is relevant as to their ability to perceive and recall the incident. Defense counsel may ask Sean Deschant about his alcohol use that day as well as whether he intended to drink to the point of intoxication. Should Sean Deschant deny or minimize his alcohol consumption, the post may be used to refresh his recollection. It may not be offered as evidence.

Defense Exhibit 88 is a police report indicating that Sean Deschant was arrested for unlawful possession of marijuana on May 6, 2011. This

arrest did not result in a conviction, does not involve dishonesty and does not demonstrate bias. Therefore, it cannot be used on cross-examination.

**<u>Justin Deschant</u>**

Justin Deschant, Sean's brother, will also be called as a Government witness to testify about the events involving defendant and Ford on November 26, 2014. Defense Exhibit 89 are police reports indicating that Justin Deschant was arrested for aggravated harassment in June of 2006, possession of alcohol while underage in February of 2010, criminal possession of a weapon in November of 2014, driving while intoxicated in November of 2014, burglary and assault in April of 2014, and assault in August of 2015. There is no proof that any of these arrests resulted in convictions and the conduct does not involve dishonesty. Thus, for the same reasons as stated above with respect to Ford's arrest reports, they are not permissible cross-examination material.

Justin Deschant was arrested on March 28, 2011, by officers from the Buffalo Police Department, for obstruction of justice during a traffic stop. The arrest report indicates that he refused to exit the vehicle and yelled obscenities at the police. Defendant argues that this arrest is admissible to show Justin Deschant's bias against Buffalo Police officers and specifically defendant. Defendant notes that one of the arresting officers was Joseph

16

Hassett, who was on a detail with defendant the night of the encounter with Ford. Again, the Court finds this arrest too attenuated to show bias against the police or defendant. There is no showing that J. Deschant was convicted of these crimes or punished in any way. While the arrest involved Buffalo Police officers, it did not involve defendant. Further, Justin Deschant is not the alleged victim of the crime but rather a witness and thus has less of a motive to testify inaccurately. For these reasons, the Court does not find it likely that the arrest would motivate Justin Deschant to testify falsely against defendant here. Thus, it is not be inquired about.

## **CONCLUSION**

The pending motions *in limine* regarding impeachment evidence to be used during cross examination of Devin Ford, Daniel Rashada, Sean Deschant and Justin Deschant are granted in part and denied in part for the reasons stated above.

**SO ORDERED**.

Dated: February 2, 2019
      Buffalo, New York

_____
RICHARD J. ARCARA
United States District Judge

17