UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

                             1:15-CR-00157 RJA
                             DECISION AND ORDER

       v.


COREY KRUG,

                       Defendant.
_____

A trial in this matter is scheduled to begin on June 11, 2019.  Before the Court are various motions *in limine* either filed by the parties or raised during the pretrial conference held on May 30, 2019.  The Court heard oral argument on June 3, 2019.  The Court's specific findings with respect to the pending motions *in limine* are set forth in detail below.

## <u>RELEVANT FACTS AND BACKGROUND</u>

Defendant Corey Krug ("defendant") was previously charged, in a superseding indictment filed on September 3, 2015, with three counts of Deprivation of Constitutional Right under Color of Law in violation of Section 242 of Title 18 of the United States Code and one count of Falsification of a Record in a Federal Matter in violation of Section 1519 of Title 18 of the United States Code (the "Indictment").  (Dkt. No. 1)  Specifically, defendant

was accused of using excessive force on three separate occasions during his employment as a police officer for the City of Buffalo Police Department ("BPD"). (*Id.*)  He was further charged with falsifying a BPD record as to one of the incidents.  (*Id.*)  A jury trial commenced on January 24, 2019.  On February 26, 2019, the jury returned a verdict finding defendant not guilty as to two counts of Deprivation of a Constitutional Right (Counts 1 and 3 of the Indictment) and not guilty as to Falsification of a Record in a Federal Matter (Count 2 of the Indictment).  The jury was unable to reach a verdict as to the one remaining count of Deprivation of a Constitutional Right (Count 4 of the Indictment).  The Court declared a mistrial as to Count 4 on February 27, 2019.  A new jury trial as to Count 4 is scheduled to commence before this Court on June 11, 2019.

The facts surrounding Count 4 are as follows.  Chippewa Street is a well-known area in the City of Buffalo and is the location of many popular restaurants, bars and nightclubs.[1]  In addition, November 27, 2014 was the day before the Thanksgiving holiday, which is typically a busy night for bars and restaurants on Chippewa Street.  Defendant worked a special detail on Chippewa Street that evening.  Devon Ford and another man were ejected

---

[1] The facts discussed herein have been taken from the Indictment, the Government and defendant's pretrial filings, representations made by counsel during oral argument and all prior pre-trial motions and briefs filed in this matter.

from a nightclub on Chippewa Street after an altercation. There was a verbal exchange on the street related to the altercation, and BPD officers dispersed the group with pepper spray. Shortly thereafter, on the corner of Chippewa Street and Pearl Street, there was another interaction between Ford, Ford's friends, the man Ford had previously been in an altercation with, and the man's friends. It is alleged that defendant approached Ford at a fast pace while holding his nightstick horizontally in both hands, slammed Ford against the hood of a car and then pushed Ford onto the ground. Defendant then placed both knees on Ford's groin, abdomen and chest. It is alleged that defendant then stood up and struck Ford on the legs while shouting at him to "get up." Defendant stuck Ford twice more and yelled "Get the fuck up." Another officer approached and told defendant to "relax." Officers told Ford to get up and leave the scene. Ford was not charged with a crime. The officers use of pepper spray and the use of force by defendant against Ford were captured on video by a photographer working for a local news station.

## DISCUSSION

### *Government's Motion to Introduce Evidence of Defendant's Prior Conduct Pursuant to Rule 404(b).*

The Government has moved to introduce evidence of six prior instances where defendant used excessive or unnecessary force against arrestees or suspects during his employment as a BPD officer. (Dkt. No.

145)[2]  Three of the incidents relate to conduct for which defendant was never charged criminally.  These three incidents were also the subject of a similar motion *in limine* by the Government in the prior trial in this matter (the "Prior Acts").[3]  Two of the incidents relate to the conduct charged in Count 1 and Count 3 of the Indictment.  As stated above, defendant was acquitted of these charges at the conclusion of the prior trial (the "Acquitted Acts").  The final incident came to the attention of the Government after the prior trial in this matter (the "New Act").  The facts of the Prior Acts, the Acquitted Acts, and the New Act are described below.

