1

**UNITED STATES DISTRICT COURT**

2
**WESTERN DISTRICT OF NEW YORK**

3

4   UNITED STATES OF AMERICA,       )
                                     ) Case No. 1:15-CR-00157
5                                    )             (RJA)(HKS)
                    Plaintiff,       )
6                                    )
    vs.                              ) February 12th, 2018
7                                    )
    COREY KRUG,                      )
8                                    )
                    Defendant.       )
9

10

**TRANSCRIPT OF JURY TRIAL TESTIMONY OF TINA TAYLOR**
11
**BEFORE THE HONORABLE RICHARD J. ARCARA**
**SENIOR UNITED STATES DISTRICT JUDGE**
12

13
<u>APPEARANCES:</u>
14

For the Plaintiff:    JAMES P. KENNEDY, JR.
15                          UNITED STATES ATTORNEY
                            BY:  JOHN D. FABIAN, ESQ.
16                               AARON J. MANGO, ESQ.
                            ASSISTANT UNITED STATES ATTORNEYS
17                          138 Delaware Avenue
                            Buffalo, NY 14202
18

For the Defendant:    CONNORS, LLP
19                          BY:  TERRANCE M. CONNORS, ESQ.
                                 NICHOLAS A. ROMANO, ESQ,
20                          1000 Liberty Building
                            Buffalo, NY 14202
21

                          LIPSITZ GREEN SCIME CAMBRIA LLP
22                          BY:  HERBERT L. GREENMAN, ESQ.
                            42 Delaware Avenue, Suite 300
23                          Buffalo, NY 14202

24   Court Reporter:      MEGAN E. PELKA, RPR
                          Robert H. Jackson Courthouse
25                        2 Niagara Square
                          Buffalo, NY 14202

| | | |
|---|---|---|
| 02:40PM | 1 | (The jury entered the room at 2:40 p.m.) |
| 02:42PM | 2 | THE COURT:  All right.  Mr. Mango? |
| 02:42PM | 3 | MR. MANGO:  Thank you, Your Honor.  The government |
| 02:42PM | 4 | would call Special Agent Tina Taylor, witness number 1 on the |
| 02:42PM | 5 | list. |
| 02:42PM | 6 | THE CLERK:  Please state your full name and spell |
| 02:42PM | 7 | your last name for the record. |
| 02:42PM | 8 | THE WITNESS:  Tina Taylor, T-A-Y-L-O-R. |
| 02:42PM | 9 | (The witness is was sworn at 2:43 p.m.) |
| 02:43PM | 10 | MR. MANGO:  Your Honor, may I proceed? |
| 02:43PM | 11 | THE COURT:  Yes, please. |
| 02:43PM | 12 | |
| 02:43PM | 13 | DIRECT EXAMINATION |
| 02:43PM | 14 | |
| 02:43PM | 15 | BY MR. MANGO: |
| 02:43PM | 16 | Q.  Good afternoon. |
| 02:43PM | 17 | A.  Good afternoon. |
| 02:43PM | 18 | Q.  Can you please tell the jury how you are currently |
| 02:43PM | 19 | employed? |
| 02:43PM | 20 | A.  Yes.  I'm a special agent with the Federal Bureau of |
| 02:43PM | 21 | Investigation. |
| 02:43PM | 22 | Q.  How long have you been a special agent? |
| 02:43PM | 23 | A.  It will be 21 years in May. |
| 02:43PM | 24 | Q.  And what is your educational and work background? |
| 02:43PM | 25 | A.  In 1996, I graduated from the University at Buffalo |

TAYLOR -- BY MR. MANGO -- 02/12/2019

02:43PM  1  School of Law.  I was admitted to practice law in New York

02:43PM  2  State and then, I worked for a law firm here in Buffalo for a

02:43PM  3  couple of years.  I became a special agent with the FBI in

02:43PM  4  1998.

02:43PM  5  Q.  Now, have you been a special agent here in Buffalo since

02:43PM  6  1998, or have you been assigned to any other locations?

02:43PM  7  A.  No.  My first office of assignment was New York City

02:43PM  8  where I worked white collar crime for 10 years and in 2008 I

02:44PM  9  transferred back to the Buffalo Division where I've worked

02:44PM  10  civil rights, human trafficking and violent crimes against

02:44PM  11  children.

