UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

                                      1:15-CR-00157 RJA
                                      DECISION AND ORDER

      v.


COREY KRUG,

                           Defendant.
_____

A trial in this matter is scheduled to begin on July 16, 2019.  Before the

Court are various motions *in limine* by defendant.  The Court heard argument

on July 15, 2019.  The Court's specific findings with respect to the pending

motions *in limine* are set forth in detail below.


## RELEVANT FACTS AND BACKGROUND

Defendant Corey Krug ("defendant") was previously charged, in a

superseding indictment filed on September 3, 2015, with three counts of

Deprivation of Constitutional Right under Color of Law in violation of Section

242 of Title 18 of the United States Code and one count of Falsification of a

Record in a Federal Matter in violation of Section 1519 of Title 18 of the

United States Code (the "Indictment").  (Dkt. No. 1)  Specifically, defendant was accused of using excessive force on three separate occasions during his employment as a police officer for the City of Buffalo Police Department ("BPD").  (*Id.*)  He was further charged with falsifying a BPD record as to one of the incidents.  (*Id.*)  A jury trial commenced on January 24, 2019.  On February 26, 2019, the jury returned a verdict finding defendant not guilty as to two counts of Deprivation of a Constitutional Right (Counts 1 and 3 of the Indictment) and not guilty as to Falsification of a Record in a Federal Matter (Count 2 of the Indictment).  The jury was unable to reach a verdict as to the one remaining count of Deprivation of a Constitutional Right (Count 4 of the Indictment).  The Court declared a mistrial as to Count 4 on February 27, 2019.  A new jury trial as to Count 4 is scheduled to commence before this Court on July 16, 2019.

The facts surrounding Count 4 are as follows.  Chippewa Street is a well-known area in the City of Buffalo and is the location of many popular restaurants, bars and nightclubs.[1]  In addition, November 27, 2014 was the day before the Thanksgiving holiday, which is typically a busy night for bars and restaurants on Chippewa Street.  Defendant worked a special detail on

---

[1] The facts discussed herein have been taken from the Indictment, the Government and defendant's pretrial filings, representations made by counsel during oral arguments and all prior pre-trial motions and briefs filed in this matter.

Chippewa Street that evening.  Devon Ford and another man were ejected from a nightclub on Chippewa Street after an altercation.  There was a verbal exchange on the street related to the altercation, and BPD officers dispersed the group with pepper spray.  Shortly thereafter, on the corner of Chippewa Street and Pearl Street, there was another interaction between Ford, Ford's friends, the man Ford had previously been in an altercation with, and the man's friends.  It is alleged that defendant approached Ford at a fast pace while holding his nightstick horizontally in both hands, slammed Ford against the hood of a car and then pushed Ford onto the ground.  Defendant then placed both knees on Ford's groin, abdomen and chest.  It is alleged that defendant then stood up and struck Ford on the legs while shouting at him to "get up."  Defendant struck Ford twice more and yelled "Get the fuck up."  Another officer approached and told defendant to "relax."  Officers told Ford to get up and leave the scene.  Ford was not charged with a crime.  The officers use of pepper spray and the use of force by defendant against Ford were captured on video by a photographer working for a local news station.

## DISCUSSION

### *Defense Use of Expert Witnesses*

In the prior trial, defendant sought to offer testimony from two expert witnesses, Mark A. Tartaro and Guy Rossi.[2]  Defendant now moves to introduce expert testimony from the same two individuals in this trial.  According to defense counsel, these witnesses would be offered as experts in the areas of "police use of force, police defensive tactics, New York State Penal Law Article 35, and police policy and procedure."  The Government opposes the expert testimony.  For the reasons stated below and consistent with its ruling in the prior trial, the Court excludes the expert testimony because the anticipated testimony is unnecessary, confusing and prejudicial.

Expert testimony is admissible only when it will "assist the trier of fact to understand the evidence or to determine a fact in issue."  *See* Fed. R. Evid. 702.  Although the Federal Rules of Evidence "do not bar all expert testimony concerning an ultimate issue…a district court may exclude ultimate issue testimony under Federal Rule of Evidence 702 when it is not helpful to the jury, or under Rule 403 when it is unduly prejudicial."  *See* Fed.

