1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,        )
                                 ) Case No. 1:15-CR-00157
                                 )             (RJA)(HKS)
                 Plaintiff,      )
                                 )
vs.                              ) February 12th, 2018
                                 )
COREY KRUG,                      )
                                 )
                 Defendant.      )

**TRANSCRIPT OF JURY TRIAL TESTIMONY OF TINA TAYLOR**
**BEFORE THE HONORABLE RICHARD J. ARCARA**
**SENIOR UNITED STATES DISTRICT JUDGE**

<u>APPEARANCES:</u>

For the Plaintiff:    JAMES P. KENNEDY, JR.
                      UNITED STATES ATTORNEY
                      BY:  JOHN D. FABIAN, ESQ.
                           AARON J. MANGO, ESQ.
                      ASSISTANT UNITED STATES ATTORNEYS
                      138 Delaware Avenue
                      Buffalo, NY 14202

For the Defendant:    CONNORS, LLP
                      BY:  TERRANCE M. CONNORS, ESQ.
                           NICHOLAS A. ROMANO, ESQ,
                      1000 Liberty Building
                      Buffalo, NY 14202

                      LIPSITZ GREEN SCIME CAMBRIA LLP
                      BY:  HERBERT L. GREENMAN, ESQ.
                      42 Delaware Avenue, Suite 300
                      Buffalo, NY 14202

Court Reporter:       MEGAN E. PELKA, RPR
                      Robert H. Jackson Courthouse
                      2 Niagara Square
                      Buffalo, NY 14202

| | | |
|---|---|---|
| 02:40PM | 1 | (The jury entered the room at 2:40 p.m.) |
| 02:42PM | 2 | THE COURT:  All right.  Mr. Mango? |
| 02:42PM | 3 | MR. MANGO:  Thank you, Your Honor.  The government |
| 02:42PM | 4 | would call Special Agent Tina Taylor, witness number 1 on the |
| 02:42PM | 5 | list. |
| 02:42PM | 6 | THE CLERK:  Please state your full name and spell |
| 02:42PM | 7 | your last name for the record. |
| 02:42PM | 8 | THE WITNESS:  Tina Taylor, T-A-Y-L-O-R. |
| 02:42PM | 9 | (The witness is was sworn at 2:43 p.m.) |
| 02:43PM | 10 | MR. MANGO:  Your Honor, may I proceed? |
| 02:43PM | 11 | THE COURT:  Yes, please. |
| 02:43PM | 12 | |
| 02:43PM | 13 | DIRECT EXAMINATION |
| 02:43PM | 14 | |
| 02:43PM | 15 | BY MR. MANGO: |
| 02:43PM | 16 | Q.  Good afternoon. |
| 02:43PM | 17 | A.  Good afternoon. |
| 02:43PM | 18 | Q.  Can you please tell the jury how you are currently |
| 02:43PM | 19 | employed? |
| 02:43PM | 20 | A.  Yes.  I'm a special agent with the Federal Bureau of |
| 02:43PM | 21 | Investigation. |
| 02:43PM | 22 | Q.  How long have you been a special agent? |
| 02:43PM | 23 | A.  It will be 21 years in May. |
| 02:43PM | 24 | Q.  And what is your educational and work background? |
| 02:43PM | 25 | A.  In 1996, I graduated from the University at Buffalo |

02:43PM   1   School of Law.  I was admitted to practice law in New York

02:43PM   2   State and then, I worked for a law firm here in Buffalo for a

02:43PM   3   couple of years.  I became a special agent with the FBI in

02:43PM   4   1998.

02:43PM   5   Q.  Now, have you been a special agent here in Buffalo since

02:43PM   6   1998, or have you been assigned to any other locations?

02:43PM   7   A.  No.  My first office of assignment was New York City

02:43PM   8   where I worked white collar crime for 10 years and in 2008 I

02:44PM   9   transferred back to the Buffalo Division where I've worked

02:44PM  10   civil rights, human trafficking and violent crimes against

02:44PM  11   children.

02:44PM  12   Q.  Now, you mentioned civil rights.  What are your duties

02:44PM  13   with respect to civil rights investigations?

