1           **UNITED STATES DISTRICT COURT**
            **WESTERN DISTRICT OF NEW YORK**
2


3
UNITED STATES OF AMERICA,        )
4                                ) Case No. 1:15-CR-00157
                                 )            (RJA)(HKS)
5                Plaintiff,       )
                                 )
6  vs.                           ) July 19th, 2019
                                 )
7  COREY KRUG,                   )
                                 )
8                Defendant.      )

9


10      **TRANSCRIPT OF JURY TRIAL TESTIMONY OF ANDRE LLOYD**
          **BEFORE THE HONORABLE RICHARD J. ARCARA**
11           **SENIOR UNITED STATES DISTRICT JUDGE**

12


13  <u>APPEARANCES:</u>

14  For the Plaintiff:    JAMES P. KENNEDY, JR.
                          UNITED STATES ATTORNEY
15                        BY:  JOHN D. FABIAN, ESQ.
                               AARON J. MANGO, ESQ.
16                        ASSISTANT UNITED STATES ATTORNEYS
                          138 Delaware Avenue
17                        Buffalo, NY 14202

18  For the Defendant:    CONNORS, LLP
                          BY:  TERRANCE M. CONNORS, ESQ.
19                             NICHOLAS A. ROMANO, ESQ,
                          1000 Liberty Building
20                        Buffalo, NY 14202

21                        LIPSITZ GREEN SCIME CAMBRIA LLP
                          BY:  HERBERT L. GREENMAN, ESQ.
22                        42 Delaware Avenue, Suite 300
                          Buffalo, NY 14202
23
    Court Reporter:       MEGAN E. PELKA, RPR
24                        Robert H. Jackson Courthouse
                          2 Niagara Square
25                        Buffalo, NY 14202

1

<u>**I N D E X**</u>

1

2    WITNESSES                                                      PAGE

3    GOVERNMENT

4    ANDRE LLOYD
          Cross-Examination by Mr. Romano                           2
5         Redirect Examination by Mr. Mango                        21

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | | |
|---|---|---|
| 08:46AM | 1 | (The jury entered the room at 9:00 a.m.) |
| 09:01AM | 2 | THE CLERK:  Criminal action 2015-157A, United States |
| 09:01AM | 3 | v. Corey Krug.  Jury trial.  Counsel, please state your name |
| 09:01AM | 4 | and the party you represent for the record. |
| 09:01AM | 5 | MR. FABIAN:  John Fabian on behalf of the |
| 09:01AM | 6 | United States along with Aaron Mango and paralegal Trish |
| 09:01AM | 7 | Prawel. |
| 09:01AM | 8 | MR. CONNORS:  Good morning, Your Honor.  Terry |
| 09:01AM | 9 | Connors with Nicholas Romano and Herb Greenman on behalf of |
| 09:01AM | 10 | Corey Krug and our paralegal Emma Powell. |
| 09:01AM | 11 | THE COURT:  Good morning.  Good morning, everyone. |
| 09:01AM | 12 | (An off-the-record discussion was held.) |
| 09:02AM | 13 | THE COURT:  Once again, there was an article in the |
| 09:02AM | 14 | paper today.  Anyone read the article?  Okay.  Please don't |
| 09:02AM | 15 | read it.  And again, we don't want to get any information |
| 09:03AM | 16 | about this case other than what occurs in the courtroom.  All |
| 09:03AM | 17 | right.  We're all set.  Ready to go?  Okay, Mr. Romano. |
| 09:03AM | 18 | MR. ROMANO:  Thank you, Your Honor.  May I approach |
| 09:03AM | 19 | the witness? |
| 09:03AM | 20 | THE COURT:  Yes, you may. |
| 09:03AM | 21 | |
| 09:03AM | 22 | CROSS-EXAMINATION |
| 09:03AM | 23 | |
| 09:03AM | 24 | BY MR. ROMANO: |
| 09:03AM | 25 | Q.  Lieutenant Lloyd, I'm showing you Defense Exhibit 120.  I |

| 09:03AM | 1 | think we ended the day yesterday talking about that |

09:03AM   1   think we ended the day yesterday talking about that

09:03AM   2   photograph.  I just have a couple follow-up questions for

09:03AM   3   you.  Is that okay?

09:03AM   4   A.  Okay.

09:03AM   5          MR. ROMANO:  Ms. Prawel, would you put up Defense

09:03AM   6   Exhibit 120?

09:03AM   7   BY MR. ROMANO:

09:03AM   8   Q.  Lieutenant, just to orient ourselves, this path, this

09:03AM   9   brick path right here, that is Asbury Alley, isn't that

09:03AM   10  right?

09:03AM   11  A.  Correct.

09:03AM   12  Q.  Okay.  And this parking lot right here, that is the

09:03AM   13  parking lot on the corner of West Chippewa Street and Pearl

09:03AM   14  Street in downtown Buffalo, correct?

