11:44AM

1          **UNITED STATES DISTRICT COURT**
           **WESTERN DISTRICT OF NEW YORK**
2

3
   UNITED STATES OF AMERICA,        )
4                                    ) Case No. 1:15-CR-00157
                                     )           (RJA)(HKS)
5                  Plaintiff,        )
                                     )
6   vs.                             ) July 22nd, 2019
                                     )
7   COREY KRUG,                     )
                                     )
8                  Defendant.       )

9

10        **TRANSCRIPT OF JURY TRIAL DEFENSE SUMMATION**
          **BEFORE THE HONORABLE RICHARD J. ARCARA**
11            **SENIOR UNITED STATES DISTRICT JUDGE**

12

13  <u>APPEARANCES:</u>

14  For the Plaintiff:    JAMES P. KENNEDY, JR.
                          UNITED STATES ATTORNEY
15                        BY:  JOHN D. FABIAN, ESQ.
                               AARON J. MANGO, ESQ.
16                        ASSISTANT UNITED STATES ATTORNEYS
                          138 Delaware Avenue
17                        Buffalo, NY 14202

18  For the Defendant:    CONNORS, LLP
                          BY:  TERRANCE M. CONNORS, ESQ.
19                             NICHOLAS A. ROMANO, ESQ,
                          1000 Liberty Building
20                        Buffalo, NY 14202

21                        LIPSITZ GREEN SCIME CAMBRIA LLP
                          BY:  HERBERT L. GREENMAN, ESQ.
22                        42 Delaware Avenue, Suite 300
                          Buffalo, NY 14202
23
   Court Reporter:        MEGAN E. PELKA, RPR
24                        Robert H. Jackson Courthouse
                          2 Niagara Square
25                        Buffalo, NY 14202

| | | |
|---|---|---|
| 11:44AM | 1 | THE COURT:  Mr. Connors. |
| 11:44AM | 2 | MR. CONNORS:  May it please the Court, counsel, |
| 11:45AM | 3 | Corey.  I hadn't planned on starting this way, but I'm going |
| 11:45AM | 4 | to.  Hadn't planned on coming right out of the box and talking |
| 11:45AM | 5 | about this, but when he said to you that Devin Ford never had |
| 11:45AM | 6 | a chance, I'm going to tell you that it was absolutely false. |
| 11:45AM | 7 | That is totally disproven by the video and by the testimony of |
| 11:45AM | 8 | Bryant Munoz, the guy that he relies upon so much for this |
| 11:45AM | 9 | case. |
| 11:45AM | 10 | Never had a chance?  Bryant Munoz had the same chance |
| 11:45AM | 11 | that he had.  Bryant Munoz raised his hands and acted like all |
| 11:45AM | 12 | of us would act, stepped back and raised his hands and didn't |
| 11:45AM | 13 | engage. |
| 11:45AM | 14 | Devin Ford had a chance.  He forfeited his chance |
| 11:45AM | 15 | when he grabbed that baton.  When he grabbed that nightstick, |
| 11:46AM | 16 | his chance was over.  And he didn't even mention that, didn't |
| 11:46AM | 17 | even talk to you about that.  And it's all over the video. |
| 11:46AM | 18 | Ford admits from the witness stand, he admits he had both |
| 11:46AM | 19 | hands on it at some point.  You see him grabbing on it from |
| 11:46AM | 20 | the ground as well. |
| 11:46AM | 21 | Never had a chance.  He didn't even tell you that |
| 11:46AM | 22 | what Bryant Munoz said -- and I'll get into this a little bit |
| 11:46AM | 23 | later -- Bryant Munoz said, when I got there and saw Corey |
| 11:46AM | 24 | Krug come at me, I raised my hands and stepped back.  The |
| 11:46AM | 25 | reason I did this is because I wanted to signal to the officer |

11:46AM  1  that I wasn't going to join the fight; that I wasn't going to

11:46AM  2  join the fight, as opposed to Devin Ford who he was stopping

11:46AM  3  from joining the fight.  All right?  That's the difference

11:46AM  4  between them.  And the prosecution never even mentioned that

11:46AM  5  in their closing remarks.

11:46AM  6       I planned to start by telling you, you know, last

11:46AM  7  Wednesday when we got together was the first opportunity I had

11:46AM  8  to discuss with you the evidence in this case.  It was an

11:46AM  9  opportunity I relished in the opening statement.  And I told

11:47AM  10  you, at the time, that I didn't think the government, the

11:47AM  11  prosecutor, was going to give you the whole story.

11:47AM  12       Even at that early stage, I knew that they weren't

11:47AM  13  going to give you the whole story.  I knew that they couldn't

11:47AM  14  give you the whole story because if the whole story came out,

11:47AM  15  you'd know that they can't prove this case beyond a reasonable

11:47AM  16  doubt.

11:47AM  17       So, what did they say to you today in the opening?

11:47AM  18  Focus on a few seconds.  Focus on a few seconds.  That's what

11:47AM  19  they want to do.  They want to ignore everything that's

11:47AM  20  transpired, despite the fact that every witness, including

11:47AM  21  their trainer, said it's the totality of the circumstances

11:47AM  22  that goes into the experience of the police officer.

11:47AM  23       Focus on a few seconds.  That's what they want to do

11:47AM  24  to try to convict Corey Krug.  Well, if you take the time,

11:47AM  25  which I'll do this morning, to go through the full story,

11:47AM  1  you'll see that they can't prove this case by the high

11:48AM  2  standard that is required by His Honor, Judge Arcara when he

11:48AM  3  tells you and explains to you the law.

11:48AM  4      You know, when you stand in a courtroom like this,

11:48AM  5  you know, you have some appreciation for the magnitude of

11:48AM  6  what's going on here.  We talked to you a little bit about it

11:48AM  7  during the course of jury selection, but when you make a

11:48AM  8  charge of a federal felony criminal charge, the proof in this

11:48AM  9  case has to be beyond a reasonable doubt.  The scales of

11:48AM  10  justice have to tip all the way down to the floor.  And that's

11:48AM  11  for every element of the offense that's charged against him,

11:48AM  12  every element of the offense.

11:48AM  13      I'm going to talk to you a little bit about that.

11:48AM  14  I'm going to go through it with you.  We're going to talk

11:48AM  15  about it together.  We're going to discuss the evidence

11:48AM  16  itself.  We're going to walk through it because we've all been

11:48AM  17  here.  We've all seen most of the evidence that's been

11:48AM  18  presented.

11:48AM  19      Although His Honor will tell you that reasonable

11:48AM  20  doubt arises from the lack of evidence as well as from the

11:48AM  21  evidence, how could they present a case to you and not call

11:49AM  22  one single police officer?  They talked about it in the video.

11:49AM  23  How could they not call one officer who's there at the scene?

11:49AM  24  They knew they wouldn't support them.  They knew they wouldn't

11:49AM  25  support them.  And that's their burden.  That's their burden

11:49AM    1    to give you the full story.

11:49AM    2         The proof that was submitted to you, I'll say in all

11:49AM    3    honesty to you, it was rifled with inconsistencies.  It had

11:49AM    4    contradictions under oath.  And in some instances, ladies and

11:49AM    5    gentlemen, I'm sorry to say, flat-out falsehoods, flat-out

11:49AM    6    lies under oath.  That surely can't be the kind of evidence

11:49AM    7    that can condemn a citizen of this community to the stigma of

11:49AM    8    a conviction of a federal crime, a Buffalo Police officer.

11:49AM    9    That can't be acceptable.  It can't be something that we will

11:49AM   10    tolerate.