### *The Prior Acts*

On February 16, 2004, Jason Shields failed to stop for BPD officers, including defendant, when they attempted to pull him over for a license plate violation.  When Shields did stop, he was forcibly removed from his van, subdued and handcuffed.  The Government seeks to introduce evidence that after Shields was handcuffed, defendant stood on Shields' back and jumped up and down one or more times.  Defendant then slammed Shields into the

---

[2] Defendant filed a response in opposition to the Government's motion on May 31, 2019 (Dkt. No. 154) and the Government filed a reply on June 2, 2019.  (Dkt. No. 155).

[3] In the prior trial, the Government did not seek to introduce the Prior Acts during its case-in-chief but instead reserved the evidence for rebuttal.  This Court issued a Decision and Order as to the potential admissibility of the Prior Acts on January 28, 2019.  (Dkt. No. 118)  However, the Government never sought to introduce the Prior Acts during its rebuttal case.  Thus, this issue became moot in the previous trial.

van.  It is alleged that defendant later used an ice scraper to scrape Shields' blood off the window of the van to eliminate evidence of the altercation. Shields received stiches to his face, staples on his scalp, and dental treatment for two fractured teeth.  He also had multiple contusions on his back.

On January 15, 2006, defendant arrested Donald Foose following a domestic dispute.  The Government seeks to introduce evidence that Foose was handcuffed and placed in the back of defendant's police car.  While defendant was transporting Foose, Foose attempted to explain what happened and why he should not have been arrested.  It is alleged that after telling Foose to "shut-up", defendant pulled over the police car, walked around to the rear passenger-side door, opened it, and punched Foose in the jaw.

On December 6, 2006, while riding in his police car, defendant observed Donald Staufenberger and another individual sitting in a parked car.  Defendant recognized the other individual and believed he had outstanding warrants.  Defendant stopped, spoke with Staufenberger and stated that he smelled marijuana.  Defendant then ordered Staufenberger and the other individual to exit the car.  Defendant arrested Staufenberger but the other individual fled.  Defendant placed Staufenberger in the back of

his police car and drove around, attempting to find the other individual. The Government seeks to introduce evidence that when defendant could not locate the other individual, he pulled over the police car, opened the rear door and punched Staufenberger, who was handcuffed, in the jaw. Defendant then told Staufenberger to pass that along to his friend who fled.

### *The Acquitted Acts*

On August 29, 2010, defendant and other BPD officers responded to a 911-call reporting a man with a gun at 46 Langmeyer Avenue in the City of Buffalo. When the officers arrived, Marcus Worthy, wearing clothing matching the description of the individual identified in the 911-call, was standing near a vehicle and speaking with a female. Officers proceeded to pat-down Worthy, and one of the officers exclaimed that Worthy had a gun. The Government alleges that after officers subdued Worthy and held him against the vehicle, defendant repeatedly hit Worthy on the head with his flashlight. Defendant arrested Worthy and charged him with criminal possession of a weapon, menacing, obstructing governmental administration and resisting arrest. After he was released from jail, Worthy received four stiches to his scalp at Erie County Medical Center.

On February 4, 2011, defendant and other officers responded to a call regarding a suspicious person on Ivy Street in the City of Buffalo. While

looking for the individual, defendant encountered Daniel Rashada on a nearby street. Rashada was apparently walking home to his residence after work. As Rashada passed the patrol car, defendant asked Rashada his name and where he was going. Rashada provided his name and pointed to his residence, which was located a few houses away from where he was standing. It is alleged that defendant ordered Rashada to place his hands on the police vehicle, kicked his legs apart, and tripped him, causing Rashada to fall to the ground. Defendant then placed his knee on Rashada's chest and struck him in the face with a flashlight.

### *The New Act*

On September 21, 2013, defendant and his partner stopped Ricky Spencer on 1103 E. Ferry Street for riding a bicycle without a light or reflector. Defendant ordered Spencer off his bike. While defendant and his partner checked Spencer's identification and asked if he had any outstanding arrest warrants, Spencer turned and spit on the ground. Defendant's partner accused Spencer of spitting in his face. It is alleged that defendant's partner then threw Spencer against the police car and took him to the ground, causing a fracture to Spencer's arm. While Spencer was on the ground, either defendant or his partner kicked Spencer in the back of the head.