02:44PM  12  Q.  Now, you mentioned civil rights.  What are your duties

02:44PM  13  with respect to civil rights investigations?

02:44PM  14  A.  Civil rights investigations for the FBI encompass hate

02:44PM  15  crimes, human trafficking and also color of law

02:44PM  16  investigations.

02:44PM  17  Q.  And if you can tell the jury, what do color of law

02:44PM  18  investigations entail?

02:44PM  19  A.  Color of law investigations are when a law enforcement

02:44PM  20  officer -- it could be at any level -- state, local,

02:44PM  21  federal -- is alleged to have deprived an individual of their

02:44PM  22  rights under color of law and color of law just means that in

02:44PM  23  their capacity as law enforcement officers.

02:44PM  24  Q.  Now, going back to December of 2014, did you also

02:44PM  25  investigate civil rights violations at that time?

TAYLOR -- BY MR. MANGO -- 02/12/2019
3

| | | |
|---|---|---|
| 02:44PM | 1 | A.  Yes. |
| 02:44PM | 2 | Q.  Are you familiar with the Buffalo Police Department's use |
| 02:44PM | 3 | of force reports? |
| 02:44PM | 4 | A.  Yes. |
| 02:45PM | 5 | Q.  We've seen those? |
| 02:45PM | 6 | A.  Yes. |
| 02:45PM | 7 | Q.  Okay.  Do you review the use of force reports during your |
| 02:45PM | 8 | civil rights investigations? |
| 02:45PM | 9 | A.  Yes, I do. |
| 02:45PM | 10 | Q.  Why -- if you can tell the jury, why you review the use |
| 02:45PM | 11 | of force reports in your civil rights investigations? |
| 02:45PM | 12 | A.  I review the reports to determine what the law |
| 02:45PM | 13 | enforcement officer's account of events that caused them to |
| 02:45PM | 14 | use force were.  I also review them for witnesses and nature |
| 02:45PM | 15 | of injuries to compare the nature of the injuries listed to |
| 02:45PM | 16 | the reasons the officer used force. |
| 02:45PM | 17 | I also review them for the tactics used and I review |
| 02:45PM | 18 | that section.  Also, during the course of my investigation, |
| 02:45PM | 19 | as I'm interviewing witnesses and gathering other evidence, |
| 02:45PM | 20 | I'll go back to those use of force forms and compare what |
| 02:45PM | 21 | I've read in my -- |
| 02:45PM | 22 | MR. CONNORS:  Excuse me.  I object to that.  It's |
| 02:45PM | 23 | beyond the narrative and it's improper. |
| 02:45PM | 24 | THE COURT:  Overruled.  Go ahead. |
| 02:46PM | 25 | THE WITNESS:  I'll compare what I have learned in my |

02:46PM  1   investigation from witness interviews and reviewing records to

02:46PM  2   what was listed in that use of force form.

02:46PM  3   BY MR. MANGO:

02:46PM  4   Q.  Now, at some point, did the FBI open a civil rights

02:46PM  5   investigation into Buffalo Police Officer Corey Krug?

02:46PM  6   A.  Yes.  We opened an investigation on December 11th, 2014.

02:46PM  7   Q.  And Buffalo Police Officer Corey Krug is the defendant in

02:46PM  8   this case?

02:46PM  9   A.  Yes.

02:46PM  10  Q.  And you mentioned that was December when of '14?

02:46PM  11  A.  December 11th.

02:46PM  12  Q.  And did you open that investigation?

02:46PM  13  A.  Yes.

02:46PM  14  Q.  What caused your investigation to be opened?

02:46PM  15       MR. CONNORS:  I'm going to object to that, Your

02:46PM  16  Honor.

02:46PM  17       THE COURT:  Overruled.

02:46PM  18       THE WITNESS:  Daniel Derenda, the Commissioner of the

02:46PM  19  Buffalo Police Department at the time, contacted the Buffalo

02:46PM  20  office of the FBI and then, I viewed a video provided to him

02:46PM  21  by a local news station.