---

[2] Defense counsel indicates that Tartaro personally trained defendant at the Erie County Law Enforcement Training Academy (Regional Police Academy).  Thus, it appears that Tartaro would be offered both as a fact witness and an expert witness.  Rossi, who has no personal connection to defendant, appears to be offered solely as an expert witness.

R. Evid. 704; *Jackson v. Harsch*, 901 F.2d 252, 256 (2d Cir. 1990). Further, expert testimony is not admissible if it "usurps the role of the jury in applying th[e] law to the facts before it," as such testimony "undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury." *Nimely v. City of N.Y.*, 414 F.3d 381, 397 (2d Cir. 2005). *See also Hygh v. Jackson*, 961 F.2d 359 (2d Cir. 1992) (Rules 701, 702 and 403 "afford ample assurances *against the admission of opinions which would merely tell the jury what result to reach*".)

Defendant submits that Tartaro and Rossi would testify "regarding Officer Krug's use of force and defensive tactics in the [Ford] incident [and] regarding Officer Krug's compliance with Buffalo Police Department policies and procedures, including all police records and forms." (Dkt. No. 151) During oral argument of this same motion *in limine* in the prior trial, the Court asked defense counsel to provide a specific proffer as to the questions counsel intended to ask these expert witnesses. In the prior proffer, defense counsel indicated that he would first describe Ford's actions on the dates in question. Defense counsel would also describe the actions and responses of defendant. Defense counsel would then ask the expert if defendant's actions and responses on the dates in question were consistent with the use of force training given to BPD officers. During oral argument on July 15,

2019, defendant did not make a new proffer of the anticipated expert testimony nor did he raise any new arguments as to the admissibility of the expert testimony. Thus, it appears that defendant seeks to offer the same expert testimony proffered in the prior trial, based upon the same legal reasoning.

The Court finds that the anticipated expert testimony is unnecessary. In determining whether defendant violated Section 242, the jury must find that defendant deprived the victim of the federal right to be free from unreasonable and excessive force. In making this determination, the jury will be instructed to consider "whether the force used by the defendant was reasonable or whether it was greater than the force which would have been reasonably necessary under the circumstances to an ordinary and reasonable officer in the same circumstances." *Sand*, *Modern Federal Jury Instructions: Criminal*, ¶17.01, No. 17-5. The Court finds that the jury is capable of considering the fact testimony of the witnesses and then making a determination as to whether the force used by defendant on November 27, 2014 was reasonably necessary under the circumstances. The jury does not need an expert opinion to understand the fact testimony, which will consist of eye-witness accounts by Ford and other witnesses, as well as a video of the altercation between defendant and Ford captured by a news reporter.

Moreover, any expert testimony as to whether defendant complied with BPD use of force training is not helpful to the jury in deciding a fact at issue. The jury is tasked with determining whether defendant acted as an ordinary and reasonable officer under the circumstances, not whether he complied with his use of force training. Indeed, defendant could be charged with use of excessive force regardless of the type of training he received, or whether he received no training at all. *See United States v. Schatzle*, 901 F.2d 252, 256 (2d. Cir. 1990) (where United States Secret Service Agent was criminally charged with depriving a victim of his constitutional rights by subjecting him to excessive force in violation of Section 242, the district court did not err in refusing to allow defense expert to testify "as to what opinion or expert advice … he [would] have given to an agent confronted with the facts faced by" defendant because "the jury was capable of assessing the reasonableness of [defendant's] conduct on its own and the [expert] opinion on the issue might confuse the jury.")

Next, the Court finds that the proffered testimony is potentially confusing and prejudicial. A number of courts have prohibited testimony about the reasonableness of an officer's conduct in both criminal and civil excessive force cases, on the basis that it usurps the role of the jury, substitutes the witness's or expert's judgement for the jury's judgment on an