02:44PM  14   A.  Civil rights investigations for the FBI encompass hate

02:44PM  15   crimes, human trafficking and also color of law

02:44PM  16   investigations.

02:44PM  17   Q.  And if you can tell the jury, what do color of law

02:44PM  18   investigations entail?

02:44PM  19   A.  Color of law investigations are when a law enforcement

02:44PM  20   officer -- it could be at any level -- state, local,

02:44PM  21   federal -- is alleged to have deprived an individual of their

02:44PM  22   rights under color of law and color of law just means that in

02:44PM  23   their capacity as law enforcement officers.

02:44PM  24   Q.  Now, going back to December of 2014, did you also

02:44PM  25   investigate civil rights violations at that time?

02:44PM  1    A.  Yes.

02:44PM  2    Q.  Are you familiar with the Buffalo Police Department's use

02:44PM  3    of force reports?

02:44PM  4    A.  Yes.

02:45PM  5    Q.  We've seen those?

02:45PM  6    A.  Yes.

02:45PM  7    Q.  Okay.  Do you review the use of force reports during your

02:45PM  8    civil rights investigations?

02:45PM  9    A.  Yes, I do.

02:45PM  10   Q.  Why -- if you can tell the jury, why you review the use

02:45PM  11   of force reports in your civil rights investigations?

02:45PM  12   A.  I review the reports to determine what the law

02:45PM  13   enforcement officer's account of events that caused them to

02:45PM  14   use force were.  I also review them for witnesses and nature

02:45PM  15   of injuries to compare the nature of the injuries listed to

02:45PM  16   the reasons the officer used force.

02:45PM  17        I also review them for the tactics used and I review

02:45PM  18   that section.  Also, during the course of my investigation,

02:45PM  19   as I'm interviewing witnesses and gathering other evidence,

02:45PM  20   I'll go back to those use of force forms and compare what

02:45PM  21   I've read in my --

02:45PM  22        MR. CONNORS:  Excuse me.  I object to that.  It's

02:45PM  23   beyond the narrative and it's improper.

02:45PM  24        THE COURT:  Overruled.  Go ahead.

02:46PM  25        THE WITNESS:  I'll compare what I have learned in my

4

02:46PM   1   investigation from witness interviews and reviewing records to

02:46PM   2   what was listed in that use of force form.

02:46PM   3   BY MR. MANGO:

02:46PM   4   Q.   Now, at some point, did the FBI open a civil rights

02:46PM   5   investigation into Buffalo Police Officer Corey Krug?

02:46PM   6   A.   Yes.  We opened an investigation on December 11th, 2014.

02:46PM   7   Q.   And Buffalo Police Officer Corey Krug is the defendant in

02:46PM   8   this case?

02:46PM   9   A.   Yes.

02:46PM   10   Q.   And you mentioned that was December when of '14?

02:46PM   11   A.   December 11th.

02:46PM   12   Q.   And did you open that investigation?

02:46PM   13   A.   Yes.

02:46PM   14   Q.   What caused your investigation to be opened?

02:46PM   15        MR. CONNORS:  I'm going to object to that, Your

02:46PM   16   Honor.

02:46PM   17        THE COURT:  Overruled.

02:46PM   18        THE WITNESS:  Daniel Derenda, the Commissioner of the

02:46PM   19   Buffalo Police Department at the time, contacted the Buffalo

02:46PM   20   office of the FBI and then, I viewed a video provided to him

02:46PM   21   by a local news station.

02:46PM   22   BY MR. MANGO:

02:46PM   23   Q.   And at the time you opened your investigation of the

02:47PM   24   defendant, were you aware of the incident between the

02:47PM   25   Defendant Corey Krug and Marcus Worthy?