09:03AM   15  A.  Correct.

09:03AM   16  Q.  And this street right here is West Chippewa Street, true?

09:03AM   17  A.  Correct.

09:03AM   18  Q.  And this is Pearl Street, isn't that right?

09:04AM   19  A.  Yes.

09:04AM   20  Q.  And this photograph is taken from -- I know there's

09:04AM   21  another photograph we looked at yesterday -- but basically,

09:04AM   22  having walked down Asbury Alley and turning around and taking

09:04AM   23  the photograph from the parking lot with the gap behind the

09:04AM   24  buildings, the gap in between, is that right?

09:04AM   25  A.  Yes, that's correct.

4

| | | |
|---|---|---|
| 09:04AM | 1 | Q.  Now, there were some questions yesterday about whether |
| 09:04AM | 2 | anything had changed since 2014, isn't that right? |
| 09:04AM | 3 | A.  Correct. |
| 09:04AM | 4 | Q.  Okay.  Now, you worked in B District at that time? |
| 09:04AM | 5 | A.  Yes. |
| 09:04AM | 6 | Q.  This was your beat as a police officer, true? |
| 09:04AM | 7 | A.  True. |
| 09:04AM | 8 | Q.  So, in November of 2014, Asbury Alley was in the same |
| 09:04AM | 9 | condition, wasn't it? |
| 09:04AM | 10 | MR. MANGO:  Objection, Judge. |
| 09:04AM | 11 | THE COURT:  If he knows.  You're leading this |
| 09:04AM | 12 | witness.  We talked about this yesterday.  You can ask him |
| 09:04AM | 13 | questions. |
| 09:04AM | 14 | MR. ROMANO:  Okay. |
| 09:04AM | 15 | THE COURT:  All right.  Go ahead. |
| 09:04AM | 16 | THE WITNESS:  I can't answer specifically if it was |
| 09:04AM | 17 | the same condition because it's been some time.  It's been |
| 09:04AM | 18 | five years now, so I can't. |
| 09:04AM | 19 | BY MR. ROMANO: |
| 09:04AM | 20 | Q.  There was an Asbury Alley in November 2014, wasn't there? |
| 09:04AM | 21 | A.  Correct. |
| 09:05AM | 22 | Q.  How about the parking lot was that there in November |
| 09:05AM | 23 | 2014? |
| 09:05AM | 24 | A.  Yes. |
| 09:05AM | 25 | Q.  West Chippewa Street, was that there? |

09:05AM  1   A.  Yes.

09:05AM  2   Q.  Pearl Street?

09:05AM  3   A.  Yes.

09:05AM  4   Q.  And they intersected in 2014, is that right?

09:05AM  5   A.  Correct.

09:05AM  6   Q.  Any of these buildings you see in this photograph did not

09:05AM  7   exist in November of 2014?

09:05AM  8   A.  The buildings themselves existed in 2014, yes.

09:05AM  9   Q.  So, is there anything in this photograph that doesn't

09:05AM  10  fairly and accurately represent this corner and Asbury Alley

09:05AM  11  from November 2014?

09:05AM  12          MR. MANGO:  Objection, Judge.  He answered that

09:05AM  13  question already.  He can't say that.

09:05AM  14          THE COURT:  Well, how about this.  Do you know, sir?

09:05AM  15  Can you answer that question?

09:05AM  16          THE WITNESS:  I can answer that the buildings

09:05AM  17  themselves were there, but as I said previously, the

09:05AM  18  businesses have changed, so I can't.

09:05AM  19  BY MR. ROMANO:

09:05AM  20  Q.  The names of the businesses?

09:05AM  21  A.  The names of the businesses.

09:05AM  22  Q.  But you agree that parking lot, the buildings themselves,

09:05AM  23  Asbury Alley existed in November 2014, correct?

09:05AM  24  A.  Correct, correct.

09:05AM  25  Q.  Now, Lieutenant --

LLOYD  --  MR. ROMANO  --  7/19/19

6

09:06AM    1          MR. ROMANO:  You can take that down, Ms. Prawel.

09:06AM    2          THE COURT:  By the way, put the photograph back up,

09:06AM    3    please.  Now, there's a number of cars that are in that

09:06AM    4    photograph.  You see the cars in the picture?

09:06AM    5          THE WITNESS:  Yes, Your Honor.

09:06AM    6          THE COURT:  Now, you were there that night at the

09:06AM    7    other end of Chippewa Street near Delaware, I believe?

09:06AM    8          THE WITNESS:  Correct, Your Honor.

09:06AM    9          THE COURT:  Do you have any idea what the composition

09:06AM   10    was of automobiles in that particular parking lot on that

09:06AM   11    particular night?

09:06AM   12          THE WITNESS:  No, I do not, sir.