11:49AM   11         Let's go back to November 26th, 2014, four years and

11:49AM   12    eight months ago this Friday.  They want you to focus on that

11:50AM   13    20 seconds on that video.  I want you to get the whole

11:50AM   14    picture.  I want you to do that because there are witnesses

11:50AM   15    that talk about the necessity to review the totality of

11:50AM   16    circumstances.  Before you can find out what's in his mind,

11:50AM   17    you have to know what he went through.

11:50AM   18         They say it's a tough job, policing's a tough job.

11:50AM   19    They don't know anything about it.  Neither do I.  We don't

11:50AM   20    face those kind of dangers every day.  We don't know if the

11:50AM   21    people on Chippewa are going to be the best or the worst, as

11:50AM   22    Lieutenant Andre Lloyd -- he doesn't know Devin Ford.  All he

11:50AM   23    knows is what his behavior was that night and it was pretty

11:50AM   24    bad, pretty bad.

11:50AM   25         You heard that Ford and the two Dechents were getting

11:50AM  1   ready for the big evening on Thanksgiving Eve.  They were

11:50AM  2   partying in their own local area on the Abbott Road pub, it's

11:50AM  3   the Press Box; spent some time there and decided to come

11:50AM  4   downtown to Chippewa.  They'd been there before, frequented on

11:51AM  5   a number of occasions.  They parked in their spot -- special

11:51AM  6   spot over on South Johnson Place.

11:51AM  7           Importantly, for the totality of circumstances, it's

11:51AM  8   two tenths of a mile from the bars.  It's a two and a half

11:51AM  9   block walk.  As Ford even admitted, it's less than a five

11:51AM  10  minute walk.

11:51AM  11          Ford gets into a confrontation with -- at Indulge.

11:51AM  12  He claims that Colon sucker punched him.  We don't know.  They

11:51AM  13  never brought you Rolando Colon.  They never brought him in

11:51AM  14  here to hear his side of the story, to hear what was going on.

11:51AM  15  But in any event, doesn't matter, because the bouncers descend

11:51AM  16  on both of them, grabbed them both and threw them both out of

11:51AM  17  the club at Indulge.

11:51AM  18          A fair inference can be drawn from that, that Devin

11:51AM  19  Ford bore his share of that fight.  That's a fair inference

11:51AM  20  you can conclude.  And His Honor will talk to you about

11:51AM  21  inferences from the proof in this case.  They spill out onto

11:51AM  22  Chippewa.  Ford's crew's right behind him.  Munoz and Colon

11:51AM  23  are there as well.

11:51AM  24          They didn't leave at that point.  They're thrown out

11:52AM  25  of a bar.  It's after 3:00.  They could have turned around and

11:52AM  1    gone back to Lackawanna, but they didn't do that.  They

11:52AM  2    continued the fight out in the middle of Chippewa.

11:52AM  3         Now, they're out in the middle of Chippewa Street.

11:52AM  4    There are still some cars.  They haven't cordoned off the end

11:52AM  5    so that they stop traffic and they're going at it in the

11:52AM  6    middle of the street.  You have five people there, very

11:52AM  7    difficult and dangerous situation.  God knows what's going to

11:52AM  8    happen.  Who knows whether they have weapons or what the story

11:52AM  9    is.

11:52AM  10        And Officer Macy comes on the scene.  He comes on the

11:52AM  11   scene and he doesn't start what they suggested has to be done.

11:52AM  12   Let's talk, fellows.  Verbal compliance, maybe you'll comply

11:52AM  13   with it.  No.  He goes right to level three of the use of

11:52AM  14   force continuum, because he has to.  He sees what's going on

11:52AM  15   there.

11:52AM  16        He sprays and it's possibly a mistake on my

11:52AM  17   colleague's part, but he says he didn't spray him in the face.

11:52AM  18   Look at the video.  He sprays Dechent right in the face and

11:52AM  19   you see Dechent go like this (indicating) and he sprays Colon

11:52AM  20   right in the face as well.  Use of force level three.  Right

11:53AM  21   like that, off the bat and that's because the use of force

11:53AM  22   continuum is not a ladder where you take step one, two and

11:53AM  23   three.

11:53AM  24        Things happen spontaneously on the street.  You

11:53AM  25   take -- it's like an elevator.  What he didn't tell you but

| | | |
|---|---|---|
| 11:53AM | 1 | what the witnesses told you Craig, William -- Bill Macy didn't |
| 11:53AM | 2 | file any use of force form and yet, a reportable use of force, |
| 11:53AM | 3 | a reportable use of force of a level three and he never filed |
| 11:53AM | 4 | a use of force form.  So, this filing of these forms, as I'm |
| 11:53AM | 5 | going to tell you, he's not on trial for any form.  He's not |
| 11:53AM | 6 | on trial for failing to file some police forms. |
| 11:53AM | 7 | But what does Ford say?  Ford says, I had nothing to |
| 11:53AM | 8 | do with that fight in the middle.  I wasn't involved in any |
| 11:53AM | 9 | way, in any aspect, whatsoever.  I can't tell you the number |
| 11:53AM | 10 | of times he tries to minimize his involvement.  But Bryant |
| 11:53AM | 11 | Munoz, who they say is an extremely credible person, says, oh, |
| 11:53AM | 12 | no, that's not true.  Ford was right in the thick of things, |
| 11:53AM | 13 | jawing and trash talking with everybody else; engaged in the |
| 11:54AM | 14 | jawing and trash talking and the hot words that were |
| 11:54AM | 15 | exchanged.  They didn't bring it out on direct examination.  I |
| 11:54AM | 16 | got it out of Munoz on cross-examination. |
| 11:54AM | 17 | Well, you saw Corey Krug there and look on the video. |
| 11:54AM | 18 | I'm not going to go through the video with you.  You have |
| 11:54AM | 19 | plenty of time to do that on your own.  But you see Corey Krug |
| 11:54AM | 20 | there; restrained, calm, doesn't come in swinging, doesn't |
| 11:54AM | 21 | come in hot.  He's actually standing in the background. |
| 11:54AM | 22 | Officer Macy is taking care of what has to be taken care of |
| 11:54AM | 23 | and hopefully, there's going to be response, hopefully |
| 11:54AM | 24 | there'll be compliance.  Turns out, there wasn't, but |
| 11:54AM | 25 | hopefully there would be. |

| | | |
|---|---|---|
| 11:54AM | 1 | And Corey's standing there in the back, in the back; |
| 11:54AM | 2 | tells you a lot about his attitude, as long as someone doesn't |
| 11:54AM | 3 | challenge him, as long as someone doesn't grab his impact |
| 11:54AM | 4 | weapon, a fact that they left out of their entire closing |
| 11:54AM | 5 | statement.  So, what you see is Corey standing in the |
| 11:54AM | 6 | background. |
| 11:54AM | 7 | But who you see on the video is Devin Ford.  He turns |
| 11:54AM | 8 | when he's told to walk, he turns away and turns towards |
| 11:55AM | 9 | Delaware Avenue.  He's walking in a westerly direction.  He's |
| 11:55AM | 10 | two and a half blocks away from the car that can take him back |
| 11:55AM | 11 | to Lackawanna and end the evening, but he doesn't go.  He |
| 11:55AM | 12 | doesn't go there.  That's not what -- he stays right in the |
| 11:55AM | 13 | area.  He stays right in the area, right near Indulge. |
| 11:55AM | 14 | And now, what you see next is, you see Munoz and |
| 11:55AM | 15 | Colon in the video, coming down.  They're not about to let it |
| 11:55AM | 16 | go, either.  They're upset.  They come down, Munoz challenges |
| 11:55AM | 17 | him.  Dechent is kind of standing like this, you see him |
| 11:55AM | 18 | standing like this.  And witnesses have told us, even though |
| 11:55AM | 19 | Ford's not in the video, he's right there, right there in the |
| 11:55AM | 20 | vicinity. |
| 11:55AM | 21 | And who's there?  Who's there to stop that from |
| 11:55AM | 22 | happening?  All right.  No force, no violence, no use of any |
| 11:55AM | 23 | type of an impact weapon.  It's Corey.  He's right there.  You |
| 11:55AM | 24 | see him between the two of them and basically, you could see |
| 11:55AM | 25 | him saying, get out of here, get out of here. |

11:56AM   1          Ford and Colon walked away, turned around again to

11:56AM   2   look.  Corey's there.  Get out of here, right?  But here's

11:56AM   3   what Ford and Dechent do, okay?  They're not about to let it

11:56AM   4   go.  Ford was disrespected at Indulge, all right?  There was a

11:56AM   5   bit of a physical fight on Chippewa.  He's not going to let it

11:56AM   6   go.  He tells you that the police officers shuffled them in

11:56AM   7   the same direction.