The Government contends that the Prior Acts, the Acquitted Acts and the New Acts are all admissible, pursuant to Rule 404(b) of the Federal Rules of Evidence, to show defendant's intent, motive or state of mind during his use of force against Ford on November 27, 2014.[4]  Defendant moves to exclude all evidence of the Prior Acts, the Acquitted Acts, and the New Act on the basis that the evidence: (1) is not offered for a proper purpose; (2) is not related to a disputed issue; (3) is insufficient; and (4) is unduly prejudicial. During oral argument on June 3, 2019, the Government stated that it did not intend to introduce any of the other act evidence during its case-in-chief. Instead, the Government would reserve the evidence for possible admission during its rebuttal case, depending on the arguments raised during cross-examination as well as any testimony or evidence offered by defendant.

Based upon the representations made by the Government, the Court does not render an opinion as to whether the Prior Acts, the Acquitted Acts or the New Act would be admissible during the Government's case-in-chief. Likewise, none of the other act evidence is to be introduced during the Government's case-in-chief.  However, the Court finds, for the reasons

---

[4] The Government's brief also suggests that the other act evidence is admissible to show absence of mistake or defendant's knowledge that the use of unnecessary or unreasonable force in performing his duties is illegal.  While the Government indicates that some of the incidents resulted in internal affairs investigations, it does not appear that the Government intends to offer proof that defendant was disciplined after any of the incidents.  Therefore, the Court does not find that they are probative of knowledge or absence of mistake.

stated below, that the other act evidence is likely admissible during the Government's rebuttal case pursuant to Rule 404(b) of the Federal Rules of Evidence. However, in light of the requirements of Rule 403 of the Federal Rules of Evidence, the Court will likely limit the other act evidence in the manner described below.

### Rule 404(b)

Evidence of a prior bad act is not admissible to show a defendant's propensity to commit the crime charged. *See* Fed. R. Evid. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.") However, evidence of a prior crime, wrong, or other act is admissible for other purposes, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *See* Fed. R. Evid. 404(b)(2). Other act evidence is properly admitted under Rule 404(b) if: (1) the prior act evidence is offered for a proper purpose; (2) the evidence is relevant to a disputed issue; (3) the probative value of the prior act evidence is not substantially outweighed by the danger of unfair prejudice; and (4) there is an appropriate limiting instruction. *United States v. Cadet*, 664 F.3d 27, 33 (2d. Cir. 2011); *United States v. Williams*, 205 F.3d 23, 33-34 (2d Cir. 2000). The Second

Circuit "[t]akes an inclusive approach to other act evidence: it can be admitted for any purpose except to show criminal propensity." *United States v. Germosen*, 139 F.3d 120, 127 (2d Cir. 1998).

First, the Court finds that the other act evidence would be offered for a proper purpose. Specifically, defendant's past use of allegedly unnecessary violence or excessive force against arrestees or suspects on other occasions during his employment as a BPD officer is relevant to show that he acted willfully, or with the specific intent or state of mind, to deprive Ford of his right to be free from excessive force during their encounter on November 27, 2014. Indeed, the Foose and Staufenberger incidents involve defendant punching arrestees who were handcuffed and sitting in the back of a police vehicle. The Shields incident involves defendant jumping on an arrestee multiple times after the arrestee had been apprehended and handcuffed. Similarly, the Worthy and Rashada incidents involve defendant allegedly using more force than necessary during an arrest or applying force when a suspect had already been subdued or restrained. The Spencer incident involves defendant or his partner kicking the arrestee in the head after he was taken to the ground.[5] All six incidents show that, on other occasions,

_____

[5] The Court notes that there is not conclusive evidence as to whether it was defendant or his partner who kicked Spencer. The probative value of the Spencer incident is discussed in greater detail later in this Decision and Order, when the Court considers Rule 403 of the Federal Rules of Evidence.

defendant used allegedly excessive force or violence with the intention of inflicting harm, pain or punishment on those suspected of criminal activity. This conduct is potentially probative of defendant's intent or state of mind on November 27, 2014, wherein he is accused of intentionally using unnecessary and unreasonable force during his encounter with Ford on Chippewa Street. *See United States v. Brown*, 250 F.3d 580, 584 (7th Cir. 2001) (evidence of prior assault by defendant officer in Section 242 case was admissible pursuant to Rule 404(b) because the incident was "probative of [defendant's] retaliatory intent to use excessive force whenever his orders are ignored or his authority questioned [and] demonstrated more than [defendant's] general propensity of violence.").