02:46PM  22  BY MR. MANGO:

02:46PM  23  Q.  And at the time you opened your investigation of the

02:47PM  24  defendant, were you aware of the incident between the

02:47PM  25  Defendant Corey Krug and Marcus Worthy?

| | | |
|---|---|---|
| 02:47PM | 1 | A.  No, I was not. |
| 02:47PM | 2 | Q.  At the time you opened your investigation of the |
| 02:47PM | 3 | Defendant Corey Krug, were you aware of the incident between |
| 02:47PM | 4 | the defendant and Daniel Rashada? |
| 02:47PM | 5 | A.  No. |
| 02:47PM | 6 | Q.  How did you learn of those incidences? |
| 02:47PM | 7 | A.  A subpoena was issued to the Buffalo Police Department to |
| 02:47PM | 8 | provide any and all documents and records not only related to |
| 02:47PM | 9 | the Devin Ford incident, but also related to any other |
| 02:47PM | 10 | allegations where Officer Krug was alleged to have violated |
| 02:47PM | 11 | an individual's civil rights. |
| 02:47PM | 12 | Q.  And in reviewing the response to that subpoena, you |
| 02:47PM | 13 | learned of Mr. Rashada and Mr. Worthy? |
| 02:47PM | 14 | MR. CONNORS:  These are leading questions, Your |
| 02:47PM | 15 | Honor. |
| 02:47PM | 16 | THE COURT:  Sustained.  Rephrase your question, |
| 02:47PM | 17 | please. |
| 02:47PM | 18 | MR. MANGO:  Yes, Your Honor. |
| 02:47PM | 19 | BY MR. MANGO: |
| 02:47PM | 20 | Q.  So, how did you learn of Mr. Rashada and Mr. Worthy? |
| 02:47PM | 21 | A.  Their names were within those documents provided by the |
| 02:47PM | 22 | Buffalo Police Department. |
| 02:48PM | 23 | Q.  Did you conduct interviews with Mr. Rashada and |
| 02:48PM | 24 | Mr. Worthy, or did the FBI conduct interviews with them and |
| 02:48PM | 25 | other witnesses to those events? |

| | | |
|---|---|---|
| 02:48PM | 1 | A.  Yes. |
| 02:48PM | 2 | Q.  Now, did you also interview Devin Ford? |
| 02:48PM | 3 | A.  Yes. |
| 02:48PM | 4 | Q.  When was your first interview of Devin Ford? |
| 02:48PM | 5 | MR. CONNORS:  I'm going to object to this, Your |
| 02:48PM | 6 | Honor. |
| 02:48PM | 7 | THE COURT:  Overruled. |
| 02:48PM | 8 | THE WITNESS:  It was on December 23rd, 2014. |
| 02:48PM | 9 | BY MR. MANGO: |
| 02:48PM | 10 | Q.  Now, on December 23rd, 2014, at the conclusion of that |
| 02:48PM | 11 | interview, do you know if photographs were taken by the FBI |
| 02:48PM | 12 | of Devin Ford? |
| 02:48PM | 13 | A.  Yes. |
| 02:48PM | 14 | Q.  And did you witness those photographs be taken? |
| 02:48PM | 15 | A.  Yes. |
| 02:48PM | 16 | Q.  Special Agent, I'm showing you what's marked Government |
| 02:49PM | 17 | Exhibit 41C and 41D. |
| 02:49PM | 18 | A.  Yes. |
| 02:49PM | 19 | Q.  Do you see those in front of you? |
| 02:49PM | 20 | A.  Yes. |
| 02:49PM | 21 | Q.  Let's start with 41C.  What does -- what is depicted in |
| 02:49PM | 22 | 41C generally? |
| 02:49PM | 23 | A.  41C is a photograph taken of Devin Ford's leg after that |
| 02:49PM | 24 | interview that I was present at on December 23rd, 2014. |
| 02:49PM | 25 | Q.  And did you see his leg when this photograph was taken? |