ultimate issue and tells them what result to reach. *See Callahan v. Wilson*, 863 F.3d 144 (2d Cir. 2017) (in a civil excessive force claim, the district court acted within its discretion in precluding an expert from testifying that the defendant officer did not act reasonably under the circumstances, because the testimony would "intrude on the jury's role as the finder of fact"); *Hygh v. Jackson,* 961 F.2d 359, 364 (2d Cir. 1992) (expert testimony that officer's conduct was "not justified" or "totally improper" should have been excluded); *United States v. Williams*, 343 F.3d 423 (5th Cir. 2003) (in a Section 242 case involving an officer's discharge of weapon and shooting of a suspect, district court erred, under Rule 704(a), by allowing witness to testify about the reasonableness of the shooting because reasonableness is a legal conclusion). During the proffer in the prior trial, defense counsel indicated that he did not intend to elicit an opinion from the expert as to whether defendant's actions were reasonable. However, the Court finds, consistent with its ruling in the prior trial, that the same dangers would be present should the jury be permitted to hear, from an expert witness, that defendant complied with BPD use of force training during his encounter with Ford on November 27, 2014. Indeed, should the jury find the expert's testimony credible, it would be extremely unlikely that they would then conclude that he acted unreasonably during those encounters. Thus, the practical effect of

the testimony would be to provide a legal conclusion or suggest to the jury what result to reach. *See Hygh*, 961 F.2d at 364 ("Even if a jury were not misled into adopting a legal conclusion proffered by an expert witness, the testimony would remain objectionable by communicating a legal standard—explicit or implicit—to the jury.")

For these reasons, the Court excludes any expert testimony from Mark Tartaro and Guy Rossi.

### *Devin Ford's Prior Drug Conviction*

Defendant renews his request, from the prior trial, to cross-examine Ford with his prior conviction for criminal possession of a controlled substance. The Government objects to the admissibility of the conviction. For the reasons stated below and consistent with its ruling in the prior trial, the Court finds that the fact of the conviction, as well as any underlying details and circumstances of the conviction, are inadmissible cross-examination material.

Federal Rule of Evidence 609 explains when a witness can be impeached by evidence of a criminal conviction. Rule 609(a)(1) provides that, in a criminal case in which the witness is not the defendant, a felony must be admitted, subject to Rule 403, to attack a witness's character for truthfulness. *See* Fed. R. Evid. 609(a)(1). However, misdemeanors are only

admissible if they involve a dishonest act or a false statement. *See* Fed. R. Evid. 609(a)(2). Previously, the parties disputed whether Ford's conviction for narcotics possession should be treated as a felony or a misdemeanor. Defendant has not raised any new legal arguments as to why Ford's conviction should be treated as a felony for purposes of impeachment.

On August 24, 2016, Ford pled guilty, in New York State Supreme Court, County of Erie, to Criminal Possession of a Controlled Substance in the Third Degree, a Class B felony, pursuant to New York Penal Law § 220.16(1). However, during the plea colloquy, the prosecutor explained that Ford had been admitted to the Judicial Diversion Program and had signed a contract to enter the program. The prosecutor then explained that if Ford successfully completed the program, "his conviction for criminal possession of a controlled substance in the third degree would be replaced with a conviction for criminal possession of a controlled substance in the seventh degree, a class A misdemeanor." Likewise, the Judicial Diversion Program contract stated that, in the event Ford completes all program requirements, including drug treatment, abstaining from drugs and alcohol, and regular meetings with his case manager, "the Court promises to allow [him] to withdraw [his] plea of guilty and plead guilty to…an "A" misdemeanor." Ford's conviction was ultimately converted or reduced to Criminal

Possession of a Controlled Substance in the Seventh Degree, a misdemeanor.[3]  Thus, notwithstanding the fact that Ford initially pled guilty to a felony, the final result of his conviction was a misdemeanor.  Currently, Ford stands convicted of a misdemeanor offense that does not involve a dishonest act or false statement.  In other words, at the time Ford is anticipated to testify in this case, he is not a convicted felon.  Therefore, the Court finds, consistent with its prior ruling, that the conviction is not admissible for impeachment pursuant to Rule 609(a)(1)(A).