TAYLOR -- BY MR. MANGO -- 02/12/2019

5

| | | |
|---|---|---|
| 02:47PM | 1 | A.  No, I was not. |
| 02:47PM | 2 | Q.  At the time you opened your investigation of the |
| 02:47PM | 3 | Defendant Corey Krug, were you aware of the incident between |
| 02:47PM | 4 | the defendant and Daniel Rashada? |
| 02:47PM | 5 | A.  No. |
| 02:47PM | 6 | Q.  How did you learn of those incidences? |
| 02:47PM | 7 | A.  A subpoena was issued to the Buffalo Police Department to |
| 02:47PM | 8 | provide any and all documents and records not only related to |
| 02:47PM | 9 | the Devin Ford incident, but also related to any other |
| 02:47PM | 10 | allegations where Officer Krug was alleged to have violated |
| 02:47PM | 11 | an individual's civil rights. |
| 02:47PM | 12 | Q.  And in reviewing the response to that subpoena, you |
| 02:47PM | 13 | learned of Mr. Rashada and Mr. Worthy? |
| 02:47PM | 14 | MR. CONNORS:  These are leading questions, Your |
| 02:47PM | 15 | Honor. |
| 02:47PM | 16 | THE COURT:  Sustained.  Rephrase your question, |
| 02:47PM | 17 | please. |
| 02:47PM | 18 | MR. MANGO:  Yes, Your Honor. |
| 02:47PM | 19 | BY MR. MANGO: |
| 02:47PM | 20 | Q.  So, how did you learn of Mr. Rashada and Mr. Worthy? |
| 02:47PM | 21 | A.  Their names were within those documents provided by the |
| 02:47PM | 22 | Buffalo Police Department. |
| 02:48PM | 23 | Q.  Did you conduct interviews with Mr. Rashada and |
| 02:48PM | 24 | Mr. Worthy, or did the FBI conduct interviews with them and |
| 02:48PM | 25 | other witnesses to those events? |

TAYLOR -- BY MR. MANGO -- 02/12/2019
6

| | | |
|---|---|---|
| 02:48PM | 1 | A.  Yes. |
| 02:48PM | 2 | Q.  Now, did you also interview Devin Ford? |
| 02:48PM | 3 | A.  Yes. |
| 02:48PM | 4 | Q.  When was your first interview of Devin Ford? |
| 02:48PM | 5 | MR. CONNORS:  I'm going to object to this, Your |
| 02:48PM | 6 | Honor. |
| 02:48PM | 7 | THE COURT:  Overruled. |
| 02:48PM | 8 | THE WITNESS:  It was on December 23rd, 2014. |
| 02:48PM | 9 | BY MR. MANGO: |
| 02:48PM | 10 | Q.  Now, on December 23rd, 2014, at the conclusion of that |
| 02:48PM | 11 | interview, do you know if photographs were taken by the FBI |
| 02:48PM | 12 | of Devin Ford? |
| 02:48PM | 13 | A.  Yes. |
| 02:48PM | 14 | Q.  And did you witness those photographs be taken? |
| 02:48PM | 15 | A.  Yes. |
| 02:48PM | 16 | Q.  Special Agent, I'm showing you what's marked Government |
| 02:49PM | 17 | Exhibit 41C and 41D. |
| 02:49PM | 18 | A.  Yes. |
| 02:49PM | 19 | Q.  Do you see those in front of you? |
| 02:49PM | 20 | A.  Yes. |
| 02:49PM | 21 | Q.  Let's start with 41C.  What does -- what is depicted in |
| 02:49PM | 22 | 41C generally? |
| 02:49PM | 23 | A.  41C is a photograph taken of Devin Ford's leg after that |
| 02:49PM | 24 | interview that I was present at on December 23rd, 2014. |
| 02:49PM | 25 | Q.  And did you see his leg when this photograph was taken? |

TAYLOR -- BY MR. CONNORS -- 02/12/2019

02:49PM  1  A.  Yes.

02:49PM  2  Q.  And does the photograph accurately and fairly represent

02:49PM  3  what Devin Ford's leg looked like when you saw it?

02:49PM  4  A.  Yes.

02:49PM  5         MR. MANGO:  Judge, I would move Government Exhibit

02:49PM  6  41C into evidence.

02:49PM  7         MR. CONNORS:  May I ask a question in voir dire, Your

02:49PM  8  Honor?

02:49PM  9         THE COURT:  Yes, you may.