09:06AM   13          THE COURT:  All right.  Go ahead.

09:06AM   14    BY MR. ROMANO:

09:06AM   15    Q.  Lieutenant Lloyd --

09:06AM   16          MR. ROMANO:  If you could now take that down,

09:06AM   17    Ms. Prawel.

09:06AM   18    BY MR. ROMANO:

09:06AM   19    Q.  Lieutenant Lloyd, police officers, Buffalo Police

09:06AM   20    Officers in particular, they use discretion on their job

09:06AM   21    everyday, isn't that right?

09:06AM   22    A.  That's right.

09:06AM   23    Q.  They use discretion when they make an arrest?

09:06AM   24    A.  Correct.

09:06AM   25          MR. MANGO:  Objection, Judge.  Again, we're leading.

| | | |
|---|---|---|
| 09:06AM | 1 | THE COURT:  Leading I understand.  You're testifying |
| 09:06AM | 2 | as a matter of fact.  Please do not lead the witness. |
| 09:07AM | 3 | MR. ROMANO:  Your Honor, if I just may be heard. |
| 09:07AM | 4 | He's -- |
| 09:07AM | 5 | THE COURT:  And I want to be heard.  Just do what I |
| 09:07AM | 6 | just told you. |
| 09:07AM | 7 | BY MR. ROMANO: |
| 09:07AM | 8 | Q.  Lieutenant Lloyd, do police officers use discretion when |
| 09:07AM | 9 | they make an arrest? |
| 09:07AM | 10 | A.  Yes. |
| 09:07AM | 11 | Q.  Do Buffalo Police Officers decide whether to make an |
| 09:07AM | 12 | arrest? |
| 09:07AM | 13 | A.  Yes. |
| 09:07AM | 14 | Q.  And whether or not to make an arrest? |
| 09:07AM | 15 | A.  Yes. |
| 09:07AM | 16 | Q.  And a Buffalo Police Officer, would you agree -- or I |
| 09:07AM | 17 | guess I can't ask that question.  Is a Buffalo Police Officer |
| 09:07AM | 18 | required to make an arrest? |
| 09:07AM | 19 | A.  No. |
| 09:07AM | 20 | Q.  Is it always up to their discretion? |
| 09:07AM | 21 | A.  Yes. |
| 09:07AM | 22 | Q.  Is there anything improper about a Buffalo Police Officer |
| 09:07AM | 23 | declining to make an arrest? |
| 09:07AM | 24 | A.  No. |
| 09:07AM | 25 | THE COURT:  Well, I guess it depends on the |

| 09:07AM | 1 | circumstances.  I mean, you're saying that if there was a |

09:07AM 1 circumstances.  I mean, you're saying that if there was a

09:07AM 2 crime being committed in front of a police officer, they have

09:07AM 3 discretion.  No question about that.  They use their judgment.

09:08AM 4 But is it absolute judgment as far as whether, according to

09:08AM 5 their responsibilities, to make an arrest or not make an

09:08AM 6 arrest if, in fact, a certain event happened that would

09:08AM 7 warrant an arrest?

09:08AM 8 THE WITNESS:  But, Your Honor, it refers more to

09:08AM 9 their discretion.  So, they may not make an arrest, but they

09:08AM 10 would have to deal with the consequences of not making an

09:08AM 11 arrest.

09:08AM 12 THE COURT:  Thank you.

09:08AM 13 BY MR. ROMANO:

09:08AM 14 Q.  So, you agree there's nothing improper about an officer

09:08AM 15 declining to --

09:08AM 16 MR. MANGO:  Objection, Judge.

09:08AM 17 THE COURT:  You're saying, do you agree.  It's the

09:08AM 18 way you ask the question, Mr. Romano.  Just rephrase the

09:08AM 19 question.  It's very easy to do it.  Just rephrase your

09:08AM 20 questions.

09:08AM 21 BY MR. ROMANO:

09:08AM 22 Q.  Lieutenant Lloyd, when an officer decides to make an

09:08AM 23 arrest, is that officer taken out of commission?

09:09AM 24 A.  Yes.

09:09AM 25 Q.  How much time, roughly, does it take an officer to arrest

9

09:09AM   1   someone and process them?

09:09AM   2   A.  The time varies depending on the type of arrest.  Could

09:09AM   3   be anywhere from an hour to five hours.

09:09AM   4   Q.  Is it a long period of time?

09:09AM   5   A.  It depends on the type of arrest.

09:09AM   6   Q.  Do police officers use discretion when they decide to use

09:09AM   7   force?

09:09AM   8   A.  They can use discretion, but it's within the bounds of

09:09AM   9   the, as we discussed earlier, the Fourth Amendment.

09:09AM   10  Q.  Do Buffalo Police Officers use discretion whether to use

09:09AM   11  force or not?