11:56AM   8          Think about that, ladies and gentlemen.  How does

11:56AM   9   that make any sense, whatsoever?  They'd just been involved in

11:56AM  10   what turned out to be almost a very difficult situation in the

11:56AM  11   middle of Chippewa.  Now, they see them challenging and

11:56AM  12   arguing and trash talking.  So, a police officer said, okay,

11:56AM  13   you go right in that same direction that those two are going,

11:56AM  14   let you guys walk down there.  That's nonsense.  That's

11:56AM  15   nonsense.  That's a flat-out falsehood.  That's a flat-out

11:56AM  16   lie.

11:56AM  17          And it's contradicted by their star witness, they

11:56AM  18   claim, Bryant Munoz.  Ford and Dechent don't leave.  They

11:56AM  19   don't leave at all.  They don't go that two and a half blocks

11:56AM  20   back to their car.  They've got another plan.  Second

11:57AM  21   opportunity they had to walk away.

11:57AM  22          And there was some quibbling here.  Well, what does

11:57AM  23   walk away mean?  I don't know what it means.  Munoz says, I

11:57AM  24   knew it meant clearly to leave the Chippewa area.  Ford said,

11:57AM  25   well, no one told me to go home or no one told me to go back

11:57AM  1   to my car.  One thing is crystal clear.  No one told them that

11:57AM  2   they could go out again and stalk down Munoz and Colon and

11:57AM  3   start another fight on Chippewa and Pearl.  I don't care how

11:57AM  4   you interpret those words, you can't take that interpretation,

11:57AM  5   but that's what they did.

11:57AM  6        What happens on the video next is significant.  You

11:57AM  7   see Munoz and Colon walking towards Chippewa and Pearl, going

11:57AM  8   in an easterly direction.  And Munoz, these are his words --

11:58AM  9   they were his words, not in response to the prosecution's

11:58AM  10  question, it started out in response to the Judge's question

11:58AM  11  when he asked them, where did you see Ford and Dechent?

11:58AM  12        And Munoz said, we saw him come out of the parking

11:58AM  13  lot.  It was an a-ha moment to this case.  You know,

11:58AM  14  everything that Ford's been saying about, we didn't follow

11:58AM  15  them, we didn't do this.  All of a sudden, they come out of

11:58AM  16  the parking lot.  What are they doing in the parking lot?

11:58AM  17        You know what they're doing in the parking lot.

11:58AM  18  They're fixing to meet up again.  They're fixing to have this

11:58AM  19  fight back again with these two, all right?  And they come out

11:58AM  20  of the parking lot.  What they also didn't tell you in his

11:58AM  21  closing remarks -- this is so important -- is Munoz hears them

11:58AM  22  say, there he is.

11:58AM  23        He doesn't know if it's Ford or it's Dechent who said

11:58AM  24  it, but he said someone said, there he is.  Now, whether he's

11:58AM  25  saying that -- not to go over and shake hands and end the

| | | |
|---|---|---|
| 11:58AM | 1 | night -- they're going to start that brawl again.  And it |
| 11:58AM | 2 | happens because Ford tells us, well, Dechent wasn't that mad. |
| 11:59AM | 3 | He wasn't that angry.  It was all Colon.  Colon was acting |
| 11:59AM | 4 | crazy.  Bryant Munoz tells us a totally different story. |
| 11:59AM | 5 | Bryant Munoz says it was Dechent who was mad, Dechent who was |
| 11:59AM | 6 | angry, Dechent who started with Colon.  He came right at him. |
| 11:59AM | 7 | Punches were exchanged. |
| 11:59AM | 8 | They started to fight.  And you have a situation |
| 11:59AM | 9 | where police officers start to go into action.  You have, |
| 11:59AM | 10 | you'll see in the video, one officer starts going down in the |
| 11:59AM | 11 | middle of Chippewa.  I don't know if the witnesses identified |
| 11:59AM | 12 | him as Officer Vidal.  It's your recollection of those |
| 11:59AM | 13 | particular facts, but you see him going down there to help |
| 11:59AM | 14 | officer -- another officer that was referred to in the |
| 11:59AM | 15 | prosecution's closing.  His name is Foster.  I don't know if |
| 11:59AM | 16 | he was identified by name.  That's for you to recall, okay? |
| 11:59AM | 17 | But the important part of this on the video is you |
| 11:59AM | 18 | can see the officer going down the middle of Chippewa to help |
| 11:59AM | 19 | out.  There's a confrontation that's taking place.  There's |
| 11:59AM | 20 | another fight.  You know, this is the third fight that this |
| 12:00PM | 21 | crew has been involved in. |
| 12:00PM | 22 | And you see Corey as well.  Corey is walking at a |
| 12:00PM | 23 | rapid pace down Chippewa.  He's paralleling the other officer |
| 12:00PM | 24 | to get down to the other source of the fight because there's |
| 12:00PM | 25 | two individuals standing in that parking lot. |

12:00PM    1        Now, before I talk to you about that confrontation,

12:00PM    2   let me talk to you about what Bryant Munoz says.  He says that

12:00PM    3   he saw them come out of the parking lot.  They were jawing,

12:00PM    4   they were arguing, they were trash talking.  They said, there

12:00PM    5   he is and they start to fight.  And the only inference can be

12:00PM    6   drawn there is that they wanted to fight, Ford and Dechent.

12:00PM    7   Punches are exchanged.

12:00PM    8        And then, you have a situation where one officer is

12:00PM    9   trying to stop the other fight.  Corey runs down Chippewa to

12:00PM   10   get to where those two are and here's the point.  Corey sees

12:00PM   11   Munoz and Ford.  They're standing right there.  They're within

12:00PM   12   five to ten feet -- this was their testimony -- five to ten

12:01PM   13   feet from the other fight that was taking place.

12:01PM   14        This is punches are being exchanged between Dechent

12:01PM   15   and Colon, okay?  And Munoz and Ford are within five feet of

12:01PM   16   that.  He goes toward them with a legitimate law enforcement

12:01PM   17   objective.  He wants to make sure that they're not going to

12:01PM   18   enter that fight.

12:01PM   19        And listen to what Munoz tells us about that.  Munoz

12:01PM   20   says, it looked to me like Ford was going to step in.  Those

12:01PM   21   were his words.  It looked to me like Ford was going to fight.

12:01PM   22   He was going to join the fight.  I put my arm out to stop him

12:01PM   23   and it was right about that time, I think he said

12:01PM   24   simultaneously or exactly that time, when Corey arrives on the

12:01PM   25   scene, all right?