The Court rejects defendant's argument that his intent is irrelevant because all defendant must show is that his actions, at the time of charged event, were objectively reasonable. Here, the jury will be instructed that to determine whether defendant deprived the victim of his constitutional rights they should consider "whether the force used by defendant was reasonable or whether it was greater than the force which would have been reasonably necessary under the circumstances to an ordinary and reasonable officer in the same circumstance". L. Sand, et al., *Modern Federal Jury Instructions: Criminal* (2017), ¶17.01, No. 17-5. Thus, should the jury conclude that the

force used by defendant against Ford on November 27, 2014 was objectively reasonable under the circumstances, they would, necessarily, find that defendant did not deprive Ford of his constitutional right to be free from excessive force. In such a scenario, defendant is correct that his subjective intent is irrelevant, since he did not violate Ford's constitutional rights. However, should the jury conclude that the force used by defendant *was not* objectively reasonable, the Government *must also prove* that defendant acted willfully. *United States v. Propano*, 17-3466, 2019 WL 115317 (7th Cir. Jan. 7, 2019) ("Section 242 is a specific intent crime in that it prohibits the willful deprivation of constitutional rights.") In order to conclude that defendant acted willfully, the jury "must find that the defendant not only had a generally bad or evil purpose, but also that defendant had the specific intent to deprive the victim of the federal right to be free from the use of unreasonable and excessive force…[o]ne may be said to act willfully if one acts in open defiance or in reckless disregard of a known and definite federal right." *Sand, Modern Federal Jury Instructions: Criminal*, ¶17.01, No. 17-5. Thus, not only is defendant's subjective intent relevant, it is an essential element to the crime charged here and must be proven by the Government beyond a reasonable doubt.

Likewise, the Court rejects defendant's argument that because the excessive force analysis is "inherently fact-dependent", prior incidents of excessive force are not probative of defendant's intent or state of mind during his encounter with Ford on November 27, 2014. Indeed, a determination as to whether the amount of force used by defendant against Ford was reasonable under the circumstances is dependent on the jury's analysis of the facts, after hearing the testimony and evidence presented regarding the events of November 27, 2014. However, as stated above, if the jury finds that defendant's actions on that date were unreasonable, they will also be asked to determine whether his conduct was willful. This determination requires them to evaluate defendant's intent or state of mind on the night in question. Specific intent can be difficult to prove. *See Clayborne v. Califano*, 603 F.2d 372, 380 (2d Cir. 1979) ("Intent and motive are usually difficult to prove."); *United States v. Salameh*, 152 F.3d 88, 143 (2d Cir. ("[A]s a general rule most evidence of intent is circumstantial.") Here, evidence that defendant previously applied excessive and unreasonable force with suspects or arrestees is helpful and relevant to the jury in determining whether defendant believed his use of force against Ford was appropriate, or whether he willfully applied unreasonable force in order to punish, inflict harm or cause fear. *See United States v. Fischer*, 15-CR-19, 2017 U.S. Dist.

LEXIS 200857 (WDNY Dec. 6, 2017) (granting motion to introduce Rule 404(b) evidence because "uncharged conduct would tend to prove an issue—[defendant's] intent—that is often difficult to prove by direct evidence.") Further, the jury will be instructed that in determining whether defendant acted willfully, they may "look at the defendant's, *experience*, knowledge, acts and their results in order in order to decide [the issue] of willfulness." *Sand, Modern Federal Jury Instructions*, ¶17.01, No. 17-6 (emphasis added). The prior instances of excessive force are certainly probative of defendant's experience at the time of event charged in this case.

Moreover, not only is defendant's intent a specific element of the crime, but the Court is hard-pressed to imagine a scenario where intent will not be a disputed issue during the trial. Indeed, any testimony, evidence or arguments submitted by defendant to show that he did not intend to subject Ford to excessive force in violation of his constitutional rights would open the door to rebuttal evidence that on other similar occasions, he intended to do just that with respect to other arrestees or suspects. For example, representations that defendant applied force out of concern for the safety of himself or others, that he did not treat Ford in a malicious or cruel manner, that he did not seek to injure Ford, that he was not angry at the time of the incident, that he believed the force was appropriate under the circumstances,