TAYLOR -- BY MR. CONNORS -- 02/12/2019

7

| | | |
|---|---|---|
| 02:49PM | 1 | A.  Yes. |
| 02:49PM | 2 | Q.  And does the photograph accurately and fairly represent |
| 02:49PM | 3 | what Devin Ford's leg looked like when you saw it? |
| 02:49PM | 4 | A.  Yes. |
| 02:49PM | 5 | MR. MANGO:  Judge, I would move Government Exhibit |
| 02:49PM | 6 | 41C into evidence. |
| 02:49PM | 7 | MR. CONNORS:  May I ask a question in voir dire, Your |
| 02:49PM | 8 | Honor? |
| 02:49PM | 9 | THE COURT:  Yes, you may. |
| 02:49PM | 10 | |
| 02:49PM | 11 | VOIR DIRE EXAMINATION |
| 02:49PM | 12 | |
| 02:49PM | 13 | BY MR. CONNORS: |
| 02:49PM | 14 | Q.  The photograph that you have in front of you is |
| 02:49PM | 15 | Exhibit 41C, Agent Taylor? |
| 02:49PM | 16 | A.  Yes. |
| 02:49PM | 17 | Q.  Can you tell us whether or not there were any techniques |
| 02:49PM | 18 | used to enhance that particular photo? |
| 02:50PM | 19 | A.  There are not any techniques. |
| 02:50PM | 20 | Q.  Who took the photograph? |
| 02:50PM | 21 | A.  My colleague, Special Agent Jennifer Amo. |
| 02:50PM | 22 | Q.  With what camera? |
| 02:50PM | 23 | A.  With the camera on her cell phone. |
| 02:50PM | 24 | Q.  Now, you know that there were other photos taken at an |
| 02:50PM | 25 | earlier stage with respect to Ford, correct? |

8

| | | |
|---|---|---|
| 02:50PM | 1 | A.  I know that there were other photos taken either by Ford |
| 02:50PM | 2 | or by his lawyer, but I'm not sure when they were taken. |
| 02:50PM | 3 | Q.  Well, you were here at trial when he testified that they |
| 02:50PM | 4 | were taken earlier than the December 23rd photo that you |
| 02:50PM | 5 | took? |
| 02:50PM | 6 | A.  Uh-huh.  Yes. |
| 02:50PM | 7 | Q.  You have to answer yes. |
| 02:50PM | 8 | A.  Yes.  I'm sorry. |
| 02:50PM | 9 | Q.  And yet, those photos that were taken earlier, to you, |
| 02:50PM | 10 | were not satisfactory enough? |
| 02:50PM | 11 | MR. MANGO:  Judge, I'm going to object.  We're |
| 02:50PM | 12 | talking about this photo in front of her now. |
| 02:50PM | 13 | THE COURT:  Sustained. |
| 02:50PM | 14 | BY MR. CONNORS: |
| 02:50PM | 15 | Q.  41C, you took that photo because the earlier ones were |
| 02:50PM | 16 | not satisfactory to you?  Yes or no? |
| 02:50PM | 17 | MR. MANGO:  Objection, Judge.  This just a brief voir |
| 02:50PM | 18 | dire about this exhibit. |
| 02:50PM | 19 | THE COURT:  Sustained.  That's cross-examination. |
| 02:50PM | 20 | MR. CONNORS:  I'll be done. |
| 02:50PM | 21 | THE COURT:  It will be received in evidence. |
| 02:50PM | 22 | (Government Exhibit 41C was received in evidence.) |
| 02:50PM | 23 | |
| 02:50PM | 24 | MR. MANGO:  Thank you, Your Honor.  I'd ask it be |
| 02:51PM | 25 | published for the jury, 41C. |

9

| 02:51PM | 1 | DIRECT EXAMINATION |

02:51PM  2

02:51PM  3  BY MR. MANGO:

02:51PM  4  Q.  Do you see this image on your screen there?

02:51PM  5  A.  Yes.

02:51PM  6  Q.  And is this the photograph you were just talking about?

02:51PM  7  A.  Yes.

02:51PM  8  Q.  And what does it depict?

02:51PM  9  A.  It depicts Devin Ford's leg as it appeared on

02:51PM  10  December 23rd, 2014.

02:51PM  11  Q.  Do you see injuries on that photograph?

02:51PM  12  A.  Yes.

02:51PM  13  Q.  Now --

02:51PM  14       MR. CONNORS:  Excuse me.  I'm going to ask that that

02:51PM  15  be stricken, Your Honor.  She can say the photograph is what

02:51PM  16  it is, but to interpret it would be improper.

02:51PM  17       THE COURT:  Overruled.