The Court further finds, consistent with its prior ruling, that Ford's conviction is inadmissible pursuant to Federal Rule of Evidence 609(c).  Rule 609(c)(1) provides that evidence of a conviction is not admissible if "the conviction has been the subject of a pardon, annulment, certification of rehabilitation, or other equivalent procedure based upon a finding that the person has been rehabilitated."  *See* Fed. R. Evid. 609.  Here, the Court is not in possession of a certificate of rehabilitation.  However, the Judicial Diversion Program contract indicated that Ford must accomplish several goals prior to a reduction of his conviction to a misdemeanor.  These goals included attending inpatient drug and alcohol treatment, not using or

---

[3] It is unclear from the record when this occurred.  However, the parties are in agreement that Ford's conviction for criminal possession of narcotics has been reduced to a misdemeanor.

possessing drugs or alcohol, attending regular meetings with his case manager, attending all scheduled court appearances, obtaining his general equivalency degree ("GED"), and obtaining full-time employment or enrolling in a full-time course of study. Indeed, the subsequent reduction of Ford's conviction to a misdemeanor is evidence that he accomplished these goals, all of which were aimed at his rehabilitation. In *United States v. Pagan*, the Second Circuit concluded that a certificate setting aside a youthful offender's conviction and unconditionally discharging him from further probation prior to the maximum term of probation implied a finding of rehabilitation or "its equivalent procedure" under Rule 609(c), thus barring admission of the conviction for impeachment purposes. 721 F.2d 24 (2d. Cir. 1983). The Second Circuit noted that "despite the absence of a certificate of rehabilitation or a finding of rehabilitation in so many words by the court," the granting of an early discharge was essentially a finding that the offender had reached the rehabilitative goals of the Youthful Offender Act. *Id.* at 29-30. Similarly here, the Court finds that the Judicial Diversion Program and the reduction of Ford's sentence upon completion of the program constitute an "other equivalent procedure based upon the finding that the person has been rehabilitated."

Next, and consistent with its rulings in the prior trial, the Court finds that even if it were to conclude that the conviction for Criminal Possession of a Controlled Substance constituted a felony pursuant to Rule 609(a)(1)(A), or that Rule 609(c) did not apply, it would still not permit the conviction to be used for impeachment.  Pursuant to Rule 609(a)(1)(A), felony convictions of witnesses are subject to a Rule 403 analysis before they are admitted.  Rule 403 provides that evidence is not to be admitted if its probative value is substantially outweighed by the danger of unfair prejudice.  *See* Fed. R. Evid. 403(b).  Here, the short-lived conviction for Criminal Possession of a Controlled Substance in the Third Degree arguably has some probative value as to Ford's character for truthfulness.  *See United States v. White*, 312 F.Supp.3d 355, 359 (E.D.N.Y. 2018).  However, the circumstances of the substitution of the non-impeaching misdemeanor offense through the Judicial Diversion Program are potentially confusing, would be unduly time-consuming to explain, and would tend to emphasize the original disposition more than is warranted by the potential legitimate impeachment value of the felony disposition.

It is obvious that Ford's credibility will be especially critical to the defense.  But it is also apparent that defendant has other substantial grounds to attempt to impeach Ford's credibility. On balance, therefore, the Court

finds that the conviction's probative value is substantially outweighed by the danger of confusion, by the undue delay necessary to attempt to explain the circumstances of the judicial diversion, and by the unfair prejudice that would likely result because of the extensive testimony that would be necessary to put the conviction in the correct procedural context.

Finally, the Court again rejects defendant's argument that if Ford's conviction is not admissible pursuant to Rule 609, it is admissible pursuant to Federal Rule of Evidence 608(b). Rule 608(b) states that extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support a witness's character for truthfulness. *See* Fed. R. Evid. 608(b). However, specific instances of conduct can be inquired about during cross-examination if they are probative of a witness's character for truthfulness or untruthfulness. *Id.* Indeed, the Court does not find Ford's possession of narcotics, or even the fact that he possessed narcotics with the intent to sell them, to be highly probative of his character for truthfulness. *See United States v. Nelson*, 365 F. Supp. 2d 381 (SDNY 2005); *accord Weinstein's Federal Evidence* § 608.22(c)(i) ("Rule 608(b) is intended to be restrictive…The rule does not authorize inquiry on cross-examination into instances of conduct that do not actually indicate a lack of truthfulness."); *United States v. Turner*, 104 F.3d 217, 223 (8th Cir. 1997) ("Misconduct

involving violations of narcotics laws is not an act involving dishonesty or untruthfulness and therefore may not be inquired into under Federal Rule of Evidence 608(b)."). For all of these reasons, the Court finds that Ford's prior conviction for criminal possession of a controlled substance is inadmissible.