02:49PM  10

02:49PM  11                  VOIR DIRE EXAMINATION

02:49PM  12

02:49PM  13  BY MR. CONNORS:

02:49PM  14  Q.  The photograph that you have in front of you is

02:49PM  15  Exhibit 41C, Agent Taylor?

02:49PM  16  A.  Yes.

02:49PM  17  Q.  Can you tell us whether or not there were any techniques

02:49PM  18  used to enhance that particular photo?

02:50PM  19  A.  There are not any techniques.

02:50PM  20  Q.  Who took the photograph?

02:50PM  21  A.  My colleague, Special Agent Jennifer Amo.

02:50PM  22  Q.  With what camera?

02:50PM  23  A.  With the camera on her cell phone.

02:50PM  24  Q.  Now, you know that there were other photos taken at an

02:50PM  25  earlier stage with respect to Ford, correct?

| | | |
|---|---|---|
| 02:50PM | 1 | A.  I know that there were other photos taken either by Ford |
| 02:50PM | 2 | or by his lawyer, but I'm not sure when they were taken. |
| 02:50PM | 3 | Q.  Well, you were here at trial when he testified that they |
| 02:50PM | 4 | were taken earlier than the December 23rd photo that you |
| 02:50PM | 5 | took? |
| 02:50PM | 6 | A.  Uh-huh.  Yes. |
| 02:50PM | 7 | Q.  You have to answer yes. |
| 02:50PM | 8 | A.  Yes.  I'm sorry. |
| 02:50PM | 9 | Q.  And yet, those photos that were taken earlier, to you, |
| 02:50PM | 10 | were not satisfactory enough? |
| 02:50PM | 11 | MR. MANGO:  Judge, I'm going to object.  We're |
| 02:50PM | 12 | talking about this photo in front of her now. |
| 02:50PM | 13 | THE COURT:  Sustained. |
| 02:50PM | 14 | BY MR. CONNORS: |
| 02:50PM | 15 | Q.  41C, you took that photo because the earlier ones were |
| 02:50PM | 16 | not satisfactory to you?  Yes or no? |
| 02:50PM | 17 | MR. MANGO:  Objection, Judge.  This just a brief voir |
| 02:50PM | 18 | dire about this exhibit. |
| 02:50PM | 19 | THE COURT:  Sustained.  That's cross-examination. |
| 02:50PM | 20 | MR. CONNORS:  I'll be done. |
| 02:50PM | 21 | THE COURT:  It will be received in evidence. |
| 02:50PM | 22 | (Government Exhibit 41C was received in evidence.) |
| 02:50PM | 23 | |
| 02:50PM | 24 | MR. MANGO:  Thank you, Your Honor.  I'd ask it be |
| 02:51PM | 25 | published for the jury, 41C. |

| 02:51PM | 1 | DIRECT EXAMINATION |
| 02:51PM | 2 | |
| 02:51PM | 3 | BY MR. MANGO: |
| 02:51PM | 4 | Q.  Do you see this image on your screen there? |
| 02:51PM | 5 | A.  Yes. |
| 02:51PM | 6 | Q.  And is this the photograph you were just talking about? |
| 02:51PM | 7 | A.  Yes. |
| 02:51PM | 8 | Q.  And what does it depict? |
| 02:51PM | 9 | A.  It depicts Devin Ford's leg as it appeared on |
| 02:51PM | 10 | December 23rd, 2014. |
| 02:51PM | 11 | Q.  Do you see injuries on that photograph? |
| 02:51PM | 12 | A.  Yes. |
| 02:51PM | 13 | Q.  Now -- |
| 02:51PM | 14 | MR. CONNORS:  Excuse me.  I'm going to ask that that |
| 02:51PM | 15 | be stricken, Your Honor.  She can say the photograph is what |
| 02:51PM | 16 | it is, but to interpret it would be improper. |
| 02:51PM | 17 | THE COURT:  Overruled. |
| 02:51PM | 18 | MR. MANGO:  We can bring that down, please, |
| 02:51PM | 19 | Ms. Kingston. |
| 02:51PM | 20 | BY MR. MANGO: |
| 02:51PM | 21 | Q.  And if you could turn your attention to 41D that's in |
| 02:51PM | 22 | front of you? |
| 02:51PM | 23 | A.  Yes. |
| 02:51PM | 24 | Q.  What is 41D, generally? |
| 02:51PM | 25 | A.  41D is a photograph of Devin Ford's leg that Special |

02:51PM 1  Agent Amo took while I was present after the interview on

02:51PM 2  December 23rd, 2014.