09:09AM   12  A.  Yes.

09:09AM   13  Q.  And when a police officer decides to use force, do they

09:09AM   14  have the ability to decide what level to use?

09:09AM   15          MR. MANGO:  Objection, Judge.  I think that's asked

09:09AM   16  and answered in the previous question.

09:09AM   17          THE COURT:  Overruled.  Go ahead.  You may answer,

09:09AM   18  sir.

09:09AM   19          THE WITNESS:  They do, but, again, within the bounds

09:09AM   20  of the Fourth Amendment and Article 35, Criminal Procedure

09:10AM   21  Law.

09:10AM   22  BY MR. ROMANO:

09:10AM   23  Q.  I know there's some questions on direct examination about

09:10AM   24  the standard in the Manual of Procedures.  Do you remember

09:10AM   25  that question?

09:10AM 1    A.  Correct.

09:10AM 2    Q.  Would you agree that the actual standard is that a

09:10AM 3    Buffalo Police Officer can use the level of force reasonably

09:10AM 4    necessary to achieve their law enforcement objectives?

09:10AM 5    A.  Correct.

09:10AM 6    Q.  Lieutenant Lloyd, do our laws in New York State and in

09:10AM 7    the United States authorize police officers to use force?

09:10AM 8    A.  Yes.

09:10AM 9         MR. MANGO:  Objection, Judge.  We're not talking

09:10AM 10   about New York State Law here.

09:10AM 11        THE COURT:  Sustained.

09:10AM 12   BY MR. ROMANO:

09:10AM 13   Q.  Do the laws of this country authorize Buffalo Police

09:10AM 14   Officers to use force?

09:10AM 15   A.  Yes.

09:10AM 16   Q.  Lieutenant Lloyd, is using force part of a Buffalo Police

09:10AM 17   Officer's job?

09:10AM 18   A.  Yes.

09:10AM 19   Q.  Are all uses of force reportable?

09:10AM 20        MR. MANGO:  Objection, Judge.

09:10AM 21        THE COURT:  Well, you can answer the question, sir,

09:11AM 22   if you know the answer.

09:11AM 23        THE WITNESS:  Not all uses of force are reportable,

09:11AM 24   no.

09:11AM 25

09:11AM   1   BY MR. ROMANO:

09:11AM   2   Q.  Using a firearm, is that a reportable use of force?

09:11AM   3   A.  Yes.

09:11AM   4   Q.  How about a Buffalo Police Officer using hand techniques,

09:11AM   5   is that a reportable use of force?

09:11AM   6   A.  Yes.

09:11AM   7   Q.  Using hands techniques?

09:11AM   8   A.  Yes.

09:11AM   9   Q.  Is that a required reportable use of force?

09:11AM  10       MR. MANGO:  Objection, Judge.  He answered the

09:11AM  11   question.

09:11AM  12       THE COURT:  Overruled.  Go ahead, sir you may answer.

09:11AM  13       THE WITNESS:  Yes.

09:11AM  14   BY MR. ROMANO:

09:11AM  15   Q.  What's an example of a use of force that's unreportable?

09:11AM  16   A.  Maybe with your -- you have a crowd and you may be using

09:11AM  17   your -- maybe your baton to keep people back.  Sort of like

09:11AM  18   in a riot situation or where you have a large crowd and

09:11AM  19   you're just trying to keep people from a certain area.  That

09:11AM  20   would be an incidence where you don't really have an

09:12AM  21   identical -- identifiable target or you're just trying to --

09:12AM  22   or maybe breaking up a fight or something like that.

09:12AM  23   Q.  When the officer uses his baton, he makes contact with

09:12AM  24   these people?

09:12AM  25   A.  He could, yes.

LLOYD  --  MR. ROMANO  --  7/19/19

12

09:12AM   1   Q.  And after doing that, that's not a reportable use of

09:12AM   2   force?

09:12AM   3   A.  It's not necessarily if there's no physical injury.  If

09:12AM   4   this happens and there's no striking motion, it's just being

09:12AM   5   used sort of as an extension of your hands to keep people at

09:12AM   6   bay.

09:12AM   7   Q.  How about using your hands in the same way; that's not a

09:12AM   8   reportable use of force, is it?

09:12AM   9   A.  If you're using your hands?

09:12AM   10  Q.  In the same way.

09:12AM   11  A.  No.

09:12AM   12  Q.  Now, Lieutenant Lloyd, when there's no arrest and as you

09:12AM   13  testified earlier, that's within the discretion of the police

09:12AM   14  officer, it makes filling out a use of force form much more

09:12AM   15  difficult, correct?

09:12AM   16  A.  Correct, because you don't have the subject's information

09:12AM   17  to put on the use of force report.

09:13AM   18  Q.  You also do not have a CD number?

09:13AM   19  A.  Correct.