12:01PM  1        And then he says, when Corey come -- when Corey came

12:01PM  2   out and I saw him, I stepped back and I raised my hands, all

12:01PM  3   right?  But that is not all that he said.  He said, I stepped

12:01PM  4   back and I raised my hands because I wanted to give a signal

12:02PM  5   to the police officer that I wasn't going to be part of the

12:02PM  6   fight.

12:02PM  7        So, that's what Munoz is thinking.  He's thinking

12:02PM  8   that, obviously, Corey believes that they were being part of

12:02PM  9   the fight because he's there.  He thinks Ford's going to be

12:02PM 10   part of the fight.  It's an absolute obvious conclusion and

12:02PM 11   Corey comes towards the two of them.

12:02PM 12        I told you before he's got his nightstick in what

12:02PM 13   they call a full-hand grip, north and south.  He's not

12:02PM 14   swinging his baton.  He comes towards the two of them to stop

12:02PM 15   and push them away.  And what happens, he pushes them away

12:02PM 16   from the fight, get some control and compliance.  No problem

12:02PM 17   with Munoz; behaves perfectly.

12:02PM 18        But when he moves towards Ford, Ford grabs the baton,

12:02PM 19   grabs the baton right on the video.  Forget the video.  He

12:02PM 20   admits to it, all right?  He says, I was trying to defend

12:03PM 21   myself.  Let me talk a little bit about that's why -- but how

12:03PM 22   can a prosecution that requires proof beyond a reasonable

12:03PM 23   doubt not talk to you about Ford grabbing the baton, not talk

12:03PM 24   to you about him forfeiting his rights?  He never had a

12:03PM 25   chance.  Forfeiting his right.  How can they not say that?

12:03PM 1   How can they not mention that?  And those were his words.

12:03PM 2         I'm going to talk to you a little bit about Devin

12:03PM 3   Ford in the course of this closing remark and his credibility

12:03PM 4   and his lack of credibility, about his demeanor on the witness

12:03PM 5   stand and some other things that I want you to consider and

12:03PM 6   the Judge will ask you to consider them as well, but I want to

12:03PM 7   talk to you first about what he admitted he did and the effect

12:03PM 8   that that has on the prosecution of Corey Krug for a federal

12:03PM 9   criminal charge.

12:03PM 10        First, Devin Ford tells us that -- and says this

12:03PM 11  under oath, ladies and gentlemen -- under oath, he says that

12:03PM 12  when Corey came towards him, he was swinging his baton,

12:04PM 13  swinging his baton.  That's what he said, under oath, on

12:04PM 14  February of 2019.  I cross-examined him on that and he

12:04PM 15  admitted, okay, I did say that.  He was swinging his baton.

12:04PM 16        Then, he said Corey attacked me from behind, from

12:04PM 17  behind.  And struck him on the right lower leg.  This is

12:04PM 18  Ford's testimony under oath on a prior occasion, all right?

12:04PM 19  Then on Thursday, when he's here on the witness stand, he

12:04PM 20  changes it again and he says, well, he came up and tapped me

12:04PM 21  and then tackled me.

12:04PM 22        Think about that for a moment.  Think about those

12:04PM 23  three versions of the events.  They're all false.  The video

12:04PM 24  flatly disproves them.  They're demonstrably false.  And I

12:04PM 25  don't know if he was trying to suggest there was something cut

U.S. v. KRUG  -- DEFENSE SUMMATION  --  7/22/19

16

12:04PM  1  from the video, that there's more to the video, some

12:04PM  2  conspiracy theory.  You see it's all on the video, that

12:05PM  3  encounter at that time with him and Corey; From the time they

12:05PM  4  get locked in together, from the time he grabs the baton to

12:05PM  5  the time he's taken to the floor.  None of those versions are

12:05PM  6  worthy of your belief and they're all flatly contradicting.

12:05PM  7       So, why would he say that?  Why would he offer three

12:05PM  8  different versions?  What is his motive to testify falsely?

12:05PM  9  His Honor, Judge Arcara, will talk to you a little bit about

12:05PM  10  that, about the motives to testify falsely and things you may

12:05PM  11  or may not see.

12:05PM  12       Well, there's a very good reason as to why he's

12:05PM  13  testifying falsely.  In fact, there's a number of good reasons

12:05PM  14  and they're all associated with dollar signs.  He's filed a

12:05PM  15  civil lawsuit.  We've exposed some of the falsities in this

12:05PM  16  lawsuit and how untrue they are, but he's still looking for a

12:05PM  17  payday.  That's it.  And that's why he's willing to say these

12:05PM  18  things.  That's why he's willing to say them under oath, so

12:05PM  19  dramatically contradictory.  That's his incentive and the

12:06PM  20  reason he's doing that.

12:06PM  21       Think about this for a moment.  He has to find a

12:06PM  22  justification for grabbing the baton.  He knows that if he

12:06PM  23  does that, he's going to engage with a police officer.  He

12:06PM  24  knows that he's escalating the contact and the confrontation.

12:06PM  25  So, he's got to come up with a reason, because if it's just

12:06PM   1   when Officer Ford approached me -- excuse me, when Officer

12:06PM   2   Corey approached me with his baton held, he just grabs it

12:06PM   3   right then, his lawsuit is thrown right out of the window

12:06PM   4   then.  He can say goodbye to that.

12:06PM   5         So, he comes up with these stories.  He tackled me

12:06PM   6   from behind, swinging the baton.  Now, maybe suggesting that

12:06PM   7   if I say under oath he's swinging the baton, I'll be okay with

12:06PM   8   grabbing the baton.  I'll justify it.  There's no

12:06PM   9   justification for what he did.  There's no justification for

12:06PM  10   that.  It's nonsense.  It's part of his lawsuit, an effort to

12:07PM  11   maximize his recovery.  It's disproved and flat-out

12:07PM  12   contradicted by the video.

12:07PM  13         Now, let's talk about the reaction of Corey.  Captain

12:07PM  14   Pat Mann was the only individual that took that witness stand,

12:07PM  15   the only one that they called, as a trainer, to explain to you

12:07PM  16   the standards of training that are employed from an officer's

12:07PM  17   police academy training all the way through in-service

12:07PM  18   programs.  That was their witness.  That was their witness.

12:07PM  19   Not much of a lengthy direct examination, but on cross-

12:07PM  20   examination, he said a lot of things that are really

12:07PM  21   important, a lot of things that totally undermine their case.

12:07PM  22   And that's their witness.

12:07PM  23         First of all, he said officers are trained with

12:07PM  24   respect to impact weapon retention.  He says from a standard

12:07PM  25   training standpoint, if someone grabs an impact weapon, a

12:07PM   1   police officer -- whether it's a nightstick, a collapsable ASP

12:07PM   2   or even, God forbid, his gun -- you do everything possible you

12:08PM   3   can to make sure you don't lose control, because if you lose

12:08PM   4   control of that impact weapon, your life's in jeopardy,

12:08PM   5   personal injury's in jeopardy and other people's lives.  You

12:08PM   6   don't let that impact weapon go.  Simple as that.  That's

12:08PM   7   their witness.  That's their witness, okay?

12:08PM   8        And that when the subject is not compliant, you use

12:08PM   9   an impact weapon to bring about compliance.  It's the best one

12:08PM  10   Captain Mann said because it provides a warning; a warning to

12:08PM  11   the subject and it protects the officer.  You can stand back

12:08PM  12   and you can walk, just like he did when he was on the ground.

12:08PM  13   You see Ford on the ground.  He said he was squirming.  He's

12:08PM  14   kicking.  You can see in the photos he's kicking.  You can see

12:08PM  15   in the photo his arms are up as well.  We even, I think,

12:08PM  16   stopped on one of the video frames that showed his right leg

12:08PM  17   kicking right at Corey's damaged left knee, all right?