or other similar inquiries, directly relate to defendant's state of mind or intent on November 27, 2014.[6]  Should defendant make these types of arguments during cross-examination or during his case-in-chief, the Government would be permitted to present, on rebuttal, evidence of the other incidents of excessive force.   These incidents would be offered not as proof that defendant has a propensity for violence or excessive force.  Instead, they would be offered to prove that, on the dates in question, defendant acted not with a good or benign intent to carry out his job duties, but with the specific intent to deprive Ford of his constitutional right to be free from unnecessary or excessive force.  *See United States v. Boone*, 828 F.3d 705, 710 (8th Cir. 2016) ("By testifying that he did not intend to hurt…or kick [the victim] in the head, but was instead trying to assist his fellow officers in securing [him], [defendant] placed his state of mind squarely at issue and rendered evidence of his prior use of unreasonable force probative of his intent, knowledge, motive and absence of mistake in his use of force against [the victim]."); *United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993) ("Where a defendant claims that his conduct has an innocent explanation, prior act

---

[6] The examples cited herein are not meant to be an exhaustive list of the manner in which defendant might open the door to the other act evidence.

evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged.")

The Court rejects defendant's argument that the other act evidence is inadmissible because it is too remote in time to the charged conduct to be probative of defendant's intent. Defendant notes that three of the prior acts occurred between 2004 and 2006, eight or ten years prior to defendant's encounter with Ford on November 27, 2014. The Court does not find this difference to be so remote as to negate the probative value of the other acts. Indeed, the other incidents of excessive force are highly similar to the ones charged here. *See United States v. Martino*, 759 F.2d 998, 1004-05 (2d Cir. 1985) (11-year-old conviction relevant to knowledge and intent); *United States v. Shoffner*, 71 F.3d 1429, 1432 (8th Cir. 1995) ("There is no specific number of years beyond which prior bad acts are no longer relevant to the issue of intent."); *United States v. Sanchez*, 518 F. Supp. 2d 615, 616 (S.D.N.Y. 2007) (noting that gap of nine years between prior acts and charged offense "is not sufficient by itself to preclude its use at trial if other relevant criteria are satisfied.").

The Court also rejects defendant's contention that the prior act evidence is inadmissible because the allegations of excessive force were "unsubstantiated." The Government's witness list indicates that evidence of

the other acts will consist of testimony by the victims. Given the anticipated eye-witness testimony, it cannot be said that the other incidents of excessive force are unsubstantiated. Further, a prior act does not have to result in official discipline, charges or a conviction to be admissible pursuant to Rule 404(b). *See United States v. Cannon*, 3:05-cr-159, 2006 U.S. Dist. LEXIS 18750, *8-9 (D. Conn. April 12, 2006) ("Rule 404(b) and the relevant case law do not require either a confession by the defendant or an actual conviction as a prerequisite to the admission of evidence of prior crimes, wrongs or bad acts to establish motive, opportunity, intent, knowledge, identity or absence of mistake or accident.")

Similarly, evidence of conduct for which a defendant was previously acquitted is admissible at a subsequent trial for the purposes enumerated in Rule 404(b), provided that all other evidentiary requirements are met. *See Dowling v. United States*, 493 U.S. 342, 349 (1990); *accord United States v. Felix*, 503 U.S. 378, 386 (1992) ("The primary ruling of [*Dowling*] was [the] conclusion that the collateral-estoppel component of the Double Jeopardy Clause offered [defendant] no protection despite his earlier acquittal, because the relevance of evidence offered under Rule 404(b) was governed by a lower standard than that required for a conviction."). *See also Charles v. Hickman*, 228 F.3d 981, 986 (9th Cir. 2000) (court did not err in permitting

admission of evidence of defendant's prior trial and acquittal for a stabbing in defendant's present murder trial because evidence of the prior stabbing was introduced to show retaliatory motive in present case and "a jury could have believed that [defendant] more likely than not stabbed [the victim] in retaliation for snitching, yet not believed it beyond a reasonable doubt.").

For these reasons, the Court finds that the Prior Acts, the Acquitted Acts, and the New Act are likely admissible, in the Government's rebuttal case, pursuant to Rule 404(b) of the Federal Rules of Evidence.[7] The Court now addresses whether the Rule 404(b) evidence satisfies the remaining evidentiary requirements.