02:51PM  18       MR. MANGO:  We can bring that down, please,

02:51PM  19  Ms. Kingston.

02:51PM  20  BY MR. MANGO:

02:51PM  21  Q.  And if you could turn your attention to 41D that's in

02:51PM  22  front of you?

02:51PM  23  A.  Yes.

02:51PM  24  Q.  What is 41D, generally?

02:51PM  25  A.  41D is a photograph of Devin Ford's leg that Special

| | | |
|---|---|---|
| 02:51PM | 1 | Agent Amo took while I was present after the interview on |
| 02:51PM | 2 | December 23rd, 2014. |
| 02:51PM | 3 | Q.  Did you see Mr. Ford's leg at the time the photograph was |
| 02:52PM | 4 | taken? |
| 02:52PM | 5 | A.  Yes. |
| 02:52PM | 6 | Q.  Does this photograph fairly and accurately depict what |
| 02:52PM | 7 | his leg looked like when you saw it? |
| 02:52PM | 8 | A.  Yes. |
| 02:52PM | 9 | MR. MANGO:  Judge, I would move Exhibit 41D into |
| 02:52PM | 10 | evidence. |
| 02:52PM | 11 | THE COURT:  It will be received. |
| 02:52PM | 12 | (Government Exhibit 41D was received in evidence.) |
| 02:52PM | 13 | |
| 02:52PM | 14 | MR. MANGO:  I would ask it be published for the jury. |
| 02:52PM | 15 | BY MR. MANGO: |
| 02:52PM | 16 | Q.  And is this the photograph THAT you were just describing? |
| 02:52PM | 17 | A.  Yes. |
| 02:52PM | 18 | Q.  What do you see in this photograph? |
| 02:52PM | 19 | MR. CONNORS:  Excuse me.  I'm going to object to that |
| 02:52PM | 20 | again, Your Honor.  The photograph speaks for itself.  That's |
| 02:52PM | 21 | the best evidence rule. |
| 02:52PM | 22 | THE COURT:  I'm going to sustain that. |
| 02:52PM | 23 | BY MR. MANGO: |
| 02:52PM | 24 | Q.  Did you testify in the Grand Jury in this case, Special |
| 02:52PM | 25 | Agent? |

| | | |
|---|---|---|
| 02:52PM | 1 | A.  Yes. |
| 02:52PM | 2 | Q.  Do you know who was referred to in the indictment as |
| 02:52PM | 3 | M.W.? |
| 02:52PM | 4 | A.  Yes. |
| 02:52PM | 5 | Q.  Who is that? |
| 02:52PM | 6 | A.  Marcus Worthy. |
| 02:52PM | 7 | Q.  And how about who is referred to in the indictment as |
| 02:52PM | 8 | D.R.? |
| 02:52PM | 9 | A.  Daniel Rashada. |
| 02:52PM | 10 | Q.  And who is referred to in the indictment as D.F.? |
| 02:52PM | 11 | A.  Devin Ford. |
| 02:52PM | 12 | MR. MANGO:  Okay.  Thank you.  Nothing further, Your |
| 02:52PM | 13 | Honor. |
| 02:52PM | 14 | |
| 02:52PM | 15 | CROSS-EXAMINATION |
| 02:53PM | 16 | |
| 02:53PM | 17 | BY MR. CONNORS: |
| 02:53PM | 18 | Q.  So, there are two photographs that you were present when |
| 02:53PM | 19 | they were taken? |
| 02:53PM | 20 | A.  Yes. |
| 02:53PM | 21 | Q.  And you told us that was on December 23rd, 2014? |
| 02:53PM | 22 | A.  Yes. |
| 02:53PM | 23 | Q.  And the first one would be 41C, correct? |
| 02:53PM | 24 | A.  Yes. |
| 02:53PM | 25 | MR. CONNORS:  Can we pull that up, please, Danielle? |

02:53PM   1   BY MR. CONNORS:

02:53PM   2   Q.   Who was present when this photograph was taken?

02:53PM   3   A.   Special Agent Jennifer Amo and myself.

02:53PM   4   Q.   You told us earlier the type of camera that was used?

02:53PM   5   A.   Yes.

02:53PM   6   Q.   And you know that this photograph was taken after the

02:53PM   7   photographs that are already in evidence, 41A and 41B,

02:53PM   8   correct?