### Ford's March 2019 Arrest

During the July 15, 2019 oral argument, defense counsel represented that in March of 2019, after the conclusion of the prior trial, Ford was arrested for unlawful possession of marijuana. The parties agree that the arrest did not result in a conviction. Defense counsel seeks to use the arrest as a basis for impeachment of Ford. For the following reasons, the Court denies the request and finds that Ford's March 2019 arrest is not a proper basis for impeachment.

To begin, Ford's arrest did not result in a conviction and therefore is inadmissible pursuant to Federal Rule of Evidence 609. As stated above, Federal Rule of Evidence 608(b) permits a party to inquire about specific instances of conduct during cross examination if they are probative of a witness's character for truthfulness or untruthfulness. *See* Fed. R. Evid. 608(b). An arrest for the possession of marijuana is not sufficiently probative of an individual's character for truthfulness. *See Haynes v. Kanaitis*, 3:99-cv-2551, 2004 U.S. Dist. LEXIS 5527, at *9 (D. Conn. Mar. 3, 2004) (the prior

crime's probative value as to credibility is not significant as it involves only possession of narcotics"); *United States v. Brown*, 606 F. Supp. 2d 306, 319 (EDNY 2009) ("drug possession in the third degree had little bearing on [the witness's] veracity and thus, ranks fairly low on the impeachment value scale"). Finally, the fact that Ford possessed marijuana two months after the conclusion of the prior trial and approximately five years after his encounter with defendant has no bearing on Ford's ability to accurately recall and testify about the relevant events in this case. Thus, defense counsel will not be permitted to cross-examine Ford about his March 2019 arrest.

### ***Statements by Ford on Social Media***

In the prior trial, defense counsel sought to introduce numerous statements that Ford made on social media internet sites from 2012 through 2014. Defendant indicated that, with one exception which will be discussed further below, he did not intend to offer these posts as evidence. Instead, defendant argued that these posts could be inquired about during cross-examination of Ford because they demonstrate Ford's character for untruthfulness, his lack of credibility, and his bias against defendant and police officers in general. Defendant renews his request to cross-examine Ford regarding these posts. Defendant does not offer any new legal arguments as to why these posts are permissible cross-examination.

The Confrontation Clause guarantees a defendant the right to cross-examine government witnesses to test their truthfulness or to reveal their "possible biases, prejudices, or ulterior motives" in relation to "the case at hand." *United States v. Figueroa*, 548 F.3d 222, 227 (2d Cir. 2008). This right is especially important "when applied to the government's star witness or to a witness who provides an essential link in the government's case." *United States v. Paul*, 194 Fed. App'x 792, 794 (11th Cir. 2006). Within the mandates of the Confrontation Clause, a court "may impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is . . . only marginally relevant." *Figueroa*, 548 F.3d at 227. The Court's rulings as to how defendant may question Ford about his social media posts are as follows. These rulings are consistent with the Court's findings in the prior trial.

### *Drinking and Drug Use*

In many of the posts spanning from 2012 through December 2014, Ford states that he is either intoxicated or high on marijuana, or that he is planning to drink alcohol or use marijuana. He posts pictures of himself with alcohol or drugs and boasts about this type of behavior. The Court finds that Ford's use of alcohol or drugs on occasions other than the night of the

alleged excessive force incident are irrelevant and are not proper grounds for impeachment. Furthermore, the fact that Ford boasted and bragged about drinking and drug use on occasions other than the night of the incident is likewise irrelevant and not grounds for impeachment. Indeed, a witness's use of drugs or alcohol, in and of itself, is not probative of their character for truthfulness. *See Furlong v. Circle Line Statute of Liberty Ferry*, 902 F. Supp. 65, 68 (SDNY 1995) (witness's alleged cocaine use two and one-half years before the event giving rise to the lawsuit was not proper impeachment material since it could not have affected the witness's ability to observe and perceive the events and the drug use was not probative of untruthfulness).