02:51PM 3  Q.  Did you see Mr. Ford's leg at the time the photograph was

02:52PM 4  taken?

02:52PM 5  A.  Yes.

02:52PM 6  Q.  Does this photograph fairly and accurately depict what

02:52PM 7  his leg looked like when you saw it?

02:52PM 8  A.  Yes.

02:52PM 9        MR. MANGO:  Judge, I would move Exhibit 41D into

02:52PM 10 evidence.

02:52PM 11       THE COURT:  It will be received.

02:52PM 12 (Government Exhibit 41D was received in evidence.)

02:52PM 13

02:52PM 14       MR. MANGO:  I would ask it be published for the jury.

02:52PM 15 BY MR. MANGO:

02:52PM 16 Q.  And is this the photograph THAT you were just describing?

02:52PM 17 A.  Yes.

02:52PM 18 Q.  What do you see in this photograph?

02:52PM 19       MR. CONNORS:  Excuse me.  I'm going to object to that

02:52PM 20 again, Your Honor.  The photograph speaks for itself.  That's

02:52PM 21 the best evidence rule.

02:52PM 22       THE COURT:  I'm going to sustain that.

02:52PM 23 BY MR. MANGO:

02:52PM 24 Q.  Did you testify in the Grand Jury in this case, Special

02:52PM 25 Agent?

TAYLOR -- BY MR. CONNORS-- 02/12/2019

11

| | | |
|---|---|---|
| 02:52PM | 1 | A.  Yes. |
| 02:52PM | 2 | Q.  Do you know who was referred to in the indictment as |
| 02:52PM | 3 | M.W.? |
| 02:52PM | 4 | A.  Yes. |
| 02:52PM | 5 | Q.  Who is that? |
| 02:52PM | 6 | A.  Marcus Worthy. |
| 02:52PM | 7 | Q.  And how about who is referred to in the indictment as |
| 02:52PM | 8 | D.R.? |
| 02:52PM | 9 | A.  Daniel Rashada. |
| 02:52PM | 10 | Q.  And who is referred to in the indictment as D.F.? |
| 02:52PM | 11 | A.  Devin Ford. |
| 02:52PM | 12 | MR. MANGO:  Okay.  Thank you.  Nothing further, Your |
| 02:52PM | 13 | Honor. |
| 02:52PM | 14 | |
| 02:52PM | 15 | CROSS-EXAMINATION |
| 02:53PM | 16 | |
| 02:53PM | 17 | BY MR. CONNORS: |
| 02:53PM | 18 | Q.  So, there are two photographs that you were present when |
| 02:53PM | 19 | they were taken? |
| 02:53PM | 20 | A.  Yes. |
| 02:53PM | 21 | Q.  And you told us that was on December 23rd, 2014? |
| 02:53PM | 22 | A.  Yes. |
| 02:53PM | 23 | Q.  And the first one would be 41C, correct? |
| 02:53PM | 24 | A.  Yes. |
| 02:53PM | 25 | MR. CONNORS:  Can we pull that up, please, Danielle? |