09:13AM   20  Q.  What is a CD number?

09:13AM   21  A.  It's a number that identifies an incident -- police

09:13AM   22  incident.

09:13AM   23  Q.  In addition to not having a CD -- would a CD number be

09:13AM   24  similar to like, an index number for the police department?

09:13AM   25  A.  Correct.

09:13AM  1    Q.  So, in addition to not having a CD number, I think you

09:13AM  2    testified that you would not have the subject's information?

09:13AM  3    A.  Correct.

09:13AM  4    Q.  And what would that include?

09:13AM  5    A.  Names, date of births, addresses, demographics.

09:13AM  6    Q.  Contact information?

09:13AM  7    A.  Contact information, correct.

09:13AM  8    Q.  How about height or weight?

09:13AM  9    A.  Correct.

09:13AM  10   Q.  Gender?

09:13AM  11   A.  Correct.

09:13AM  12   Q.  And the condition of the subject, would you have that

09:13AM  13   information if you didn't arrest him?

09:13AM  14   A.  You may have the condition of the subject actually like,

09:13AM  15   just by -- because you can visually see what the subject's

09:13AM  16   condition is, which means with the rest of the things we

09:13AM  17   named.

09:13AM  18   Q.  How about when it comes to actual tactics used?  Would

09:14AM  19   you be able to know for certain whether the use of force

09:14AM  20   tactic used was effective if you didn't arrest the person?

09:14AM  21   A.  It would be difficult.

09:14AM  22   Q.  Now, Lieutenant Lloyd, would it be fair to say that if an

09:14AM  23   arrest was not made and less information was included on the

09:14AM  24   use of force form, it would be less effective?

09:14AM  25   A.  Less effective for us, I guess.  Actually retaining the

09:14AM  1  person's information who the force was actually used upon,

09:14AM  2  yes.

09:14AM  3  Q.  And use of force forms are used for a variety of reasons,

09:14AM  4  aren't they?

09:14AM  5  A.  Yes.

09:14AM  6  Q.  Aren't they also used for training?

09:14AM  7  A.  Yes.

09:14AM  8  Q.  A copy of the use of force form is sent to the police

09:14AM  9  academy?

09:14AM  10  A.  Correct.

09:14AM  11  Q.  And use of force forms are used for statistical purposes?

09:14AM  12  A.  Correct.

09:14AM  13  Q.  They track what level of force is used?

09:14AM  14  A.  Yes.

09:14AM  15  Q.  And it's also entered into a database maintained by the

09:15AM  16  Buffalo Police Department?

09:15AM  17  A.  Correct.

09:15AM  18  Q.  So, it would be fair to say that if the form is less

09:15AM  19  complete, it's less effective?

09:15AM  20  A.  Correct.

09:15AM  21        MR. MANGO:  Objection, Judge.

09:15AM  22        THE COURT:  Overruled.

09:15AM  23  BY MR. ROMANO:

09:15AM  24  Q.  And with less information, there's less information to

09:15AM  25  review?

LLOYD -- MR. ROMANO -- 7/19/19
15

| | | |
|---|---|---|
| 09:15AM | 1 | A.  Correct. |
| 09:15AM | 2 | Q.  And less information for the database? |
| 09:15AM | 3 | A.  Correct. |
| 09:15AM | 4 | Q.  In addition to maintaining the use of force form, there's |
| 09:15AM | 5 | also an internal tracking system with respect to these forms? |
| 09:15AM | 6 | A.  Yes, there is. |
| 09:15AM | 7 | Q.  Now, this tracking system is an automatic monitoring |
| 09:15AM | 8 | system? |
| 09:15AM | 9 | A.  Correct. |
| 09:15AM | 10 | Q.  And my understanding is that it's maintained over the |
| 09:15AM | 11 | course of a year? |
| 09:15AM | 12 | A.  Correct. |
| 09:15AM | 13 | Q.  And if, over the course of one year, an officer has five |
| 09:15AM | 14 | or more use of force forms, there's an automatic alert? |
| 09:15AM | 15 | A.  Correct. |
| 09:15AM | 16 | Q.  And that alert is just an internal mechanism that sends |
| 09:15AM | 17 | the message to the officer's commander? |
| 09:15AM | 18 | A.  Correct. |
| 09:15AM | 19 | Q.  The officer is then under the Manual of Procedures to |
| 09:16AM | 20 | review the use of force form and address it as need be? |
| 09:16AM | 21 | A.  Correct, sir. |
| 09:16AM | 22 | Q.  Or elect not to address it based upon what the form |
| 09:16AM | 23 | requires? |
| 09:16AM | 24 | A.  Correct. |
| 09:16AM | 25 | Q.  Now, Lieutenant Lloyd, the simple fact that an automatic |