12:08PM  18        You got to get control.  You got to get compliance

12:09PM  19   and control.  And that's what their witness has said on the

12:09PM  20   witness stand under oath.  You see Corey giving him several

12:09PM  21   wrist swipes.  He even backed up at one point.  No, I'm not

12:09PM  22   convinced that the proof is solid at that last moment where he

12:09PM  23   claims he was hitting his bone.  Take a look at it and see

12:09PM  24   where you think, huh?

12:09PM  25        You look at it closely.  In fact, it looks more like

12:09PM   1   he's hitting the ground when he tells him to get up and

12:09PM   2   hitting that.  And frankly, we know from the witness's

12:09PM   3   testimony that if he truly was striking him with a bone --

12:09PM   4   there'd be a lot more damage than those images that he tried

12:09PM   5   to show as being serious injury, all right?

12:09PM   6        And if Corey really was trying to deprive him of a

12:09PM   7   Constitutional right, you would, as Pat Mann said, you'd just

12:09PM   8   look at other areas.  You'd hit him on the knee cap, which is

12:09PM   9   disabling.  And sadly, you can hit someone on the head and

12:09PM   10  really, really disable them.  None of that occurred here.  You

12:09PM   11  see those wrist swipes to the legs, all right?  He tells him

12:09PM   12  to get up and go.

12:09PM   13       Now, what Captain Mann tells us is that when you're

12:10PM   14  evaluating the conduct of a subject and you're trying to

12:10PM   15  utilize your discretion as a police officer, you're trying to

12:10PM   16  make decisions that are split-second decisions that maybe

12:10PM   17  someday someone's going to second guess you.  You take into

12:10PM   18  account your past experience with the subject, all right?

12:10PM   19  Now, I asked him, well, do you mean an historical past

12:10PM   20  experience?

12:10PM   21       He said, yeah, that's true, but you also take into

12:10PM   22  account the recent past experience that you have with that

12:10PM   23  subject.  And we know the recent past experience he had with

12:10PM   24  Corey -- with Devin Ford was that Ford and his crew never

12:10PM   25  followed directions, weren't compliant, didn't do what they

12:10PM  1  were told; basically, fought at Indulge and the middle of

12:10PM  2  Chippewa and wouldn't go home, never listened to direction,

12:10PM  3  wasn't compliant.  And that was within Corey's knowledge when

12:10PM  4  he approached him to try to keep him out of that fight.

12:10PM  5       Ford gets up on his own volition and you see him; no

12:10PM  6  help, no assistance, no limp, not grabbing his shin, not

12:11PM  7  complaining.  You see him, in fact, walk across the street to

12:11PM  8  the south side of Chippewa, you see him look back at the scene

12:11PM  9  where Colon and Munoz are.  He's looking back east.  He's not

12:11PM 10  hurt.  You know, it's for his lawsuit.  It's for his lawsuit.

12:11PM 11       Corey's over there again, this time making sure that

12:11PM 12  they leave.  He's doing -- Dechent's still arguing with him,

12:11PM 13  still arguing with him at 9:23 on the video, not ready to

12:11PM 14  leave.  They're still, still not compliant and he makes sure

12:11PM 15  they leave this time and they walk.

12:11PM 16       Ford walks.  He says it was only just 4:00 in the

12:11PM 17  morning.  Doesn't go to the doctor, doesn't go to the

12:11PM 18  emergency room, doesn't tell anyone.  Doesn't tell his mother

12:11PM 19  or his grandmother, his roommate.  I asked him about.  He

12:11PM 20  doesn't tell anyone about that, okay?  Never has any x-rays,

12:11PM 21  you know, any type of medical care or treatment, even though

12:11PM 22  he sued for medical expenses.  He never had medical care.

12:11PM 23       What does he do?  So, he gets home at 4:00 in the

12:12PM 24  morning.  And the next day -- I'm sorry, it's the same day,

12:12PM 25  about 4:00 in the afternoon now.  He tweets out again and what

12:12PM  1  he says is, never drinking again.  That's a good resolution

12:12PM  2  for him probably to have.  Maybe all of us have made that

12:12PM  3  resolution.  You know what it means.  It means I had too much

12:12PM  4  to drink last night and I'm not going to do it again.

12:12PM  5      And we know from his testimony, brought out on cross-

12:12PM  6  examination, that he had something to drink in Lackawanna, he

12:12PM  7  stopped at Bottoms Up, hopped over to Indulge.  And we know,

12:12PM  8  from when he admitted it, in Indulge that he had at least two

12:12PM  9  cranberry and vodkas and two Jack Daniels and Coke within an

12:12PM  10  hour and a half.  And that's November 27th, 2019 (sic).

12:12PM  11      Nothing happens until December 11th.  That's almost

12:12PM  12  three weeks.  Radio silence.  This guy who's just been the

12:12PM  13  victim of police brutality doesn't say anything, not a peep to

12:13PM  14  anyone about it, doesn't make complaints to anyone, doesn't go

12:13PM  15  anywhere to get advocacy, doesn't go to see a lawyer.  He's

12:13PM  16  sitting back at his apartment in Lackawanna, happy that he

12:13PM  17  hasn't been arrested, counting his lucky stars for his

12:13PM  18  misbehavior and his misconduct that night.

12:13PM  19      He's perfectly content not to say anything to anybody

12:13PM  20  until a small segment of a video, a clip, a snapshot comes out

12:13PM  21  on the Channel 7 Twitter feed and he looks at it.  It's a

12:13PM  22  clip.  A moment in time.  Maybe it doesn't show everything

12:13PM  23  that's transpired that night.  They don't know all about the

12:13PM  24  other things that have occurred and he's portrayed as a victim

12:13PM  25  in the news feed.  And he looks at it and he tweets again,

12:13PM  1    yoo-hoo, that's me.

12:13PM  2         That's me.  All of a sudden, there's an opportunity

12:13PM  3    here.  There's an opportunity here, all right?  He gets

12:13PM  4    contacted by the media.  I think it was two stations.  One of

12:13PM  5    them went to his place of employment which, by the way, he was

12:13PM  6    on his feet working as a cook the very next day; never missed

12:14PM  7    a shift at work, all right?  And they're pursuing him.  The

12:14PM  8    media wants to know who he is, give us some information, do

12:14PM  9    you have a lawyer?  And the wheels are turning.

12:14PM  10        The wheels are turning now.  He sees an opportunity

12:14PM  11   and -- he may not have finished high school, but he's got a

12:14PM  12   master's degree in street smarts.  A master's degree.  He

12:14PM  13   hires a lawyer.  Several things start to go into motion.

12:14PM  14        The government comes to see him.  The FBI comes to

12:14PM  15   see him on December 23rd.  They're out there.  They see the

12:14PM  16   video clip and they're out to see him as well.  There's some

12:14PM  17   photos that are taken, you know, the photos themselves that

12:14PM  18   were put into evidence.  I don't know what value they are to

12:14PM  19   you.

12:14PM  20        They -- there are no photos right after this happens,

12:14PM  21   when this occurred, although he tells us, under cross-

12:14PM  22   examination, that he took some photos with an Android photo --

12:15PM  23   with an Android phone.  Well, they're mist -- mysteriously

12:15PM  24   disappeared.  He doesn't have them anymore.

12:15PM  25        So, all we have is those photos which, frankly, they

12:15PM   1   don't even correspond to the claim where he got hit on his

12:15PM   2   lower parts of his leg.  And one of them, I think in a film

12:15PM   3   clip we had Danielle or Trish stop at 8:51, I think it was --

12:15PM   4   and my counter may be a little bit off, a little fast -- but

12:15PM   5   we showed that there was one strike where this was up against

12:15PM   6   the side of his foot.  So, almost exactly what Captain Mann

12:15PM   7   tells you -- told you he's supposed to be do -- supposed to

12:15PM   8   do.