*Rule 403*

Even if Rule 404(b) evidence is both offered for a proper purpose and relevant, "the district court must determine if its potential for unfair prejudice

---

[7] In the prior trial, this Court determined that defendant also may open the door to other act evidence of excessive force should he call character witnesses. (Dkt. No. 118, pgs. 13-14) Here, defendant's List of Potential Witnesses includes a number of character witnesses. Rule 405(a) of the Federal Rules of Evidence provides that "[o]n cross-examination of the character witness, the Court may allow an inquiry into relevant, specific instances of the person's conduct." Thus, should defendant introduce character witnesses to provide an opinion that he is law-abiding or peaceful, or has integrity or other similar qualities, or has a reputation for the same, the Government may, on cross-examination, ask the witnesses about specific instances where defendant did not act in conformity with those character traits. This would include posing questions to the witnesses as to their knowledge of defendant's use of unnecessary violence or excessive force against other arrestees or suspects. Similarly, Rule 404(a)(2)(A) of the Federal Rules of Evidence provides that "a defendant may offer evidence of the defendant's pertinent character trait and if the evidence is admitted, the prosecutor may offer evidence to rebut it." Thus, if defendant offers character witnesses to opine as to defendant's good character traits, the Government would be permitted to present evidence, in the form of reputation or opinion testimony, that defendant does not possess these character traits.

substantially outweighs its probative value." *United States v. Curley*, 639 F.3d 50, 57 (2d. Cir. 2011). *See also Germosen*, 139 F.3d at 127 (The limits set forth in Rule 403 apply to Rule 404(b) and, as a result, other act evidence is admissible only if "the trial judge concludes that its probative value is not substantially outweighed by potential for unfair prejudice.") Further, evidence is unfairly prejudicial when "it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Massino*, 546 F.3d 123, 132 (2d Cir. 2008). Rule 403 further provides that otherwise relevant and admissible evidence may be excluded if its probative value is substantially outweighed by a danger of confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *See* Fed. R. Evid. 403. Given these parameters, the Court will conduct a Rule 403 analysis separately with respect to the Prior Acts, the Acquitted Acts, and the New Act.

With respect to the Prior Acts, the Court acknowledges that the evidence is prejudicial. Indeed, in two of the instances the individuals were handcuffed, seated in the back of a police car, and offering no resistance of any kind. However, given these circumstances, evidence of the Prior Acts is also highly probative of defendant's intent to use force not to carry out

legitimate law enforcement duties, but to punish or to inflict fear or harm. On balance, the Court does not presently find that the probative value of the Prior Acts is substantially outweighed by the danger of unfair prejudice. Nor does the Court find a basis, at this time, to exclude the Prior Acts based upon the other grounds set forth in Rule 403.

The Court acknowledges that the Acquitted Acts are also prejudicial. However, like Prior Acts, the Acquitted Acts are also highly probative of defendant's intent to use force not to carry out legitimate law enforcement duties, but to punish or to inflict fear or harm. Indeed, they are also highly similar to the conduct at issue in this trial. Here, it is alleged that defendant hit Ford repeatedly with a nightstick when Ford was neither fighting nor resisting officers. Similarly, both of the Acquitted Acts involve defendant hitting arrestees with flashlights when they were not resisting and had been subdued. Thus, the Court does not find that the probative value of the Acquitted Acts is substantially outweighed by the danger of unfair prejudice. Further, the Court does not find that the jury is likely to be confused by introduction of evidence as to the Acquitted Acts. Relevant case law reflects that the Court is not required to inform the jury that defendant was previously acquitted of the charges stemming from his encounters with Worthy and Rashada. In *United States v. Vega*, the Eighth Circuit held that the district

court did not err in permitting the jury to hear evidence of prior drug transactions for which defendant was acquitted during a retrial of a remaining narcotics count of the same indictment, because the prior drug transactions were relevant as to whether defendant intended to distribute the drugs in question. 676 F.3d 708, 719 (8th Cir. 2012). The Eighth Circuit further found that the district court did not err by refusing to allow defendant to introduce evidence of the acquittal, both because judgments of acquittal are hearsay and because they are not generally relevant. *Id.* at 721. The Eighth Circuit noted that acquittals "do not prove innocence; they simply show that the government did not meet its burden in proving guilt beyond a reasonable doubt." *Id.* at 721. However, the district court in *Vega* did provide a limiting instruction stating, in part, that the jury may consider the evidence of the prior drug transactions to determine intent "only if you find it is more likely true than not true…[t]his is a lower standard than beyond a reasonable doubt" and "if you find that it is not more likely true than not true, then you shall disregard it." *Id.* Similarly, in *United States v. Vistero*, the Second Circuit found that the district court did not err in allowing the Government to introduce evidence of defendants' substantial large cash transactions as evidence that defendants engaged in a narcotics conspiracy. 596 F.2d 531, 535 (2d Cir. 1979). Further, the Second Circuit concluded that the district

court did not have to admit evidence that one of the defendants was acquitted of tax evasions charges related to those transactions. *Id.* at 537. Adopting similar reasoning as used in *Vega,* the Second Circuit noted that an acquittal is hearsay and "not usually admissible to rebut inferences that may be drawn from the evidence that was admitted." *Id.* at 537.