02:53PM   9   A.   Yes.

02:53PM  10   Q.   And whose idea was it to take additional paragraphs?

02:53PM  11   A.   It was Special Agent Amo and myself's idea.

02:53PM  12   Q.   When you took the photograph, did you use any device at

02:53PM  13   all to enhance the photograph?

02:53PM  14   A.   No.

02:53PM  15   Q.   Do you know where Devin Ford was between the time of the

02:54PM  16   photographs that were taken 41A and B and this photograph,

02:54PM  17   41C?

02:54PM  18   A.   I don't.

02:54PM  19   Q.   So, how long a period of time was it between those two

02:54PM  20   periods of photographs?  His were taken, as you know from the

02:54PM  21   testimony, December 11th, or thereabouts and yours were taken

02:54PM  22   December 23rd, correct?

02:54PM  23   A.   Right.

02:54PM  24   Q.   That would be accurate statement of approximately two

02:54PM  25   weeks?

02:54PM    1    A.  Yes, according to his testimony.

02:54PM    2    Q.  Do you know where he was during those two weeks?

02:54PM    3    A.  I don't.

02:54PM    4    Q.  Do you know whether he was involved in any activities at

02:54PM    5    all during those two weeks?

02:54PM    6    A.  I don't.

02:54PM    7    Q.  Do you know whether or not he sustained any injuries

02:54PM    8    during those two weeks?

02:54PM    9    A.  I don't.

02:54PM   10    Q.  So, you wouldn't be able to tell us then, whether or not

02:54PM   11    41C, exhibit that's up, reflected anything that could have

02:54PM   12    occurred between the time of the first photograph, 41A and

02:54PM   13    the current photograph, 41C, correct?

02:54PM   14    A.  Correct.

02:54PM   15         MR. CONNORS:  Could we pull up 41A, please, Danielle?

02:54PM   16    BY MR. CONNORS:

02:55PM   17    Q.  Were you present when that photograph was taken?

02:55PM   18    A.  Yes.

02:55PM   19    Q.  Where that was taken?  Are you certain?

02:55PM   20    A.  I believe so.  That was taken at the U.S. Attorney's

02:55PM   21    office as well.

02:55PM   22    Q.  When?

02:55PM   23    A.  On December 23rd as well, I believe.

02:55PM   24    Q.  Are you sure this is not December 11th when he took them

02:55PM   25    at home with his own camera?

02:55PM  1   A.  I don't think so.

02:55PM  2   Q.  How about 41B?

02:55PM  3        MR. CONNORS:  Would you pull that up?  It's not in

02:55PM  4   evidence.

02:55PM  5   BY MR. CONNORS:

02:55PM  6   Q.  So, my question is -- let's stay with 41A for a second.

02:55PM  7   Was that taken the same day that 41C and D were taken?

02:55PM  8   A.  Yes.

02:55PM  9   Q.  So, how many photos were taken that day?

02:55PM 10   A.  Either three or four.  I'm not sure.

02:55PM 11   Q.  Are these all the photos that were taken?

02:55PM 12   A.  Yes.

02:55PM 13   Q.  So, the exhibit photos 41A and C and D are taken on

02:56PM 14   exactly the same day, is that right?

02:56PM 15   A.  Yes.

02:56PM 16        MR. CONNORS:  Excuse me for one second.

02:56PM 17        THE COURT:  We'll take a five-minute recess, ladies

02:56PM 18   and gentlemen.

02:56PM 19   (The jury left the room at 2:56 p.m.)

02:56PM 20   (Brief recess.)

03:00PM 21   (The jury entered the room at 3:00 p.m.)

03:03PM 22        THE CLERK:  All rise.  You may be seated.

03:03PM 23        THE COURT:  Okay.  Mr. Connors?

03:03PM 24        MR. CONNORS:  Thank you, Your Honor.  Approaching the

03:03PM 25   witness, Your Honor.

TAYLOR -- BY MR. CONNORS-- 02/12/2019
15

03:03PM   1   BY MR. CONNORS:

03:03PM   2   Q.  I've now put in front of you a series of photographs

03:03PM   3   starting at 41A, correct, Agent Taylor?