However, drug or alcohol use at the time of the events in question is relevant to a witness's credibility, since it effects their ability to perceive the events and to recount them accurately. Thus, defendant is permitted to ask Ford questions, on cross-examination, as to whether he drank to the point of intoxication or used drugs on the date of the incident. Indeed, on November 27, 2014, Ford posts the statement "never drinking again!!" Should Ford deny or attempt to minimize his alcohol consumption on that date, defendant may use the November 27, 2014 social media post to refresh Ford's recollection. However, contrary to defendant's prior argument, the November 27, 2014 social media post is not admissible evidence. The post

is hearsay under Federal Rule of Evidence 403.  It is an out-of-court statement offered for the truth of the matter asserted.  Further, the post does not qualify for any of the exceptions to the hearsay rule under the Federal Rules of Evidence. Thus, the post may only be used to refresh Ford's recollection if needed.

### Posts Regarding the Police

Defendant previously submitted the following three social media posts by Ford that reference police officers: (1) on November 8, 2013, Ford posts "fucking cops smh"; (2) on December 1, 2013, Ford posts "soon as I walk in the party cops come next party!"; and (3) on July 29, 2015, Ford posts "Cops killing people with their arms up and ur main focus is tryna harm us?".  These posts are probative of Ford's bias against police officers.  Therefore, defense counsel has a good faith basis to generally ask Ford whether he has ever spoken out against the police on social media or elsewhere.  For the reasons stated above, the posts are not admissible evidence but may be used as a basis for cross-examination or to refresh Ford's recollection if needed.

### Other Posts

Defendant previously submitted a number of posts by Ford which reference driving illegally or without a valid license.  The Court finds that these statements prove neither bias nor a lack of credibility.  Therefore, they

are not proper impeachment or cross-examination material. In addition, defendant submitted posts wherein Ford references the incident with defendant, or cites to newspaper articles regarding the incident. The Court finds that these posts may be probative of bias and are relevant to the *res gestae* of the event. Thus, those posts may be inquired about during Ford's cross-examination and used to refresh his recollection if needed.

### ***Police Reports***

Defendant also renews his request to introduce (or use for impeachment) 17 police reports or complaints from 2008 through 2016 wherein Ford is mentioned as either a suspect or a victim. Defendant does not offer any new legal arguments as to why the reports are either admissible evidence or permissible cross-examination material. Indeed, none of the incidents mentioned in the reports resulted in a criminal conviction. Thus, consistent with the Court's prior ruling, they are inadmissible pursuant to Rule 609. *See Michelson v. United States*, 335 U.S. 469, 482, 69 S. Ct. 213, 93 L. Ed. 168 (1948) ("Arrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness. It happens to the innocent as well as the guilty. Only a conviction, therefore, may be inquired about to undermine the trustworthiness of a witness.").

Defendant previously argued that the police reports are admissible for impeachment pursuant to Rule 608(b) because they are probative of Ford's lack of credibility and character for untruthfulness. The Court previously reviewed the police reports in detail including the penal law provisions cited therein and the description of the events. To be sure, the reports describe anti-social, unlawful and sometimes violent behavior, including criminal mischief, damaging property, harassment, domestic violence, criminal trespass, possession of marijuana, assault, aggravated unlicensed of a motor vehicle, and burglary. However, none of the conduct cited in the reports involves dishonesty, fraud or false statements. Thus, as the Court found previously, the incidents are not probative of Ford's character for truthfulness and are not admissible pursuant to Rule 608(b). *See United States v. Devery*, 935 F. Sup. 393 (SDNY 1996) ("not all prior bad acts are admissible to impeach a witness…[s]uch act are only admissible insofar as they bear on a witness's propensity for truthfulness or untruthfulness.")

Defendant also argued previously that the cumulative effect of the police reports demonstrated that Ford's conduct and behavior is so egregious, he is not credible. However, this is equivalent to stating that Ford's alleged prior bad acts are indicative of bad propensities or his character as a bad person who cannot be believed. By logical extension,

acceptance of defendant's argument would mean that any witness with a significant number of arrests could be treated as having a bad character for truthfulness, regardless of whether the arrests resulted in conviction or involved dishonesty. This is not the law.