| | | |
|---|---|---|
| 02:53PM | 1 | BY MR. CONNORS: |
| 02:53PM | 2 | Q.  Who was present when this photograph was taken? |
| 02:53PM | 3 | A.  Special Agent Jennifer Amo and myself. |
| 02:53PM | 4 | Q.  You told us earlier the type of camera that was used? |
| 02:53PM | 5 | A.  Yes. |
| 02:53PM | 6 | Q.  And you know that this photograph was taken after the |
| 02:53PM | 7 | photographs that are already in evidence, 41A and 41B, |
| 02:53PM | 8 | correct? |
| 02:53PM | 9 | A.  Yes. |
| 02:53PM | 10 | Q.  And whose idea was it to take additional paragraphs? |
| 02:53PM | 11 | A.  It was Special Agent Amo and myself's idea. |
| 02:53PM | 12 | Q.  When you took the photograph, did you use any device at |
| 02:53PM | 13 | all to enhance the photograph? |
| 02:53PM | 14 | A.  No. |
| 02:53PM | 15 | Q.  Do you know where Devin Ford was between the time of the |
| 02:54PM | 16 | photographs that were taken 41A and B and this photograph, |
| 02:54PM | 17 | 41C? |
| 02:54PM | 18 | A.  I don't. |
| 02:54PM | 19 | Q.  So, how long a period of time was it between those two |
| 02:54PM | 20 | periods of photographs?  His were taken, as you know from the |
| 02:54PM | 21 | testimony, December 11th, or thereabouts and yours were taken |
| 02:54PM | 22 | December 23rd, correct? |
| 02:54PM | 23 | A.  Right. |
| 02:54PM | 24 | Q.  That would be accurate statement of approximately two |
| 02:54PM | 25 | weeks? |

02:54PM   1    A.  Yes, according to his testimony.

02:54PM   2    Q.  Do you know where he was during those two weeks?

02:54PM   3    A.  I don't.

02:54PM   4    Q.  Do you know whether he was involved in any activities at

02:54PM   5    all during those two weeks?

02:54PM   6    A.  I don't.

02:54PM   7    Q.  Do you know whether or not he sustained any injuries

02:54PM   8    during those two weeks?

02:54PM   9    A.  I don't.

02:54PM  10    Q.  So, you wouldn't be able to tell us then, whether or not

02:54PM  11    41C, exhibit that's up, reflected anything that could have

02:54PM  12    occurred between the time of the first photograph, 41A and

02:54PM  13    the current photograph, 41C, correct?

02:54PM  14    A.  Correct.

02:54PM  15         MR. CONNORS:  Could we pull up 41A, please, Danielle?

02:54PM  16    BY MR. CONNORS:

02:55PM  17    Q.  Were you present when that photograph was taken?

02:55PM  18    A.  Yes.

02:55PM  19    Q.  Where that was taken?  Are you certain?

02:55PM  20    A.  I believe so.  That was taken at the U.S. Attorney's

02:55PM  21    office as well.

02:55PM  22    Q.  When?

02:55PM  23    A.  On December 23rd as well, I believe.

02:55PM  24    Q.  Are you sure this is not December 11th when he took them

02:55PM  25    at home with his own camera?

02:55PM  1    A.  I don't think so.

02:55PM  2    Q.  How about 41B?

02:55PM  3          MR. CONNORS:  Would you pull that up?  It's not in

02:55PM  4    evidence.

02:55PM  5    BY MR. CONNORS:

02:55PM  6    Q.  So, my question is -- let's stay with 41A for a second.

02:55PM  7    Was that taken the same day that 41C and D were taken?

02:55PM  8    A.  Yes.

02:55PM  9    Q.  So, how many photos were taken that day?

02:55PM  10   A.  Either three or four.  I'm not sure.

02:55PM  11   Q.  Are these all the photos that were taken?

02:55PM  12   A.  Yes.

02:55PM  13   Q.  So, the exhibit photos 41A and C and D are taken on

02:56PM  14   exactly the same day, is that right?

02:56PM  15   A.  Yes.

02:56PM  16          MR. CONNORS:  Excuse me for one second.

02:56PM  17          THE COURT:  We'll take a five-minute recess, ladies

02:56PM  18   and gentlemen.

02:56PM  19   (The jury left the room at 2:56 p.m.)

02:56PM  20   (Brief recess.)

03:00PM  21   (The jury entered the room at 3:00 p.m.)

03:03PM  22          THE CLERK:  All rise.  You may be seated.

03:03PM  23          THE COURT:  Okay.  Mr. Connors?