| | | |
|---|---|---|
| 09:16AM | 1 | alert is raised does not mean that a Buffalo Police Officer |
| 09:16AM | 2 | acted improperly? |
| 09:16AM | 3 | A.  Correct. |
| 09:16AM | 4 | Q.  Because use of force is part of the job and this alert is |
| 09:16AM | 5 | automatic? |
| 09:16AM | 6 | MR. MANGO:  Objection, Judge. |
| 09:16AM | 7 | THE COURT:  Sustained.  You're leading the witness. |
| 09:16AM | 8 | BY MR. ROMANO: |
| 09:16AM | 9 | Q.  Is there anything wrong with an automatic alert being |
| 09:16AM | 10 | raised after a use of force form is completed? |
| 09:16AM | 11 | A.  Not necessarily. |
| 09:16AM | 12 | Q.  Lieutenant Lloyd, you're currently in the Internal |
| 09:16AM | 13 | Affairs Division? |
| 09:16AM | 14 | A.  Yes. |
| 09:16AM | 15 | Q.  And -- but you didn't join the Internal Affairs Division |
| 09:16AM | 16 | until 2016? |
| 09:16AM | 17 | A.  Correct. |
| 09:16AM | 18 | Q.  So, that was after the incident on Chippewa on |
| 09:16AM | 19 | November 26th, 2014? |
| 09:16AM | 20 | A.  Correct. |
| 09:16AM | 21 | Q.  Now, with respect to IAD files, can they be opened in a |
| 09:17AM | 22 | variety of ways? |
| 09:17AM | 23 | A.  Yes. |
| 09:17AM | 24 | Q.  Can a citizen file a complaint against a Buffalo Police |
| 09:17AM | 25 | Officer? |

LLOYD  --  MR. ROMANO  --  7/19/19

17

09:17AM    1    A.  Yes.

09:17AM    2    Q.  Can someone that a police officer arrested follow up and

09:17AM    3    file a complaint?

09:17AM    4    A.  Yes.

09:17AM    5    Q.  Have people who have been arrested or citizens ever come

09:17AM    6    to the police department and filed a complaint against an

09:17AM    7    officer they didn't know the name of?

09:17AM    8    A.  Yes.

09:17AM    9    Q.  And does the police department help that individual find

09:17AM   10    out who the officer was they had the interaction with?

09:17AM   11    A.  It's not helping the individual, it's actually doing our

09:17AM   12    own independent investigation.  So, it's not.

09:17AM   13    Q.  But just so I understand, Lieutenant, if a citizen came

09:17AM   14    into the police department and filed a complaint and say the

09:17AM   15    citizen didn't know the person's name, would the police

09:17AM   16    department help locate and then find out who that officer

09:17AM   17    was?

09:17AM   18            MR. MANGO:  Objection, Judge.  He answered that

09:18AM   19    question.  We're on a different topic than direct and it's

09:18AM   20    leading.

09:18AM   21            THE COURT:  All right.  I'll allow it.  Go ahead.

09:18AM   22            THE WITNESS:  It's part of the investigation.  So,

09:18AM   23    like I just stated previously, gathering reports, gathering

09:18AM   24    statement from witnesses, be it oral or written statements,

09:18AM   25    that's all part of our investigation.  So, it's not actually

LLOYD  --  MR. ROMANO  --  7/19/19

18

09:18AM   1   helping out one person, but it could actually be helpful to

09:18AM   2   the officer as well.  So, I would say it's helping either the

09:18AM   3   officer or the complainant.

09:18AM   4   Q.  No.  Well, let me ask you this.  If a citizen came to the

09:18AM   5   Buffalo Police Department to file a complaint and they didn't

09:18AM   6   know the officer's name, would the police department say, oh,

09:18AM   7   well.  I'm sorry.  You don't know the person's name and you

09:18AM   8   can't file a complaint?

09:18AM   9        MR. MANGO:  Objection, Judge.  It's speculative, it's

09:18AM  10   irrelevant.  I don't see the relevance in this line of

09:18AM  11   questioning.

09:18AM  12        THE COURT:  Sustained.

09:18AM  13   BY MR. ROMANO:

09:18AM  14   Q.  Another way an IAD file can be opened is with a civil

09:19AM  15   lawsuit?

09:19AM  16   A.  Correct.

09:19AM  17   Q.  Is that an automatic opening of an IAD file?

09:19AM  18   A.  Yes.

09:19AM  19   Q.  So, if someone files a lawsuit, IAD automatically opens a

09:19AM  20   file?

09:19AM  21   A.  Yes.

09:19AM  22   Q.  Takes action with the officer?

09:19AM  23   A.  Yes.

09:19AM  24   Q.  Lieutenant Lloyd, do you know that Devin Ford sued

09:19AM  25   Officer Krug, the Buffalo Police Department, the City of

09:19AM    1   Buffalo and 10 other Buffalo Police Officers?