12:15PM   9          Captain Mann also told us, listen, when they're not

12:15PM  10   compliant, even if they're on their back on the ground,

12:15PM  11   they're still dangerous.  They're still dangerous.  And you

12:15PM  12   have to take steps to keep them in compliance, to keep them

12:15PM  13   under control.  It's essential that you do it.  And he said,

12:15PM  14   you know, the best way to do it is with an impact weapon, like

12:16PM  15   a baton, because once again, it protects you.  You step back

12:16PM  16   and it gives a warning to the subject.  That's their witness.

12:16PM  17   That's their testimony.  When you're evaluating reasonableness

12:16PM  18   and acceptability, that's what their witness said.

12:16PM  19          No arrest.  Well, they made a big deal out of no

12:16PM  20   arrest in the opening statement.  They emphasized it again

12:16PM  21   today.  He probably should have arrested him.  He probably

12:16PM  22   should have arrested him.  But the simple response to that is,

12:16PM  23   look at the video.  Colon wasn't arrested.  Dechent wasn't

12:16PM  24   arrested.  Either Dechent wasn't arrested.  They were in the

12:16PM  25   fights.  Excuse me, because I just don't know the guy's name,

12:16PM   1   but the belly guy, remember, in front of Indulge, got up and

12:16PM   2   he had to adjust, he was in a fight as well.  He didn't get

12:16PM   3   arrested.  They called him the red sweater guy.  He didn't get

12:16PM   4   arrested.  Officers have discretion to make an arrest or not

12:16PM   5   make an arrest.  There's nothing sinister about that because

12:16PM   6   it happened throughout that night and they told you that that

12:17PM   7   occurred throughout that night.

12:17PM   8        Use of force form.  Well, the prosecutor says, well,

12:17PM   9   he didn't file a use of force form.  But we know Officer Macy

12:17PM  10   didn't file one, either.  We know that the officers who

12:17PM  11   grabbed Dechent to break him up from the fight and put him

12:17PM  12   into the middle of the street, they didn't file one, either.

12:17PM  13   That's a red herring, this use of force form.  It's not really

12:17PM  14   something that's of value in this particular case.

12:17PM  15        And His Honor will tell you he's not on trial for not

12:17PM  16   filing a use of force form.  He's not on trial for police

12:17PM  17   regulations and things of that nature, all right?  So, this

12:17PM  18   case, this charge fails miserably.  It just doesn't meet the

12:17PM  19   standard requirement for a federal criminal charge and you'll

12:17PM  20   hear about that soon from His Honor.

12:17PM  21        Now, before I talk to you about the actual charges

12:17PM  22   and respond to the prosecutor's comments about the elements

12:17PM  23   that he talked about, I want to talk to you about Devin Ford.

12:18PM  24   Obviously, ladies and gentlemen, Devin Ford is a central

12:18PM  25   character in this matter.  Their case cannot survive without

12:18PM     1    his credibility.

12:18PM     2         Their case is dead in the water if Ford is a liar.

12:18PM     3    If you don't believe him, if his credibility is damaged, his

12:18PM     4    case is over.  His testimony is inextricably linked to the

12:18PM     5    video, incapable of separation.  You can't bring them apart.

12:18PM     6    His spin on the video, his interpretation, his lies on the

12:18PM     7    witness stand about the video are something that just

12:18PM     8    undercuts the entire proof in this case.

12:18PM     9         And His Honor will give you a number of charges with

12:19PM    10    respect to how to evaluate his credibility.  I won't go into

12:19PM    11    those particular charges themselves but just highlight a few

12:19PM    12    things and ask you to look for them when you're considering

12:19PM    13    it.

12:19PM    14         Credibility of a witness.  Well, the most important

12:19PM    15    test is your own personal experience.  How do we do it every

12:19PM    16    day?  We're involved in discussions or business transactions

12:19PM    17    or meet people.  We're constantly evaluating people's

12:19PM    18    credibility.  And you should bring those skills to the test in

12:19PM    19    evaluating Devin Ford.  How did he impress you?  Was he

12:19PM    20    candid?  Was he frank?  Was he evasive?  Was he forthright?

12:19PM    21    How did he respond when the government asked him questions and

12:19PM    22    how did he respond when I asked him questions?  Was it the

12:19PM    23    same?

12:19PM    24         I've been doing this for a little bit, for a while.

12:19PM    25    Well, I can tell by my grey hair I hope that I can do it for a

12:19PM  1   lot longer, but I doubt you'll ever see a witness on that

12:19PM  2   witness stand that was more evasive than Devin Ford.  On

12:20PM  3   direct examination, responding to questions by the prosecutor:

12:20PM  4   Yes, sir; correct, sir; yes, sir; that was correct, sir;

12:20PM  5   correct, sir.

12:20PM  6        I asked him a couple of questions.  You know, he's

12:20PM  7   talking to them, butter wouldn't melt in his mouth.  He talks

12:20PM  8   to me, I can't get a straight answer out of him if I had a can

12:20PM  9   opener.  All he wants to do is tell his story.  I was

12:20PM  10  attacked.  I was assaulted.  A simple yes or no answer, off he

12:20PM  11  goes.  Evasive.  I know you saw it.  You saw it for what it

12:20PM  12  was and that affects his credibility.  It's right in His

12:20PM  13  Honors's charge, all these nonresponsive answers.

12:20PM  14       Was he consistent?  Did he say on one occasion one

12:20PM  15  thing and did he say the same or nearly the same thing on

12:20PM  16  another occasion?  That's easily answered because we have his

12:20PM  17  prior sworn testimony on a related matter in other

12:20PM  18  proceedings, all right?  I don't know how many times he

12:20PM  19  contradicted himself under oath, but I was beating a path back

12:21PM  20  and forth to that witness stand.  I thought I would wear out

12:21PM  21  the rug that's so many times.  Finally, I just stayed here and

12:21PM  22  asked him the questions.

12:21PM  23       Time after time he admitted, under oath, that he had

12:21PM  24  told a story different and wasn't consistent.  That witness

12:21PM  25  stand is a sacred place and not just because it's the Bible

12:21PM   1   there.  It's not just because an oath is taken on that witness

12:21PM   2   stand.  Lives are won and lost, careers are made or ruined,

12:21PM   3   reputations are broken or sustained.  It's an important part

12:21PM   4   of our jurisprudence.  He has no regard for that witness stand

12:21PM   5   and no respect for an oath.

12:21PM   6        So, the Judge will say, evaluate Devin Ford in light

12:21PM   7   of his demeanor.  Listen to what those instructions are.  But

12:21PM   8   when you're listening to the questions about his credibility,

12:22PM   9   think about this.  One of the instructions deals with making

12:22PM  10   decisions with respect to important matters in your life and

12:22PM  11   this surely is an important matter.

12:22PM  12        But if you come to court one day and you're walking

12:22PM  13   up those eight steps in front of the courthouse, at the top

12:22PM  14   step was Devin Ford and it was a day you were scheduled to be

12:22PM  15   here for testimony and Devin Ford said to you, it's okay.  Go

12:22PM  16   home.  It's closed.  No court today.  Would you turn around

12:22PM  17   and go back to your car or would you rush in as fast as you

12:22PM  18   can and see what the guards have to say, or come up here and

12:22PM  19   take an elevator as fast as you can to the ninth floor and see

12:22PM  20   really what the truth is?  You know what you'd do.  And that's

12:22PM  21   a test of Devin Ford's credibility.