While the Acquitted Acts may not be unduly prejudicial or confusing on their own, they may become prejudicial, confusing and cumulative in light of the other 404(b) evidence which may be presented here. Defendant is currently on trial for one count of use of excessive force. If the Court were to permit the Government to introduce both the Prior Acts and Acquitted Acts, five additional instances of defendants' use of excessive force would be presented to the jury. This would include cross-examination, and possibly testimony or evidence, offered by defense counsel as to propriety of defendant's actions in each of those incidents. Not only would this be cumbersome, confusing to the jury, and cause unnecessary delay, it would also be unduly cumulative pursuant to Rule 403. Thus, it is unlikely that the Court would permit the introduction of all Prior and Acquitted Acts on rebuttal. On balance, while the Acquitted Acts are probative, they may be less probative of defendant's intent or state of mind than the Prior Acts because of the previous jury's finding of not guilty. Further, while the Court need not

permit defendant to introduce evidence of the acquittal, there is a question as to whether the jury should be informed, like in *Vega*, that they are only to credit the Worthy and Rashada incidents if they find the incidents "more likely true than not true." Indeed, the Government recommends that such a limiting instruction be given with respect to the Acquitted Acts. (Dkt. No. 161, pg. 8) Because the Prior Acts did not result in an acquittal, the Court is unlikely to give this instruction with respect to the Prior Acts. Different limiting instructions for different Rule 404(b) evidence could likely be confusing to the jury. Thus, should the Government seek to introduce both the Prior Acts and the Acquitted Acts in rebuttal, the Court may exclude the Acquitted Acts on the basis that they are cumulative and likely to confuse the jury.

With respect to the New Act involving excessive force used against Spencer, the Government acknowledges that it was defendant's partner and not defendant who threw Spencer against a tree, twisted his arm, and caused a fracture. It is anticipated that Spencer will testify that either defendant or his partner kicked him in the back of the head. A BPD Use of Force Form from that incident, completed by defendant, indicates that when Spencer refused to place his hands behind his back, officers grabbed Spencer's arms, attempted to place his hands behind his back, and took him to the ground before handcuffing him. (Dkt. No. 161-1) While the Use of Force form

indicates that defendant grabbed Spencer's arm in attempting to handcuff him, the Court cannot make a finding that it is more likely than not that defendant kicked Spencer or otherwise used excessive force. Further, the fact that defendant was present for an arrest where another officer may have used excessive force is not probative of defendant's intent to use excessive or unnecessary force against arrestees or suspects. Thus, the Court finds that the New Act is not highly probative of defendant's intent to use violence or excessive force to punish or inflict harm on arrestees or suspects. Further, the evidence is highly prejudicial. Indeed, it is alleged that Spencer was stopped for a minor infraction of failing to use a light or reflector on his bicycle and that after spitting on the ground, a BDP officer fractured Spencer's arm and kicked him in the back of head. Spencer then spent two days in the hospital. On balance, the Court finds, at this time, that the probative value of the New Act is substantially outweighed by the danger of unfair prejudice.

In sum, the Court has made a preliminary finding that: (1) the Prior Acts are likely admissible, in the Government's rebuttal case, pursuant to Rule 404(b) and Rule 403; and (2) that while the Acquitted Acts and the New Act are likely admissible, in the Government's rebuttal case, pursuant to Rule 404(b), there are potential bases to exclude them pursuant to Rule 403. However, as stated above, the Government will decide, following

defendant's cross-examination of witnesses and defendant's case-in-chief, whether it intends to offer evidence of the other act evidence excessive force on rebuttal. Indeed, the scope of the Government's permissible rebuttal is directly related to the defendant's own witnesses and cross-examination of the Government's witnesses. Further, the Government may, at that time, seek only to introduce some of the other act evidence discussed herein. Therefore, should the Government indicate that it intends to offer the other act evidence on rebuttal, the Court will hear further argument from the parties at that time, in light of the requirements of Rule 404(b) and all of the evidence and testimony that has been introduced. Also at that time, the Court will reevaluate all of the other act evidence pursuant to Rule 403. Should the Court permit the Government to offer the other act evidence, an appropriate limiting instruction will be given to the jury.[8]