03:03PM   4   A.  Yes.

03:03PM   5   Q.  And it runs from 41A to, I believe, 41D, correct?

03:03PM   6   A.  Yes.

03:03PM   7   Q.  Let's look at 41B.  Just look at it yourself.

03:03PM   8   A.  Did you say B or D?

03:03PM   9   Q.  B.  Do you have it?

03:03PM   10  A.  Yes.

03:03PM   11  Q.  Okay.  That fairly and accurately depict the lower

03:03PM   12  portion of Devin Ford's leg?

03:03PM   13  A.  Yes.

03:03PM   14  Q.  Which leg?

03:03PM   15  A.  Left.

03:03PM   16  Q.  How do you know that?

03:03PM   17  A.  Well, I know that that's the leg that was injured and

03:03PM   18  that's the leg we took the photograph of.

03:03PM   19  Q.  You can't tell by looking at it which leg it is, can you?

03:03PM   20  A.  Well, I can tell that this is the photograph that we took

03:03PM   21  and we look a photograph of Devin Ford's leg.

03:04PM   22  Q.  Not both legs?

03:04PM   23  A.  No.

03:04PM   24       MR. CONNORS:  So, 41B is not in evidence.  I offer

03:04PM   25  that into evidence, Your Honor.

| | | |
|---|---|---|
| 03:04PM | 1 | MR. MANGO:  No objection, Judge. |
| 03:04PM | 2 | THE COURT:  All right.  It will be received. |
| 03:04PM | 3 | (Government Exhibit 41B was received in evidence.) |
| 03:04PM | 4 | |
| 03:04PM | 5 | BY MR. CONNORS: |
| 03:04PM | 6 | Q.  Now, just so we're clear, I want to start with 41A. |
| 03:04PM | 7 | That's a photo that you took or Agent Amo took?  41A? |
| 03:04PM | 8 | A.  Yes.  It's a copy of 41D. |
| 03:04PM | 9 | Q.  Is that a photo -- 41A, that's in evidence, is that a |
| 03:04PM | 10 | photo that you or Agent Amo took? |
| 03:04PM | 11 | A.  Yes. |
| 03:04PM | 12 | Q.  And on what date was that taken? |
| 03:04PM | 13 | A.  December 23rd. |
| 03:04PM | 14 | Q.  41B, you just told us is a photo as well.  That was taken |
| 03:04PM | 15 | by you or Agent Amo? |
| 03:04PM | 16 | A.  Agent Amo, yes. |
| 03:04PM | 17 | Q.  And that was taken on the same date, correct? |
| 03:04PM | 18 | A.  Yes. |
| 03:04PM | 19 | Q.  And 41C, will you look at that, please and tell us if |
| 03:04PM | 20 | that is a photo taken by you or Agent Amo? |
| 03:05PM | 21 | A.  Agent Amo on the same day. |
| 03:05PM | 22 | Q.  On the same day? |
| 03:05PM | 23 | A.  Yes. |
| 03:05PM | 24 | Q.  And your answer would be the same with respect to 41D? |
| 03:05PM | 25 | A.  Yes. |

03:05PM    1    Q.  Are those all the photos in the possession of the Bureau

03:05PM    2    that were taken of Devin Ford?

03:05PM    3    A.  Yes.

03:05PM    4    Q.  You sure of that?

03:05PM    5    A.  I believe so, yes.

03:05PM    6    Q.  Have you seen any other photos of Devin Ford either prior

03:05PM    7    to the time that was taken or since that time?

03:05PM    8    A.  I have seen the photos that Devin Ford's attorney

03:05PM    9    provided to us, which I believe are the other ones,

03:05PM   10    Defendant's Exhibit 106 and 107.

03:05PM   11    Q.  Okay.  So, let's talk about that.  You have also in front

03:05PM   12    of you Defendant's Exhibit in evidence 106 and 107, correct?

03:05PM   13    A.  Yes.

03:05PM   14    Q.  But you weren't present when those were taken?

03:05PM   15    A.  I was not, no.

03:05PM   16    Q.  Do you know when they were taken?

03:05PM   17    A.  I don't.

03:05PM   18    Q.  Do you know if they were taken before the 41 series were

03:06PM   19    taken or not?