Finally, defendant argued that Ford's arrest for trespass by the Buffalo Police Department on April 3, 2014 is permissible cross-examination material because it demonstrated Ford's bias against BPD officers and specifically against defendant. However, there was no indication that defendant was involved in Ford's arrest on this date. Moreover, it was a minor crime that did not result in a conviction or punishment. Indeed, the only narrative of the event states that "defendant did push way through bar when he was told to leave the premises." Consistent with its prior ruling, the Court finds that this incident is simply too attenuated from any of the events charged in this case to be probative of Ford's bias against BPD officers or defendant. Thus, it cannot be used for impeachment.

### **Sean Deschant**

Sean Deschant will be called as a Government witness to testify about the events involving defendant and Ford. In the previous trial, defendant submitted a social media post by Sean Deschant on November 26, 2014, stating "Biggest Drinking Day of the Year…Let's Get Shwasted." As stated

above, a witness's use of alcohol at the time of the event is relevant as to their ability to perceive and recall the incident. Thus, the Court finds, consistent with its prior ruling, that defense counsel may ask S. Deschant about his alcohol use that day as well as whether he intended to drink to the point of intoxication. Should S. Deschant deny or minimize his alcohol consumption, the post may be used to refresh his recollection. It may not be offered as evidence. Defense also offered a police report indicating that S. Deschant was arrested for unlawful possession of marijuana on May 6, 2011. This arrest did not result in a conviction, does not involve dishonesty and does not demonstrate bias. Therefore, the Court again finds that it cannot be used on cross-examination.

### **Justin Deschant**

Justin Deschant will also be called as a Government witness to testify about the events involving defendant and Ford. Defense previously sought to impeach J. Deschant with police reports indicating that he was arrested for aggravated harassment in June of 2006, possession of alcohol while underage in February of 2010, criminal possession of a weapon in November of 2014, driving while intoxicated in November of 2014, burglary and assault in April of 2014, and assault in August of 2015. Defendant renews his motion to impeach J. Deschant with these police reports. There is no proof that any

of these arrests resulted in convictions and the conduct does not involve dishonesty. Thus, for the same reasons as stated above with respect to Ford's arrest reports, the Court again finds that they are not permissible cross-examination material.

J. Deschant was also arrested on March 28, 2011, by officers from the BPD, for obstruction of justice during a traffic stop. The arrest report indicates that he refused to exit the vehicle and yelled obscenities at the police. Defendant argued previously that this arrest is admissible to show J. Deschant's bias against BPD officers and specifically defendant. Defendant noted that one of the arresting officers was Joseph Hassett, who was on detail with defendant the night of the encounter with Ford. Consistent with its prior ruling, the Court finds that this arrest is too attenuated to show bias against the police or defendant. There is no showing that J. Deschant was convicted of these crimes or punished in any way. While the arrest involved BPD officers, it did not involve defendant. Further, J. Deschant is not the alleged victim of the crime but rather a witness and thus has less of a motive to testify inaccurately. For these reasons, the Court does not find it likely that this arrest would motivate J. Deschant to testify falsely against defendant here. Thus, it is not to be inquired about.

**<u>Testimony of Tina Taylor and Daniel Derenda</u>**

The Government seeks to introduce testimony from Special Agent Tina Taylor of the Federal Bureau of Investigation ("FBI") regarding how the investigation of defendant began, including the FBI's receipt of a news video depicting the incident between defendant and Ford on November 27, 2014.[4] The Government also seeks to introduce testimony from retired Commissioner Daniel Derenda of the BPD (1) that he was provided a news video showing the November 27, 2014 incident and; (2) his contacts with the FBI regarding the incident. Defendant objects to this testimony on the grounds that it is irrelevant and prejudicial.

In the prior trial, defendant objected to Agent Taylor's proffered testimony regarding how the investigation into defendant began.[5] The Court overruled the objection after finding that defendant opened the door to this testimony. Specifically, during his opening statement, defense counsel criticized the investigation and noted that the FBI waited until almost the close of the statute of limitations to pursue charges against defendant. Defense counsel has indicated that he does not intend to make similar

---

[4] Taylor is also anticipated to discuss certain evidence related to defendant's conduct on November 27, 2014, including photographs taken of Ford's injuries. Defendant does not object to this testimony.