03:03PM  24          MR. CONNORS:  Thank you, Your Honor.  Approaching the

03:03PM  25   witness, Your Honor.

TAYLOR -- BY MR. CONNORS-- 02/12/2019
15

03:03PM  1    BY MR. CONNORS:

03:03PM  2    Q.  I've now put in front of you a series of photographs

03:03PM  3    starting at 41A, correct, Agent Taylor?

03:03PM  4    A.  Yes.

03:03PM  5    Q.  And it runs from 41A to, I believe, 41D, correct?

03:03PM  6    A.  Yes.

03:03PM  7    Q.  Let's look at 41B.  Just look at it yourself.

03:03PM  8    A.  Did you say B or D?

03:03PM  9    Q.  B.  Do you have it?

03:03PM  10   A.  Yes.

03:03PM  11   Q.  Okay.  That fairly and accurately depict the lower

03:03PM  12   portion of Devin Ford's leg?

03:03PM  13   A.  Yes.

03:03PM  14   Q.  Which leg?

03:03PM  15   A.  Left.

03:03PM  16   Q.  How do you know that?

03:03PM  17   A.  Well, I know that that's the leg that was injured and

03:03PM  18   that's the leg we took the photograph of.

03:03PM  19   Q.  You can't tell by looking at it which leg it is, can you?

03:03PM  20   A.  Well, I can tell that this is the photograph that we took

03:03PM  21   and we look a photograph of Devin Ford's leg.

03:04PM  22   Q.  Not both legs?

03:04PM  23   A.  No.

03:04PM  24        MR. CONNORS:  So, 41B is not in evidence.  I offer

03:04PM  25   that into evidence, Your Honor.

TAYLOR -- BY MR. CONNORS-- 02/12/2019

16

03:04PM  1          MR. MANGO:  No objection, Judge.

03:04PM  2          THE COURT:  All right.  It will be received.

03:04PM  3  (Government Exhibit 41B was received in evidence.)

03:04PM  4

03:04PM  5  BY MR. CONNORS:

03:04PM  6  Q.  Now, just so we're clear, I want to start with 41A.

03:04PM  7  That's a photo that you took or Agent Amo took?  41A?

03:04PM  8  A.  Yes.  It's a copy of 41D.

03:04PM  9  Q.  Is that a photo -- 41A, that's in evidence, is that a

03:04PM  10 photo that you or Agent Amo took?

03:04PM  11 A.  Yes.

03:04PM  12 Q.  And on what date was that taken?

03:04PM  13 A.  December 23rd.

03:04PM  14 Q.  41B, you just told us is a photo as well.  That was taken

03:04PM  15 by you or Agent Amo?

03:04PM  16 A.  Agent Amo, yes.

03:04PM  17 Q.  And that was taken on the same date, correct?

03:04PM  18 A.  Yes.

03:04PM  19 Q.  And 41C, will you look at that, please and tell us if

03:04PM  20 that is a photo taken by you or Agent Amo?

03:05PM  21 A.  Agent Amo on the same day.

03:05PM  22 Q.  On the same day?

03:05PM  23 A.  Yes.

03:05PM  24 Q.  And your answer would be the same with respect to 41D?

03:05PM  25 A.  Yes.

03:05PM    1    Q.  Are those all the photos in the possession of the Bureau

03:05PM    2    that were taken of Devin Ford?

03:05PM    3    A.  Yes.

03:05PM    4    Q.  You sure of that?

03:05PM    5    A.  I believe so, yes.

03:05PM    6    Q.  Have you seen any other photos of Devin Ford either prior

03:05PM    7    to the time that was taken or since that time?

03:05PM    8    A.  I have seen the photos that Devin Ford's attorney

03:05PM    9    provided to us, which I believe are the other ones,

03:05PM   10    Defendant's Exhibit 106 and 107.

03:05PM   11    Q.  Okay.  So, let's talk about that.  You have also in front

03:05PM   12    of you Defendant's Exhibit in evidence 106 and 107, correct?

03:05PM   13    A.  Yes.

03:05PM   14    Q.  But you weren't present when those were taken?

03:05PM   15    A.  I was not, no.