09:19AM    2   A.  Yes.

09:19AM    3   Q.  Do you know if that lawsuit is still pending?

09:19AM    4   A.  I'm not aware.

09:19AM    5   Q.  But you do know that the IAD file in connection with

09:19AM    6   Devin Ford's lawsuit is still pending?

09:19AM    7   A.  Correct.

09:19AM    8   Q.  Is it fair to say, Lieutenant Lloyd, that simply opening

09:19AM    9   an IAD file does not indicate that a police officer has done

09:19AM   10   anything wrong?

09:19AM   11   A.  That's fair to say.

09:19AM   12   Q.  So, I want to walk through a process just for a second.

09:20AM   13   So, when an IAD complaint comes in from a citizen or from

09:20AM   14   whomever, who conducts the inquiry?

09:20AM   15   A.  The investigators, myself or we have other -- we have

09:20AM   16   five other lieutenants that conduct investigations.

09:20AM   17   Q.  And what kind of documents are obtained and reviewed?

09:20AM   18   A.  Numerous documents, kind of case dependent.  Say, in

09:20AM   19   general, we were given -- we're gathering -- if there was an

09:20AM   20   incident where an arrest was made, crime reports, arrest

09:20AM   21   paperwork.  We want to try to obtain any video.  If

09:20AM   22   necessary, we can gather statements from the person who was

09:20AM   23   the complainant.  We gather statements from witnesses,

09:20AM   24   witness officers, civilian witnesses, use of force reports

09:20AM   25   if they were completed, numerous other documents; just kind

| 09:20AM | 1 | of case dependent on what we can get.  We just try to get as |
|---|---|---|

09:20AM   1   of case dependent on what we can get.  We just try to get as

09:20AM   2   much information to assist us with the case as possible.

09:20AM   3   Q.  And do you interview witnesses?

09:20AM   4   A.  Correct.

09:20AM   5   Q.  Do you interview civilians?

09:21AM   6   A.  Yes.

09:21AM   7   Q.  And how about police officers?

09:21AM   8   A.  Yes.

09:21AM   9   Q.  On average, can you give us an estimate of how long the

09:21AM   10   inquiry takes?

09:21AM   11            MR. MANGO:  Objection, Judge.

09:21AM   12            THE COURT:  Sustained.

09:21AM   13   BY MR. ROMANO:

09:21AM   14   Q.  At the end of the inquiry, does IAD make a determination?

09:21AM   15            MR. MANGO:  Objection, Judge.  There's no relevance

09:21AM   16   here.

09:21AM   17            THE COURT:  Sustained.

09:21AM   18   BY MR. ROMANO:

09:21AM   19   Q.  Lieutenant Lloyd, does IAD make a conclusion at the end

09:21AM   20   of its inquiry?

09:21AM   21            MR. MANGO:  Objection.  That's same question, Judge.

09:21AM   22            THE COURT:  Sustained.

09:21AM   23            MR. MANGO:  Different words.

09:21AM   24            MR. ROMANO:  May I just have a moment, Your Honor?

09:21AM   25            THE COURT:  Yes, you may.

| | | |
|---|---|---|
| 09:22AM | 1 | BY MR. ROMANO: |
| 09:22AM | 2 | Q.  Now on direct, Lieutenant, I think you gave some |
| 09:22AM | 3 | testimony about your review of the IAD file in this case? |
| 09:22AM | 4 | A.  Correct. |
| 09:22AM | 5 | Q.  Do you recall if there was any use of force form from any |
| 09:22AM | 6 | officer in connection with using pepper spray? |
| 09:22AM | 7 | A.  I don't know. |
| 09:22AM | 8 | MR. ROMANO:  No further questions, Your Honor. |
| 09:22AM | 9 | MR. MANGO:  May I proceed, Judge? |
| 09:23AM | 10 | THE COURT:  Yes. |
| 09:23AM | 11 | |
| 09:23AM | 12 | REDIRECT EXAMINATION |
| 09:23AM | 13 | |
| 09:23AM | 14 | BY MR. MANGO: |
| 09:23AM | 15 | Q.  Good morning. |
| 09:23AM | 16 | A.  Good morning. |
| 09:23AM | 17 | MR. MANGO:  Ms. Prawel, if we can bring up, please, |
| 09:23AM | 18 | Defendant's Exhibit 117? |
| 09:23AM | 19 | BY MR. MANGO: |
| 09:23AM | 20 | Q.  Do you see that on your screen, Lieutenant? |
| 09:23AM | 21 | A.  Yes. |
| 09:23AM | 22 | Q.  Okay. |
| 09:23AM | 23 | MR. MANGO:  Defense 118 -- well, actually, with this |
| 09:23AM | 24 | one first up. |
| 09:23AM | 25 | |

09:23AM    1    BY MR. MANGO:

09:23AM    2    Q.  Do you see this glass building way in the background and

09:23AM    3    do you know that to be Delaware North Company now?