12:22PM  22        Final criteria for a witness's bias.  Judge Arcara

12:22PM  23   will tell you a lengthier explanation about your permission to

12:22PM  24   consider that.  I won't touch that.  That's not my province.

12:22PM  25   But, essentially, we're talking about the type of prejudice

12:22PM  1   against a group or people that will cause you to be biased, or

12:23PM  2   lean one way or the other.

12:23PM  3        I've said to you earlier that I don't think you saw

12:23PM  4   the real Devin Ford on direct examination.  It wasn't until

12:23PM  5   cross-examination where you got a little bit of a peek into

12:23PM  6   what he's all about and to whom he is.  And I got a chance to

12:23PM  7   ask him a question about his tweets.  We'd done some research

12:23PM  8   on it, you know, once again, good for you to know the full

12:23PM  9   story about this character.

12:23PM  10       Devin Ford, November 8th, 2013, tweets out -- and I

12:23PM  11  echo Mr. Fabian's comments, please accept my apologies for the

12:23PM  12  language.  These are not my words.  Fucking cops, SMH.

12:23PM  13       I said, SMH, what does that mean?

12:23PM  14       He said, shaking my head.

12:23PM  15       I said, oh, that means so much hate.

12:23PM  16       Oh, I never heard that one, he said.

12:23PM  17       He didn't deny it.  I never heard that one.

12:23PM  18       A month later, end of 2013, soon as I walk in the

12:23PM  19  party, cops come.  Next party.

12:24PM  20       Next month, January, early 2014.  Killing shit and

12:24PM  21  telling cops I didn't do it.

12:24PM  22       And then the last one I was permitted to use, in

12:24PM  23  April 2014, just seven months before his confrontation with

12:24PM  24  Officer Corey Krug.  Crazy ass night.  Damn near fixing to

12:24PM  25  whoop these two security guards asses on some real shit.

12:24PM   1   These niggas is softest as fuck.  They ain't want it.

12:24PM   2        We talk to our children about your behavior when you

12:24PM   3   think you aren't going to get caught.  You know, when you

12:24PM   4   think no one's ever going to watch it.  That's what's a true

12:24PM   5   test of your character.  Those tweets are the true test of his

12:24PM   6   character.

12:24PM   7        Under every criteria for credibility, he fails.  And

12:24PM   8   because he fails in credibility, this case fails.  You can't

12:24PM   9   convict someone on the basis of that man's sworn testimony.

12:25PM  10   So, well, one of you might say, well, okay.  Let's forget

12:25PM  11   that.  You can't.  That's not what I'm supposed to tell you.

12:25PM  12        Look at the video.  You can't separate the two.  And

12:25PM  13   the reason you can't is it's his interpretation, his spin on

12:25PM  14   the video, his factual context of the video which is so

12:25PM  15   important where he says he's getting swung at with the baton.

12:25PM  16   He was struck from behind.  All of these falsehoods cannot

12:25PM  17   separate his interpretation from the video.  It can't be done.

12:25PM  18   And the elements supporting his version exactly don't even

12:25PM  19   come close to supporting his version of what happened beyond a

12:25PM  20   reasonable doubt, beyond a reasonable doubt.

12:25PM  21        On the other hand, the training standards that you've

12:25PM  22   been provided by Captain Mann, they do support the actions of

12:25PM  23   Corey Krug and the reasonableness of his behavior, but let's

12:25PM  24   talk a little bit about the elements.  The prosecution

12:25PM  25   mentioned some of them and His Honor will tell you all of

12:25PM  1   them.  I'm not going to go through all of them.  I urge you to

12:25PM  2   scrutinize all the elements of the events because the proof

12:26PM  3   beyond a reasonable doubt must be with each and every element.

12:26PM  4   I will only focus on two.

12:26PM  5        Was the force that Corey used on November 27th

12:26PM  6   reasonable under the circumstances and facts as they were

12:26PM  7   presented to him under the totality of the circumstances,

12:26PM  8   which includes his experience with Ford the entire evening,

12:26PM  9   all right?  You remember?  Real?  Remember?  Historical and

12:26PM  10  present experience.  That's what their witness said.  Now, the

12:26PM  11  government has to prove this beyond a reasonable doubt.  If

12:26PM  12  you have even a doubt about that for which you can give a

12:26PM  13  reason, you are required, in your roles, to find Corey not

12:26PM  14  guilty.

12:26PM  15       In fact, their own witness, Captain Patrick Mann,

12:26PM  16  here's what he said.  Level one, you don't start at level one.

12:26PM  17  In his use of force continuum, he said the subject dictates

12:26PM  18  where you start and that's clear.  He said, someone grabs an

12:26PM  19  impact weapon, you don't have to stop and talk to them and

12:26PM  20  say, okay.  Now, come on.  Would you listen to me?  Be a good

12:26PM  21  boy.  You don't do that.

12:26PM  22       You're in a life or death struggle and that's their

12:27PM  23  own witness's testimony.  And if he's on the ground, he

12:27PM  24  says -- Patrick Mann says, I've trained them that the subject

12:27PM  25  is still dangerous, even on the back.  They can kick, they can

12:27PM    1    do a number of things.  You have to be -- you have to get them

12:27PM    2    under control and you do that by using the baton weapon,

12:27PM    3    remember?  Protection of yourself and warning to the subject.

12:27PM    4         And he talks about on the lower legs is where you do

12:27PM    5    it, exactly what Corey did under the circumstances.  That's

12:27PM    6    their witness.  That's their witness.  That's the one they

12:27PM    7    called to convince you beyond a reasonable doubt.  And if you

12:27PM    8    do have a doubt about that question in your mind, about the

12:27PM    9    force itself and whether or not it was reasonable; if you do

12:27PM   10    have a doubt, based upon that testimony, this case is over.

12:27PM   11    It ends because that's an essential element.

12:27PM   12         I say it ends if you don't believe Devin Ford because

12:27PM   13    of his credibility, but it ends for certain if you have a

12:27PM   14    question about the reasonableness.

12:27PM   15         The third element I want to talk to you a little bit

12:27PM   16    about, willfulness.  And Mr. Fabian referred to that as well.

12:28PM   17    That element has even less support in the proof in this

12:28PM   18    particular case than the issue about reasonable behavior,

12:28PM   19    reasonable force.

12:28PM   20         Willfulness, as His Honor will tell you, requires the

12:28PM   21    prosecution to prove that Corey acted intentionally with a bad

12:28PM   22    purpose or an evil motive.  That's what you'll be told, all

12:28PM   23    right?  Listen to what His Honor will tell you on that score;

12:28PM   24    specific intent to deprive Ford of a federal constitutional

12:28PM   25    right.

12:28PM   1    So, not only must you find that the force was

12:28PM   2  unreasonable, if you found it was unreasonable -- and I submit

12:28PM   3  you can't -- you still have to find beyond a reasonable doubt

12:28PM   4  that there was evil or bad purpose and that his conduct that

12:28PM   5  night was specifically designed to deprive him of a federal

12:28PM   6  Constitutional right.  Think about that for a moment.

12:28PM   7    Think about that for a moment.  Think about all the

12:28PM   8  context with Ford at Indulge and Chippewa, in the middle of

12:28PM   9  the street.  The confrontations in front of Indulge with Colon

12:28PM  10  and the sneaking around in the parking lot, the willingness to

12:29PM  11  join the fight and Corey going up there to stop him from

12:29PM  12  joining the fight, just like Munoz said.  I thought he was

12:29PM  13  going to join them.  I put my arms out.