### *Expert Testimony*

Defendant has submitted a List of Potential Witnesses, which includes Mark Tartaro and Guy Rossi. (Dkt. No. 151) Tartaro and Rossi are described as expert witnesses in "police use of force, police defensive tactics, New York State Penal Law Article 35, and police policy and procedure." (*Id.*) In the previous trial of this matter, the Government moved

---

[8] In the event the evidence will be admitted, counsel should submit a proposed limiting instruction.

to exclude expert testimony by Tartaro and Rossi.  The Court granted the Government's motion and excluded any expert testimony by Tartaro and Rossi on the basis that the anticipated testimony was unnecessary, confusing and prejudicial.  (Dkt. No. 118, pgs. 15-18)

During oral argument on June 3, 2019, defense counsel indicated that they do not intend to call any expert witnesses at trial.  Thus, this issue is moot.

### *Ford's Civil Lawsuit*

Ford has filed a civil lawsuit against defendant and the City of Buffalo regarding the events of November 27, 2014.  The lawsuit remains pending. The Government has moved to prevent defendant from asking Ford any questions about the lawsuit on the grounds that it is irrelevant.  A civil lawsuit, and specifically the fact that Ford could receive a monetary benefit as a result, is relevant to show bias.  Indeed, at the conclusion of the trial, the Court will provide a detailed instruction to the jury regarding how to evaluate witness testimony.  The Court will specifically instruct the jury to consider potential bias of the witnesses, including whether the witness stands to gain anything by testifying falsely.  Thus, the Court will permit defendant to ask Ford about his civil lawsuit against defendant and the City of Buffalo.

### *Testimony of Tina Taylor and Daniel Derenda*

The Government's witness list indicates that Special Agent Tina Taylor of the Federal Bureau of Investigation ("FBI") will testify regarding how the investigation of defendant began, including the FBI's receipt of a news video depicting the encounter between defendant and Ford on November 27, 2014. She is also anticipated to discuss the investigative steps to locate, interview and collect evidence of defendant's conduct on November 27, 2014. (Dkt. No. 142) Also according to the Government, retired Commissioner Daniel Derenda of the BPD will testify that a news video was provided to him showing an incident on November 27, 2014. He will further testify about his contacts with the FBI regarding that incident. Defendant objects to the testimony of both Taylor and Derenda on the grounds that their anticipated testimony is irrelevant and prejudicial.

In the previous trial of this matter, defendant objected to testimony by Taylor regarding how the investigation into defendant began. [9] The Court overruled the objection after finding that defendant opened the door to the testimony. Specifically, during his opening statement at trial, defense counsel criticized the investigation and noted that the FBI waited until almost the close of the statute of limitations to pursue charges against defendant.

---

[9] Derenda was not offered as a witness at the previous trial.

During oral argument on June 3, 2019, defense counsel indicated that he did not intend to make similar remarks during his opening statement in this trial. Also during oral argument on June 3, 2019, the Government indicated that Taylor will testify regarding photographs taken of Ford's injuries following the encounter with defendant on November 27, 2014.

Taylor's anticipated testimony regarding photographs or other evidence of which she has personal knowledge is relevant. However, the Court is not convinced of the relevance of Taylor's and Derenda's anticipated testimony regarding how and why the FBI began investigating defendant for use of excessive force. Thus, the Court may reserve decision on this issue until after opening statements and following a proffer of the specific testimony that would be offered by Taylor and Derenda outside the presence of the jury. The parties are scheduled to appear before the Court for a status conference at 12:00 p.m. on June 10, 2019. This issue will be discussed in greater detail at that time.

## CONCLUSION

The motions *in limine* as to the admissibility of other act evidence of excessive force, expert testimony, the civil lawsuit, and anticipated testimony by Agent Taylor and Commissioner Derenda are decided in the manner explained above.

**SO ORDERED**.


Dated:  June 10, 2019
       Buffalo, New York



   _s/*Richard J. Arcara*_____
   RICHARD J. ARCARA
   Senior District Judge