03:06PM   20    A.  I don't have any personal knowledge that they were taken

03:06PM   21    before.

03:06PM   22    Q.  Did you investigate that to see when they were taken when

03:06PM   23    they came into your position?

03:06PM   24    A.  When they came into my possession?

03:06PM   25    Q.  Yes.

TAYLOR -- BY MR. CONNORS-- 02/12/2019

18

| 03:06PM | 1 | A.  If would be in the file, but I didn't look at the date. |
| 03:06PM | 2 | I believe it was after December 23rd, though. |
| 03:06PM | 3 | Q.  After December 23rd? |
| 03:06PM | 4 | A.  Yes. |
| 03:06PM | 5 | Q.  And I think we've established with respect to 41C that |
| 03:06PM | 6 | you didn't know the whereabouts of Devin Ford between |
| 03:06PM | 7 | December -- actually, between November 27th and the time the |
| 03:06PM | 8 | photos were taken on December 23rd, correct? |
| 03:06PM | 9 | A.  Yes. |
| 03:06PM | 10 | Q.  And that would hold for all of the 41 series of exhibits, |
| 03:06PM | 11 | correct? |
| 03:06PM | 12 | A.  Yes. |
| 03:06PM | 13 | Q.  Okay.  Now, I want to ask you one question to make sure I |
| 03:06PM | 14 | heard you correctly.  You told us that you have been in the |
| 03:06PM | 15 | Bureau and you were here present in Buffalo in the years |
| 03:06PM | 16 | 2010, 2011 right through 2014, correct? |
| 03:06PM | 17 | A.  Yes. |
| 03:06PM | 18 | Q.  And you also told us in your direct examination that |
| 03:06PM | 19 | during the time period, you had access to the use of force |
| 03:07PM | 20 | reports of the Buffalo Police Department, true? |
| 03:07PM | 21 | A.  I did not say that. |
| 03:07PM | 22 | Q.  Well, did you? |
| 03:07PM | 23 | A.  Did I have access to them? |
| 03:07PM | 24 | Q.  Yes. |
| 03:07PM | 25 | A.  Like unconditional access to them? |

03:07PM   1    Q.  It's a simple question.  Did you have access to them in

03:07PM   2    your role as working for the civil rights division?

03:07PM   3    A.  Sure.  If there was an investigation open and the Buffalo

03:07PM   4    Police Department was subpoenaed, I would have access to

03:07PM   5    whatever use of force form applied with the investigation.

03:07PM   6    Q.  And that would apply in the years 2010, correct?

03:07PM   7    A.  Yes.

03:07PM   8    Q.  2011?

03:07PM   9    A.  Yes.

03:07PM  10    Q.  Right up until 2014, correct?

03:07PM  11    A.  Yes.

03:07PM  12         MR. CONNORS:  Thank you.  That's all I have, Your

03:07PM  13    Honor.

03:07PM  14         THE COURT:  When you say you have access, what do you

03:07PM  15    mean you have access?  Did you actually review any of these

03:07PM  16    reports?

03:07PM  17         THE WITNESS:  Only if they applied to the

03:07PM  18    investigation that I was working.  So, I didn't have carte

03:07PM  19    blanche access.

03:07PM  20         THE COURT:  You only had access to what you were

03:08PM  21    investigating?

03:08PM  22         THE WITNESS:  Right.  I mean, I would have to

03:08PM  23    subpoena them from the Buffalo Police Department.  I didn't

03:08PM  24    have access to them within the FBI or I could just go in a

03:08PM  25    file cabinet and look at them.  If they were related to an

03:08PM    1    investigation I was working, I could then subpoena them and I

03:08PM    2    would be able to look at them.

03:08PM    3             THE COURT:  All right.  Mr. Mango?

03:08PM    4             MR. MANGO:  Nothing further.

03:08PM    5             THE COURT:  Thank you.

03:08PM    6             THE WITNESS:  Thank you.

           7    (The witness was excused at 3:08 p.m.)

           8

           9

          10

          11

          12

          13

          14

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25

1          *     *     *     *     *     *     *

2

3          I certify that the foregoing is a

4     correct transcription of the proceedings

5     recorded by me in this matter.

6

7

8

9                         s/ Megan E. Pelka, RPR

10                        Court Reporter,

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25