[5] Derenda was not offered as a witness in the prior trial.

remarks during this trial.  In light of this representation, the Court finds that testimony regarding how the investigation into defendant began to be irrelevant at this time.  The Government argues that without the testimony, the jury will wonder how the FBI came to learn of the incident or to investigate defendant.  The Government also argues that the testimony is necessary to complete the narrative as to what occurred in this case.  The Court disagrees.  The Court does not find it likely that the jury will wonder how defendant came to the attention of the FBI or why the FBI decided to pursue this case.  Indeed, there will be testimony that a reporter took a video of the encounter between Ford and defendant and that this video was broadcast to the public.  Further, the jury does not need to know how or why the FBI decided to pursue this matter in order to listen to the evidence and decide the key issues here, including whether the amount of force used by defendant was reasonable under the circumstances.

Finally, the Court finds that any probative value of the testimony at this time is outweighed by the danger of unfair prejudice.  Should the jury hear that the former commissioner of the BPD viewed the video and either referred the case to the FBI or expressed an opinion that the FBI should investigate defendant for use of excessive force, they may likely assume that the force used was excessive.  This would be highly suggestive to the jury

as to what conclusion to reach when considering whether defendant's actions on the night in question were reasonable.  For these reasons, the Court will preclude the testimony at this time.  However, should the defendant open the door to this testimony by criticizing the timing, manner or motive of the investigation, the Government may seek to revisit this issue.

### Striking of Jurors Prior to Start of Jury Selection

During oral argument on July 15, 2019, defense counsel submitted, for the Court's review, social media posts by two prospective jurors.[6]  The posts are highly critical of law enforcement and demonstrate bias or hostility against police officers.  Defendant argues that the nature of the posts indicates that these individuals could not be fair and impartial jurors in this case.  Therefore, they should be struck from the jury pool prior to the start of jury selection.  Defendant further contends that the posts depict such a strong anti-police bias that allowing these individuals to attend jury selection would risk tainting the entire pool, should they express these opinions during *voir dire.*[7]  The Government objects to the striking of any potential jurors prior to the start of jury selection.

---

[6] The parties are provided with the names of all prospective jurors prior to the start of jury selection.  Defense counsel found the social media posts when investigating the background of the prospective jurors in preparation for jury selection.

[7] Defense counsel presented posts by a third individual and requested that he be removed from the panel as well.  However, this individual has already been stricken from the pool because of a scheduling conflict.  Therefore, this request is moot.

Typically, the Court would not consider striking jurors before the start of jury selection and *voir dire*. Indeed, the entire purpose of *voir dire* is to determine, in open court and in the presence of the parties, the ability of each potential juror to be fair and impartial. However, this case presents unique circumstances that warrant special consideration. Many individuals have very strong opinions regarding police officers in general and especially regarding police officers suspected of using excessive force. Indeed, the social media posts presented by defense counsel suggest a very strong anti-police bias. Should these individuals be questioned about this potential bias during *voir dire*, they may not recall their social media posts, which will necessarily raise questions about the individual's truthfulness. If questioned more pointedly with reference to specific social media posts, the individuals may feel singled out for attention unfairly. On the other hand, the individuals may speak out strongly against police officers during the *voir dire*, which unnecessarily risks tainting the entire jury pool. In order to prevent any of these unwelcome scenarios, the Court will grant defendant's request to strike the two individuals whose identities are known to the parties from the prospective juror pool prior to the start of jury selection. These individuals will not be struck from future jury service in other cases. Further, this

decision does not set a precedent that may be applied to other cases, most of which present wholly different issues.

Lastly, the Government has identified another potential juror who posted comments on social media expressing support for law enforcement. The Government contends that should the Court exclude the two potential jurors cited by defense counsel on the basis of their social media posts, this individual should be excluded as well. The Court does not find that the same concerns are present with respect to this individual. Specifically, the fairness and impartiality of this potential juror may be assessed adequately through *voir dire* without the risk of tainting the entire jury pool. Thus, the Government's request is denied.

**SO ORDERED**.

Dated:  July 16, 2019
          Buffalo, New York


                    _s/Richard J. Arcara_____
                    RICHARD J. ARCARA
                    Senior District Judge