03:05PM   16    Q.  Do you know when they were taken?

03:05PM   17    A.  I don't.

03:05PM   18    Q.  Do you know if they were taken before the 41 series were

03:06PM   19    taken or not?

03:06PM   20    A.  I don't have any personal knowledge that they were taken

03:06PM   21    before.

03:06PM   22    Q.  Did you investigate that to see when they were taken when

03:06PM   23    they came into your position?

03:06PM   24    A.  When they came into my possession?

03:06PM   25    Q.  Yes.

03:06PM  1   A.  If would be in the file, but I didn't look at the date.

03:06PM  2   I believe it was after December 23rd, though.

03:06PM  3   Q.  After December 23rd?

03:06PM  4   A.  Yes.

03:06PM  5   Q.  And I think we've established with respect to 41C that

03:06PM  6   you didn't know the whereabouts of Devin Ford between

03:06PM  7   December -- actually, between November 27th and the time the

03:06PM  8   photos were taken on December 23rd, correct?

03:06PM  9   A.  Yes.

03:06PM  10  Q.  And that would hold for all of the 41 series of exhibits,

03:06PM  11  correct?

03:06PM  12  A.  Yes.

03:06PM  13  Q.  Okay.  Now, I want to ask you one question to make sure I

03:06PM  14  heard you correctly.  You told us that you have been in the

03:06PM  15  Bureau and you were here present in Buffalo in the years

03:06PM  16  2010, 2011 right through 2014, correct?

03:06PM  17  A.  Yes.

03:06PM  18  Q.  And you also told us in your direct examination that

03:06PM  19  during the time period, you had access to the use of force

03:07PM  20  reports of the Buffalo Police Department, true?

03:07PM  21  A.  I did not say that.

03:07PM  22  Q.  Well, did you?

03:07PM  23  A.  Did I have access to them?

03:07PM  24  Q.  Yes.

03:07PM  25  A.  Like unconditional access to them?

03:07PM    1    Q.  It's a simple question.  Did you have access to them in

03:07PM    2    your role as working for the civil rights division?

03:07PM    3    A.  Sure.  If there was an investigation open and the Buffalo

03:07PM    4    Police Department was subpoenaed, I would have access to

03:07PM    5    whatever use of force form applied with the investigation.

03:07PM    6    Q.  And that would apply in the years 2010, correct?

03:07PM    7    A.  Yes.

03:07PM    8    Q.  2011?

03:07PM    9    A.  Yes.

03:07PM    10   Q.  Right up until 2014, correct?

03:07PM    11   A.  Yes.

03:07PM    12        MR. CONNORS:  Thank you.  That's all I have, Your

03:07PM    13   Honor.

03:07PM    14        THE COURT:  When you say you have access, what do you

03:07PM    15   mean you have access?  Did you actually review any of these

03:07PM    16   reports?

03:07PM    17        THE WITNESS:  Only if they applied to the

03:07PM    18   investigation that I was working.  So, I didn't have carte

03:07PM    19   blanche access.

03:07PM    20        THE COURT:  You only had access to what you were

03:08PM    21   investigating?

03:08PM    22        THE WITNESS:  Right.  I mean, I would have to

03:08PM    23   subpoena them from the Buffalo Police Department.  I didn't

03:08PM    24   have access to them within the FBI or I could just go in a

03:08PM    25   file cabinet and look at them.  If they were related to an

US v KRUG -- 2/12/19 -- PROCEEDINGS

20

03:08PM  1   investigation I was working, I could then subpoena them and I

03:08PM  2   would be able to look at them.

03:08PM  3            THE COURT:  All right.  Mr. Mango?

03:08PM  4            MR. MANGO:  Nothing further.

03:08PM  5            THE COURT:  Thank you.

03:08PM  6            THE WITNESS:  Thank you.

7   (The witness was excused at 3:08 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              *      *      *      *      *      *      *

2

3              I certify that the foregoing is a

4        correct transcription of the proceedings

5        recorded by me in this matter.

6

7

8

9                              s/ Megan E. Pelka, RPR

10                             Court Reporter,

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25