09:23AM    4    A.  Yes.

09:23AM    5    Q.  Do you know if that was there in 2014?

09:23AM    6    A.  That was not there in 2014.

09:23AM    7            MR. MANGO:  Defense Exhibit 118, please?  Okay.

09:23AM    8    BY MR. MANGO:

09:23AM    9    Q.  Do you see that on your screen?

09:23AM   10    A.  Yes.

09:23AM   11    Q.  Okay.

09:23AM   12            MR. MANGO:  Defense Exhibit 119.

09:23AM   13    BY MR. MANGO:

09:23AM   14    Q.  Do you see that?

09:23AM   15    A.  Yes.

09:23AM   16    Q.  Okay.

09:23AM   17            MR. MANGO:  And Defense Exhibit 120.

09:23AM   18    BY MR. MANGO:

09:24AM   19    Q.  All those photographs you see that on your screen, too?

09:24AM   20    A.  Correct.

09:24AM   21    Q.  All those photographs, were those taken during the

09:24AM   22    daytime or the nighttime?

09:24AM   23    A.  They appear to be during the day.

09:24AM   24    Q.  Do you know if the incident between the defendant and

09:24AM   25    Devin Ford occurred in the daytime or the nighttime?

09:24AM    1              MR. ROMANO:  Objection, Your Honor.  I would just

09:24AM    2    object to leading.

09:24AM    3              THE COURT:  It's not leading.  He asked him if it was

09:24AM    4    daytime or nighttime.  The answer is yes and the answer is no.

09:24AM    5              THE WITNESS:  The incident happened at nighttime.

09:24AM    6              MR. MANGO:  Thank you.

09:24AM    7    BY MR. MANGO:

09:24AM    8    Q.  For the detail that you worked on Thanksgiving Eve,

09:24AM    9    Buffalo Police Officers get overtime pay for that, is that

09:24AM   10    right?

09:24AM   11              MR. ROMANO:  Objection.  Relevance.

09:24AM   12              THE COURT:  Overruled.

09:24AM   13              THE WITNESS:  Yes, they do.

09:24AM   14    BY MR. MANGO:

09:24AM   15    Q.  Now, you mentioned when some uses of force that are

09:25AM   16    not -- do not trigger a use of force form that needs to be

09:25AM   17    filed.  And I think you used sort of -- like, crowd control

09:25AM   18    was your example on cross-examination?

09:25AM   19    A.  Yes.

09:25AM   20    Q.  And I think you mentioned -- or you used the term no

09:25AM   21    identifiable target, is that right?

09:25AM   22    A.  Yes.

09:25AM   23    Q.  You were also asked some questions about an arrest and if

09:25AM   24    an arrest is not made, that it makes the completion of the

09:25AM   25    use of force form more difficult to complete, is that right?

| | | |
|---|---|---|
| 09:25AM | 1 | A.  Correct. |
| 09:25AM | 2 | Q.  That doesn't mean you still don't do it, is that right? |
| 09:25AM | 3 | MR. ROMANO:  Objection. |
| 09:25AM | 4 | THE COURT:  Rephrase your question. |
| 09:25AM | 5 | BY MR. MANGO: |
| 09:25AM | 6 | Q.  If there still is a reportable use of force against |
| 09:25AM | 7 | someone who is not arrested, the fact that the person is not |
| 09:25AM | 8 | arrested, does that exempt the officer from doing a use of |
| 09:25AM | 9 | force form? |
| 09:26AM | 10 | MR. ROMANO:  Objection. |
| 09:26AM | 11 | THE COURT:  Overruled. |
| 09:26AM | 12 | THE WITNESS:  No, it does not. |
| 09:26AM | 13 | BY MR. MANGO: |
| 09:26AM | 14 | Q.  And would it -- would no use of force form make it more |
| 09:26AM | 15 | difficult for that officer's chain of command to be aware of |
| 09:26AM | 16 | the use of force that was used? |
| 09:26AM | 17 | MR. ROMANO:  Objection.  Speculation. |
| 09:26AM | 18 | THE COURT:  Sustained. |
| 09:26AM | 19 | MR. MANGO:  Nothing further, Judge.  Thank you. |
| 09:26AM | 20 | THE COURT:  Thank you.  Thank you, sir. |
| 09:26AM | 21 | THE WITNESS:  Thank you, sir. |
| | 22 | (The witness was excused at 9:26 a.m.) |
| | 23 | |
| | 24 | |
| | 25 | |

1              *     *     *     *     *     *     *

2

3              I certify that the foregoing is a

4       correct transcription of the proceedings

5       recorded by me in this matter.

6

7

8

9                              s/ Megan E. Pelka, RPR

10                             Court Reporter,

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25