12:29PM  14    A police officer has got a sworn obligation to make

12:29PM  15  sure he doesn't get into that fight.  He goes towards him as

12:29PM  16  he's supposed to with a full-handed grip in the right way and

12:29PM  17  the baton gets grabbed.  That's end of case.  His intent at

12:29PM  18  that time clearly does not have an evil purpose or a bad

12:29PM  19  motive.  He doesn't even know Devin Ford.  He doesn't know who

12:29PM  20  he is.  He has no animus.  There's no malice between the two

12:29PM  21  of them.  He's doing his job, making sure he doesn't join that

12:29PM  22  fight, better than Munoz can do that job.

12:29PM  23    A legitimate law enforcement objective, their witness

12:29PM  24  Captain Pat Mann said.  I asked him, is breaking up a fight or

12:29PM  25  stopping someone from getting into a fight, is that a

12:29PM   1    legitimate law enforcement objective?  Absolutely, yes.

12:29PM   2    Without hesitation.  Absolutely.

12:29PM   3            His Honor will tell you, with respect to this

12:29PM   4    willfulness count, look at the words of Corey Krug.  Look at

12:30PM   5    what he said.  Well, there's not much there in the record.

12:30PM   6    There is something that someone mentioned where he said, I

12:30PM   7    thought I told you -- or at some point when he said to them,

12:30PM   8    why did you come back, all right?  There was an F-bomb or two

12:30PM   9    in there.  I agree, okay?  But those words, in and of

12:30PM   10   themselves, don't satisfy a claim of malice.  They don't

12:30PM   11   satisfy the kind of willful conduct designed to deprive him of

12:30PM   12   a Constitutional right.

12:30PM   13           His experience, His Honor will say, take a look at

12:30PM   14   that, all right?  Well, we know from the proof in this record

12:30PM   15   that Corey's been an officer since the year 2000.  So, as of

12:30PM   16   the date of this particular incident, he has been an officer

12:30PM   17   14 years.

12:30PM   18           They read into the record an excerpt from one of his

12:30PM   19   transcripts.  Into that record what they read is a September

12:30PM   20   14th, 2012 statement.  Corey Krug has made thousands of

12:30PM   21   arrests without incident.  Thousands of arrests without

12:31PM   22   incident.  He's the cop you want out there working hard for

12:31PM   23   you in this community.

12:31PM   24           You're also allowed to look at the surrounding

12:31PM   25   circumstances and the totality of circumstances to decide

34

12:31PM 1   whether or not that adds up to what is necessary to prove

12:31PM 2   willfulness, bad purposes, evil motives, specific intent to

12:31PM 3   violate his Constitutional rights.  If you have even a

12:31PM 4   question about that, as to whether or not he was trying to

12:31PM 5   break up a fight or stop Ford from joining a fight, the case

12:31PM 6   is over.  Your sworn duty -- obligation is to return a verdict

12:31PM 7   of not guilty because that's a pretty high hurdle to have to

12:31PM 8   jump over, willfulness.

12:31PM 9        That's important when you're trying to decide if that

12:31PM 10  case belongs in this magnificent courtroom and whether or not

12:31PM 11  it's a willful act.  It's not just a question of whether it's

12:31PM 12  reasonable or not, you'll spend a lot of time on that.  It has

12:31PM 13  to, in addition to that, be willful, intentional, bad purpose,

12:31PM 14  evil motive.

12:32PM 15       And if you have conduct -- have a doubt for that

12:32PM 16  about that element, your obligation is to return a finding of

12:32PM 17  not guilty.  Your obligation is to send Corey back to his

12:32PM 18  family, his friends, his colleagues who have kept a vigil for

12:32PM 19  him and to declare, ladies and gentlemen, that proof beyond a

12:32PM 20  reasonable doubt and the presumption of innocence is alive and

12:32PM 21  well in this very courtroom.

12:32PM 22       I told you in my opening statement -- and I meant it

12:32PM 23  sincerely -- that you 12 people -- excuse me for ignoring you

12:32PM 24  for a moment.  You 12 people give life to the presumption of

12:32PM 25  innocence.  Without you, that's a word on a piece of paper.

12:32PM    1    It doesn't mean anything, all right?

12:32PM    2            Think about this.  When you vote in an election,

12:32PM    3    you're one of millions of people.  And when your vote counts

12:32PM    4    in this important matter, when you vote here, you're one of

12:32PM    5    12.  You're one of 12.  That's how important this matter is.

12:32PM    6    That's how important this matter is to our system.  That's how

12:33PM    7    important this matter is to Corey Krug.

12:33PM    8            The truth is, ladies and gentlemen, we are now a part

12:33PM    9    of your lives and you're a part of our lives.  His Honor will

12:33PM    10   talk to you about the presumption of innocence.  I won't go

12:33PM    11   over that.  But that continues throughout, even through your

12:33PM    12   deliberations and only is removed -- that presumption drapes

12:33PM    13   around him like a valuable cloak, only to be removed when the

12:33PM    14   prosecution proves beyond a reasonable doubt each and every

12:33PM    15   element, if that ever occurs.

12:33PM    16           The presumption of innocence, you will learn how

12:33PM    17   strong it is, is that the presumption of innocence alone is

12:33PM    18   sufficient to find Corey not guilty.  That's what it means to

12:33PM    19   us as citizens.  That's how valuable it is.  That's what it

12:33PM    20   means to all of us.

12:33PM    21           It may be that I've spoken too long to you and not

12:33PM    22   said enough.  You know, in many ways, I don't want to sit

12:34PM    23   down.  When I do sit down, the prosecution gets to get up.

12:34PM    24   They get the last word.  There's a reason for that.  They get

12:34PM    25   the last word because they have the burden of proof.  They're

                                                                    36

12:34PM  1  given that advantage because they have to prove this case

12:34PM  2  beyond a reasonable doubt, because they have to meet the

12:34PM  3  standards that His Honor, Judge Arcara, will tell you.  And

12:34PM  4  that's important.  And that's important.

12:34PM  5          I thank you for the time and effort you have provided

12:34PM  6  to us.  It's been an honor to appear for you -- to appear in

12:34PM  7  front of you.  I would just tell you this.  They may get the

12:34PM  8  last word between me and them, but you get the last word that

12:34PM  9  matters most.  And that's not one word, that's two words.

12:34PM  10 Corey Krug is not guilty of these charges.  That hasn't been

12:34PM  11 proven in this case.

12:34PM  12         Two points before I sit down.  He didn't take the

12:34PM  13 witness stand, okay?  That's on me, all right?  That's a call

12:35PM  14 I made.  His Honor will explain that to you as well and talk

12:35PM  15 to you about it.  I have told you that I don't believe this

12:35PM  16 case is proven beyond a reasonable doubt.  I wasn't going to

12:35PM  17 keep you one extra hour in this case to prolong this matter

12:35PM  18 because it hasn't been proven.

12:35PM  19         There is a lesser-included offense that they've asked

12:35PM  20 for.  We don't ask for that.  We don't ask for that.  They

12:35PM  21 want you to compromise.  They want you to compromise.  They

12:35PM  22 haven't been able to prove a major offense and now they offer

12:35PM  23 a lesser one for your consideration.  Don't buy that.  Don't

12:35PM  24 buy that.  This case hasn't been proven beyond a reasonable

12:35PM  25 doubt.

12:35PM    1            We will anxiously await the return of your verdict.

12:35PM    2    Return a verdict of not guilty on the charges.  Thank you for

12:35PM    3    your time and I appreciate being in front of you.

           4    (End of excerpt.)

1                   *    *    *    *    *    *    *

2

3              I certify that the foregoing is a

4       correct transcription of the proceedings

5       recorded by me in this matter.

6

7

8

9                          s/ Megan E. Pelka, RPR

10                         Court Reporter,

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25