```
 1                    UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF NEW YORK
 2

 3
     UNITED STATES OF AMERICA,       )
 4                                   ) Case No. 1:15-CR-00157
                                     )              (RJA)(HKS)
 5              Plaintiff,           )
                                     )
 6   vs.                             ) July 22nd, 2018
                                     )
 7   COREY KRUG,                     )
                                     )
 8              Defendant.           )

 9

10         TRANSCRIPT OF GOVERNMENT REBUTTAL SUMMATION
                      AND DEFENSE OBJECTIONS
11          BEFORE THE HONORABLE RICHARD J. ARCARA
              SENIOR UNITED STATES DISTRICT JUDGE
12

13
     APPEARANCES:
14
     For the Plaintiff:    JAMES P. KENNEDY, JR.
15                         UNITED STATES ATTORNEY
                           BY:  JOHN D. FABIAN, ESQ.
16                              AARON J. MANGO, ESQ.
                           ASSISTANT UNITED STATES ATTORNEYS
17                         138 Delaware Avenue
                           Buffalo, NY 14202
18
     For the Defendant:    CONNORS, LLP
19                         BY:  TERRANCE M. CONNORS, ESQ.
                                NICHOLAS A. ROMANO, ESQ,
20                         1000 Liberty Building
                           Buffalo, NY 14202
21
                           LIPSITZ GREEN SCIME CAMBRIA LLP
22                         BY:  HERBERT L. GREENMAN, ESQ.
                           42 Delaware Avenue, Suite 300
23                         Buffalo, NY 14202

24   Court Reporter:       MEGAN E. PELKA, RPR
                           Robert H. Jackson Courthouse
25                         2 Niagara Square
                           Buffalo, NY 14202
```

```
12:36PM    1              MR. MANGO:  Your Honor, may I proceed?
12:36PM    2              THE COURT:  Yes, please.
12:36PM    3              MR. MANGO:  Thirty seconds, ladies and gentlemen, is
12:36PM    4    all you need in this case.  The defense, of course, wants to
12:36PM    5    round out everything and look at things that don't matter.
12:36PM    6    But 30 seconds is all it took in this case for the defendant
12:36PM    7    to commit a crime; to violate Devin Ford's Constitutional
12:36PM    8    rights; to subject him to unreasonable and excessive force,
12:36PM    9    and to cause bodily injury in the process.  It's about 30
12:37PM   10    seconds.
12:37PM   11              The defense talks about, well, we didn't call
12:37PM   12    officers to the stand.  You didn't hear this or that.  You
12:37PM   13    don't need that.  What you needed was the video.  What you
12:37PM   14    needed was Devin Ford's testimony.  He said, I wasn't doing
12:37PM   15    anything.  What you needed was Bryant Munoz's testimony who
12:37PM   16    said, Devin Ford wasn't doing anything.  That's it.
12:37PM   17              What, are we going to call five officers to the stand
12:37PM   18    and have them say, what?  Yeah, I saw Devin Ford lifeless with
12:37PM   19    his back on the ground; no, I didn't see him kicking; no, I
12:37PM   20    didn't see him try to rip a nightstick out of his hand.
12:37PM   21              MR. GREENMAN:  Judge, I object to this.  I object
12:37PM   22    only because he's speculating now about witnesses he didn't
12:38PM   23    call.
12:38PM   24              THE COURT:  It's overruled.  You may continue.  It's
12:38PM   25    argument.  The jury will remember the evidence as it's
```

```
12:38PM    1   presented here in the courtroom.
12:38PM    2           MR. MANGO:  Let's start with those 30 seconds.  Let's
12:38PM    3   play those 30 seconds, Government Exhibit 40, from 8 minutes
12:38PM    4   38 seconds to 9 minutes and 8 seconds.  Those are the 30
12:38PM    5   seconds that we're dealing with.  Defense has made every
12:38PM    6   chance and every opportunity here -- and we'll go into that in
12:38PM    7   a minute -- during opening statement.  We'll talk about maybe
12:38PM    8   some things that Mr. Connors told you about.
12:39PM    9   (The recording was played.)
12:39PM   10           MR. MANGO:  Thank you.  And you've seen it a lot.
12:39PM   11   You can see it more if you want during your deliberations.
12:39PM   12   Did you see him kick?  Did you see him fight?  Did you see any
12:39PM   13   possibility that he was a threat to Defendant Krug?  Was he?
12:39PM   14   He wasn't a threat.  He was on the ground helpless.
12:40PM   15           Defense has now brought up, well, his leg was next to
12:40PM   16   his injured left knee, the defendant's injured left knee.  You
12:40PM   17   now have a medical record in evidence as to that.  Did the
12:40PM   18   left knee look injured?  This rupture of the distal
12:40PM   19   quadricepts tendon in the left knee, did it look ruptured or
12:40PM   20   injured when he was marching, nightstick in hand, ready to go
12:40PM   21   inflict his own justice?
12:40PM   22           Did it look injured when he took that same knee and
12:40PM   23   jammed it into the torso of Devin Ford?  Did it look injured
12:40PM   24   when he stepped back?  And he could have just kept stepping
12:40PM   25   back.  It could have been over, but what did he do?  He
```

| | | |
|---|---|---|
| 12:40PM | 1 | stepped back.  He used his knee for support.  Boom. |
| 12:41PM | 2 | But the defense would like to give you information |
| 12:41PM | 3 | that has no bearing here to try to get you to distract -- to |
| 12:41PM | 4 | be distracted from those critical 30 seconds and what was |
| 12:41PM | 5 | actually happening during those 30 seconds.  In one respect, |
| 12:41PM | 6 | the defense, in their closing, had argued about Bryant Munoz |
| 12:41PM | 7 | and what he said.  His hand was out.  He believed Ford was |
| 12:41PM | 8 | going to get in a fight.  That's not quite what he said.  He |
| 12:41PM | 9 | said, I was worried he might jump in.  I -- had his hand out, |
| 12:41PM | 10 | but he didn't push against me. |
| 12:41PM | 11 | But now, in the same breath, they want to discount |
| 12:41PM | 12 | what he said about Devin Ford not posing any danger.  How |
| 12:42PM | 13 | about a couple other examples during the trial of distraction, |
| 12:42PM | 14 | confusion.  The pepper spray.  There was -- we spent valuable |
| 12:42PM | 15 | time, your time -- and I do want to thank you on behalf of the |
| 12:42PM | 16 | government and all parties, obviously, for your time, your |
| 12:42PM | 17 | attention, your patience during this trial -- but we took |
| 12:42PM | 18 | valuable time, your time, to talk about whether the street was |
| 12:42PM | 19 | closed. |
| 12:42PM | 20 | You can see it on the video.  The police car is |
| 12:42PM | 21 | blocking Chippewa.  Why are we talking about that?  And like |
| 12:42PM | 22 | it would matter if there's a confrontation in front of a bar, |
| 12:42PM | 23 | whether the street is opened or not.  Yeah, that's not good. |
| 12:42PM | 24 | It's not good to have a confrontation in the middle of the |
| 12:42PM | 25 | street, but the fact that the street was closed or open |

```
12:42PM   1   doesn't matter.
12:42PM   2           How about the frame that Mr. Connors was able to
12:43PM   3   pause at the exact moment that it looked like Devin Ford was
12:43PM   4   stepping forward, but then, when you run it in realtime, he's
12:43PM   5   actually backing up.  So, although his right foot -- Devin
12:43PM   6   Ford's right food might appear like it's going forward, the
12:43PM   7   video shows his going backward.  And again, your recollection
12:43PM   8   of all of this controls, but it's just an attempt to distract
12:43PM   9   you from what really happened.
12:43PM  10           And how about Munoz?  Again, the argument during
12:43PM  11   closing is here, Munoz did everything right.  He saw Defendant
12:43PM  12   Krug march up and he did -- oh, hey.  Hi, Defendant Krug.  I'm
12:43PM  13   no danger to you.  Leave me alone, please.  That's not what
12:43PM  14   the video shows.  During my colleague's summation, he showed
12:43PM  15   you the video where Munoz is putting his hands up as Krug is
12:44PM  16   attacking Ford.  Boom, boom, boom, just like that.  They want
12:44PM  17   to slow it down.  They want to slow that video down.  Oh, I'm
12:44PM  18   not a danger.  That's not how it went down.
12:44PM  19           The kicking, we talked about that.  Wrestling the
12:44PM  20   nightstick away.  Did he really try to rest wrestle the
12:44PM  21   nightstick away?  If someone comes up on you, what do you
12:44PM  22   think your natural reaction is?  Someone comes out of your
12:44PM  23   blind -- you know, whatever you want to call it, your
12:44PM  24   peripheral vision.  You're blind-sided by someone going like
12:44PM  25   this (indicating) into your face.  What are you going to do?
```

| | | |
|---|---|---|
| 12:44PM | 1 | You're going to put your hands up.  Your hands are going to |
| 12:44PM | 2 | naturally touch the baton because you don't want to get choked |
| 12:44PM | 3 | out.  You don't want to get smashed in the head. |
| 12:45PM | 4 | And as you're falling to the ground, what else do you |
| 12:45PM | 5 | think you're going to do?  You think you're just going to let |
| 12:45PM | 6 | your lifeless body fall onto the ground and smash your head or |
| 12:45PM | 7 | are you going to try to grab onto something so you get, you |
| 12:45PM | 8 | know, a little protection?  I submit to you, you're going to |
| 12:45PM | 9 | grab onto that baton and hold onto it so you don't smash your |
| 12:45PM | 10 | head and start bleeding onto the concrete. |
| 12:45PM | 11 | Now, I mentioned already there were comments -- I |
| 12:45PM | 12 | took careful notes during Mr. Connors' closing argument, as I |
| 12:45PM | 13 | did during his opening.  He talked about a few things that you |
| 12:45PM | 14 | just didn't hear about.  He can't provide you evidence, ladies |
| 12:45PM | 15 | and gentlemen.  The only evidence comes from the witnesses who |
| 12:45PM | 16 | take that stand and the answers they provide you. |
| 12:46PM | 17 | So, hearing about Officer Vidal, for all you know, |
| 12:46PM | 18 | you don't know who Officer Vidal is and he has no role in this |
| 12:46PM | 19 | case.  Officer Foster, no, didn't hear from him.  You heard |
| 12:46PM | 20 | from the defense attorney during opening about they darted |
| 12:46PM | 21 | down an alley and looped back around.  No.  Didn't hear |
| 12:46PM | 22 | anything about that. |
| 12:46PM | 23 | You did hear, though, Mr. Munoz talk about, well, |
| 12:46PM | 24 | they were the -- Ford and his friend DeChent when we |
| 12:46PM | 25 | encountered them, they were closer to Pearl.  Yet, the |

| | | |
|---|---|---|
| 12:46PM | 1 | confrontation happened in the parking lot.  You heard Munoz |
| 12:46PM | 2 | say, after the jawing on the sidewalk, he tried to get back |
| 12:46PM | 3 | into Indulge.  Ford and DeChent just walked right by him the |
| 12:46PM | 4 | evidence, we suggest, shows. |
| 12:47PM | 5 | When they got to the end of Pearl Street, they turned |
| 12:47PM | 6 | around.  The parking lot is right to the corner.  They came |
| 12:47PM | 7 | through the parking lot.  They met up with Munoz and Colon, |
| 12:47PM | 8 | the sucker puncher. |
| 12:47PM | 9 | How about during the actual closing now?  You heard |
| 12:47PM | 10 | about -- I don't want to lift my shift up, but the guy with |
| 12:47PM | 11 | the belly showing, Mr. Connors you told you he wasn't arrested |
| 12:47PM | 12 | that night.  Guess what?  There's no evidence of that either, |
| 12:47PM | 13 | for or against.  You don't know.  He can't tell you that, so |
| 12:47PM | 14 | you don't know. |
| 12:47PM | 15 | How about Macy, the one who sprayed the pepper spray, |
| 12:47PM | 16 | that no use of force form was filed.  He doesn't know that. |
| 12:47PM | 17 | You don't know that.  There's no evidence to that.  Again, |
| 12:47PM | 18 | he's trying to distract and inject stuff that just does not |
| 12:48PM | 19 | matter to confuse and take you away from those critical 30 |
| 12:48PM | 20 | seconds and the two witnesses who provided that, the critical |
| 12:48PM | 21 | information that you needed, Munoz and Ford, that he wasn't |
| 12:48PM | 22 | doing anything. |
| 12:48PM | 23 | Then, what you have to do is you take Captain Mann's |
| 12:48PM | 24 | testimony in light of their two testimonies.  What did Captain |
| 12:48PM | 25 | Mann tell you?  Captain Mann said, you don't use force on a |

12:48PM  1   compliant witness or subject.  You just don't.  Think about
12:48PM  2   that, ladies and gentlemen.  Have you ever been talking to
12:48PM  3   somebody on the street, maybe somebody interprets that as
12:48PM  4   fighting?  If an officer is within close distance, would you
12:48PM  5   have expected to get, as one witness said, pancake blocked out
12:48PM  6   of nowhere?
12:48PM  7           I could see if Devin Ford was fists and fighting and
12:48PM  8   fighting and punching.  You grab him, you take him out.  Take
12:49PM  9   him out of the situation.  You move him away.  Do you tackle
12:49PM  10  him and beat him with a nightstick?  I'll get back to this
12:49PM  11  point.  Is that how we want our police officers to behave;
12:49PM  12  tackle first, ask questions later?
12:49PM  13          Now, you heard about a challenge to the evidence
12:49PM  14  about whether Devin Ford was injured or not and that's why
12:49PM  15  there's what's called a lesser-included offense.  Now,
12:49PM  16  Mr. Connors says, we're asking for it.  They're not asking for
12:49PM  17  it.  Guess what?  There's no evidence of that, either.  The
12:49PM  18  Judge is the one who gives you that, okay?
12:49PM  19          As a matter of law, if the elements of a lesser
12:49PM  20  charge, which is deprivation of civil rights without bodily
12:50PM  21  injury -- so, a police officer, someone acting under color of
12:50PM  22  law, engages in unreasonable and excessive force and does so
12:50PM  23  willfully, period, those three elements, that's the crime of
12:50PM  24  deprivation of rights without bodily injury.  You're going to
12:50PM  25  be told you can find the defendant guilty of that.  If you

| | | |
|---|---|---|
| 12:50PM | 1 | find there was bodily injury, you find him guilty of with |
| 12:50PM | 2 | bodily injury.  It's not about who is asking for it.  It's |
| 12:50PM | 3 | about what the law provides to you. |
| 12:50PM | 4 | Now, Devin Ford -- a lot was made out of Devin Ford; |
| 12:50PM | 5 | his credibility, tweets that he sent out.  Four tweets.  Why |
| 12:50PM | 6 | he didn't come sooner or say that he was beat by the police |
| 12:50PM | 7 | sooner?  He's a young minority kid who was just beat by a |
| 12:51PM | 8 | police officer.  He doesn't know there's a video.  But when a |
| 12:51PM | 9 | video does surface, he says, yo, that's me.  Not yoo-hoo. |
| 12:51PM | 10 | Again, mischaracterization.  Yo, that's me. |
| 12:51PM | 11 | Earlier on that Thanksgiving Day -- later in the day, |
| 12:51PM | 12 | he said, never drinking again.  You saw it.  You got to |
| 12:51PM | 13 | evaluate his credibility, why he might have said that, whether |
| 12:51PM | 14 | this incident still emotionally affects him.  Clearly, it |
| 12:51PM | 15 | does.  His civil lawsuit is still pending.  You know he has a |
| 12:51PM | 16 | claim for emotional distress, substantial emotional distress. |
| 12:51PM | 17 | He was seen on video being beaten by police |
| 12:51PM | 18 | officers -- a police officer.  Of course he's got substantial |
| 12:51PM | 19 | emotional distress.  Good for him to file a lawsuit.  Again, |
| 12:52PM | 20 | do we want our police to act in the manner that Defendant Krug |
| 12:52PM | 21 | contacted that night?  Do we want the City of Buffalo Police |
| 12:52PM | 22 | Department to stand by those officers?  And he's -- and Ford's |
| 12:52PM | 23 | being challenged for filing a suit. |
| 12:52PM | 24 | You saw Ford on the stand.  You can assess his |
| 12:52PM | 25 | credibility.  We've got four tweets.  He said some of them |

12:52PM 1 were song lyrics, but guess what?  You don't need to go
12:52PM 2 through mental gymnastics to build up or destroy Ford from a
12:52PM 3 credibility standpoint.  The video speaks for itself.  Munoz's
12:52PM 4 testimony helps you interpret the video.  Ford's testimony
12:52PM 5 helps you interpret the video.  And then Captain Pat Mann
12:52PM 6 says, you can't use force on a compliant subject.
12:53PM 7          Now, there was some question about, if you are
12:53PM 8 walking up the steps of the courthouse and you saw Devin Ford,
12:53PM 9 I didn't quite follow that, but what I can tell you is, when
12:53PM 10 you do walk up the steps of the courthouse, you see the
12:53PM 11 Constitution of the United States etched in the building.
12:53PM 12 That's what that is, seven times, but it's etched there.
12:53PM 13          And the defense attorney talked about how there's
12:53PM 14 this presumption of innocence that cloaks you -- if I have
12:53PM 15 my -- drapes around you like a -- drapes around Defendant Krug
12:53PM 16 like a cloak.  We have -- we all have something that drapes
12:53PM 17 around us.  It's the Constitution of the United States of
12:53PM 18 America.  It's what our country is built on.
12:53PM 19          Devin Ford had that cloak on him that night.  The
12:54PM 20 defendant had that cloak on him.  We all have that cloak on us
12:54PM 21 right now.  And in opening, what did the defendant tell you;
12:54PM 22 that there's seven precious words, beyond a reasonable doubt
12:54PM 23 and presumption of innocence.  Those are certainly important
12:54PM 24 principles in our criminal justice system.  Not trying to
12:54PM 25 discount that, but what is the most precious words?  There's

```
12:54PM   1   four:  Due process of law, because that cloak we all wear
12:54PM   2   gives us due process of law.  That allows us to walk around in
12:54PM   3   the world, in the United States at least, and not get randomly
12:54PM   4   attacked by a police officer.  It allows us due process of
12:54PM   5   law.
12:55PM   6            The defendant, as my colleague said, he got his due
12:55PM   7   process of law.  He's got a trial.  You'll soon go and
12:55PM   8   deliberate regarding a verdict, But what happened to Devin
12:55PM   9   Ford's due process of law, that cloak that he was wearing that
12:55PM  10   night?  The defendant pulled it off him.
12:55PM  11            Now, you are 12 important people.  The defendant made
12:55PM  12   a comment again that you are the 12 most important people in
12:55PM  13   his life.  In opening he said that and he referred to it here
12:55PM  14   in closing.  That might be so.  You might be the 12 most
12:55PM  15   important people in his life, but you are also the 12 most
12:56PM  16   important people to decide how do we want and whether police
12:56PM  17   officers can act as if they're above the law.  Can they
12:56PM  18   randomly pick out a person because he's got a Hawaiian shirt
12:56PM  19   on?  That's probably why Devin Ford got targeted, I suggest to
12:56PM  20   you, because he was the one who Krug could remember.
12:56PM  21            And before I keep going, what exactly did Devin Ford
12:56PM  22   do that night in terms of the totality of the circumstances
12:56PM  23   that Mr. Connors wants you to take into account during his
12:56PM  24   closing argument he mentioned?  Well, we know Defendant Krug,
12:56PM  25   I would imagine, saw Devin Ford on the outskirts of that
```

12:56PM 1    initial confrontation in front of Indulge or pepper spray.
12:56PM 2    Clearly, it's one of the DeChents' pink shirt and Colon who
12:57PM 3    were at the center of that altercation.  So, we've got one
12:57PM 4    interaction between Krug and Ford.  Ford's on the outside of
12:57PM 5    this.
12:57PM 6            Okay.  We got another interaction on the sidewalk.
12:57PM 7    Remember jawing?  Colon, I'll knock you the fuck out.  Pardon
12:57PM 8    my language.  His buddy, holding him back, almost pushing him
12:57PM 9    down the street.  Who is in the video?  Who is he talking to?
12:57PM 10   That's Sean DeChent.  Did you hear anything from Devin Ford?
12:57PM 11   You don't -- one, you don't even see him in the video.  He
12:57PM 12   doesn't say anything.  So, we've got another totality of the
12:57PM 13   circumstances where Devin Ford seems to have done nothing.
12:57PM 14           And then, we go to the final 30 seconds.  What did
12:57PM 15   Krug see happening there as he marched up, nightstick in
12:57PM 16   stand?  He saw two guys standing against a car where their
12:58PM 17   buddies were fighting and got broken up through officers who
12:58PM 18   did not beat, who did not tackle, who did not strike with a
12:58PM 19   nightstick.  That's what -- that's the totality of the
12:58PM 20   circumstances that defense counsel wants you to now say,
12:58PM 21   police officers can just jump in and attack somebody.
12:58PM 22           So, you've got to decide what you saw in the video.
12:58PM 23   Are you going to condone that?  Are you going to allow
12:58PM 24   Defendant Krug, a police officer, to be above the law?  You
12:58PM 25   are the 12 most important people to say how we want our police

```
12:58PM   1   officers to behave.
12:58PM   2               You, ladies and gentlemen, you come from different
12:58PM   3   walks of life.  You're a cross-section of the community.
12:59PM   4   Obviously, we took a long time.  We went in passed the 7
12:59PM   5   o'clock hour making sure that you could fairly and impartially
12:59PM   6   evaluate the circumstances in this case and you now have the
12:59PM   7   important task to decide that the defendant's behavior is
12:59PM   8   unquestionably not how we want our police officers to behave.
12:59PM   9               Like everyone else, the defendant is not above the
12:59PM  10   law.  So, when you apply those four precious words, due
12:59PM  11   process of law, and what it means to really have due process
12:59PM  12   of law, there's only one verdict and that's to find the
12:59PM  13   defendant guilty; guilty on the greater charge and if not,
01:00PM  14   guilty on the lesser charge.  Thank you again for your time.
01:00PM  15               THE COURT:  All right.  Ladies and gentlemen, I just
01:00PM  16   got a note from Ms. Daniels.  She felt that you need a break
01:00PM  17   here to have kind of a refreshment, so I think she's got an
01:00PM  18   apple or a granola bar or something, so it's arrived, I guess.
01:00PM  19   So, we'll take a break and when you come back, we'll have the
01:00PM  20   charge that I will give you that you must follow.
01:00PM  21   (The jury left the room at 1:00 p.m.)
01:01PM  22               THE COURT:  They're going to have the lunch.  We'll
01:01PM  23   meet back here at 2 o'clock.
01:01PM  24               MR. GREENMAN:  Your Honor, may I put on the record a
01:01PM  25   couple things with respect to the rebuttal testimony that was
```

```
01:01PM   1   said?
01:01PM   2          THE COURT:  What?
01:01PM   3          MR. GREENMAN:  I'd like to put on the record some
01:01PM   4   things that Mr. Mango said during rebuttal that I think need
01:01PM   5   to be taken note of, Your Honor.  It'll take only a couple
01:01PM   6   seconds.
01:01PM   7          THE COURT:  All right.  Go ahead.
01:01PM   8          MR. GREENMAN:  Your Honor, the first thing he did is,
01:01PM   9   he talked with the jury and he indicated that Mr. Connors had
01:01PM  10   wasted their precious time.  It's totally improper for him to
01:01PM  11   say something like that.  He talked about the fact and then he
01:01PM  12   started saying that Ford acted in a certain way because he
01:01PM  13   didn't want to let his lifeless body go to the ground and
01:01PM  14   smash his head.
01:01PM  15          He talked about Officer Vidal and he said that
01:01PM  16   Mr. Connors had mentioned in opening statement what Vidal was
01:01PM  17   going to talk to, then he criticized Mr. Connors for it.  What
01:01PM  18   happened here is that the government -- Vidal testified at the
01:01PM  19   first trial.  The government put on its witness list Officer
01:02PM  20   Vidal.  The government indicated what he was going to testify
01:02PM  21   to and Mr. Connors was totally within his right to anticipate
01:02PM  22   that Vidal was going to testify a certain way when he
01:02PM  23   testified on the witness stand, consistent with the way he
01:02PM  24   testified before.  And at the last minute, or shortly before
01:02PM  25   the government rested, they decided we're not going to call
```

```
01:02PM    1    Vidal.  So, Mr. Connors is being criticized for what the
01:02PM    2    government said about a witness the government said they were
01:02PM    3    going to call and Mr. Connors talked about the fact that he
01:02PM    4    expected that Vidal would testify in a certain way.  I don't
01:02PM    5    think he should be criticized for that type of conduct.
01:02PM    6              He testified that there was no evidence that there
01:02PM    7    was no use of force form from the pepper spray by Officer
01:02PM    8    Macy.  In fact, Officer Lloyd did testify that there was no
01:02PM    9    use of force form with respect to the pepper spray on the
01:02PM   10    street.
01:03PM   11              He talked about the lesser-included offense,
01:03PM   12    Mr. Connors saying that they wanted the lesser-included
01:03PM   13    offense and they stood up and said boldly, I think, we don't
01:03PM   14    want the charge down to the lesser-included offense, it's the
01:03PM   15    Judge.  Obviously, you've ruled that it's appropriate to do
01:03PM   16    it, but it's disingenuous and inappropriate for the government
01:03PM   17    to say, we don't want it when, in fact, they did want it.  And
01:03PM   18    it was unfair comment, I believe.
01:03PM   19              And then, he talks about police officers and what he
01:03PM   20    does, Judge, is he challenges the jury to say, this is all
01:03PM   21    about what other police officers can do.  So, you should find
01:03PM   22    him guilty, suggesting that they can control what other police
01:03PM   23    officers can do.  It's got nothing to do with other police
01:03PM   24    officers, Judge and it was improper comment.  When he's talked
01:03PM   25    about other officers.  He should have left his comments to
```

01:04PM   1   what happened that evening and again, he suggested that you
01:04PM   2   are the people to show how we want our police officers to
01:04PM   3   behave.  That's what he said.  That's improper conduct, Judge,
01:04PM   4   it really is.
01:04PM   5          Now, I sort of got the impression when I objected the
01:04PM   6   first time and the Court made your ruling, I felt I couldn't
01:04PM   7   interrupt Mr. Mango on what I have here, seven separate
01:04PM   8   occasions, but I believe, Your Honor, in our respects, that
01:04PM   9   those separate occasions were inappropriate and went beyond
01:04PM  10   the bounds of fair comment and would ask the Court to take
01:04PM  11   appropriate action.
01:04PM  12          THE COURT:  Mr. Mango, you want to respond?
01:04PM  13          MR. MANGO:  Judge, thank you.  Judge, we're opposed
01:04PM  14   to any -- I don't know what curative request the defense is
01:04PM  15   making, but we're opposed to any such request.  All of the
01:04PM  16   comments I made, Judge, were in direct response and argument
01:05PM  17   to the defendant's closing argument.
01:05PM  18          The defendant made -- Mr. Connors made a statement
01:05PM  19   about wasting time.  I don't want to waste your time with
01:05PM  20   calling, I think it was, respect to Defendant Krug to testify.
01:05PM  21   I obviously wasn't going to talk about that, but he talked
01:05PM  22   about wasting time and I thought it was fair comment to argue
01:05PM  23   that point.
01:05PM  24          Vidal's testimony, Judge, we told them two days ahead
01:05PM  25   of time that we were likely not going to be calling Vidal.

01:05PM  1   They could have called him if they wanted.  They've been in
01:05PM  2   close communication with Rodney Personius who is the attorney
01:05PM  3   for Vidal.  They could have had him here.
01:05PM  4          The pepper spray incident, my recollection was, Macy
01:05PM  5   did not testify in this case, so we don't know if he filed a
01:05PM  6   use of force form or not.  And it was certainly a different
01:05PM  7   file.  Lieutenant Lloyd testified that in the Devin Ford IAD
01:06PM  8   file, there was no use of force form with respect to what
01:06PM  9   happened between Defendant Krug and Devin Ford.
01:06PM  10         Judge, the argument about police officers, that's, in
01:06PM  11  the government's view, is all fair argument when you -- when
01:06PM  12  Mr. Connors makes claims of cloaking and a presumption of
01:06PM  13  innocence.  It was a comment on that, Judge.  I mean, the
01:06PM  14  record is what it is.  It's done now.  I can't add any more
01:06PM  15  commentary other than I thought it was all fair argument
01:06PM  16  within the bounds of responding to defense closing, Judge.
01:06PM  17         THE COURT:  All right.
01:06PM  18         MR. GREENMAN:  May I just have one second, Judge?
01:07PM  19  We're using the one lawyer rule, so Mr. Connors wrote it out
01:07PM  20  for me.  Judge, my comments about Mr. Mango's comments or
01:07PM  21  suggestions were that, what he said to the jury is that -- and
01:07PM  22  he argued that it's the jury who should decide how we want our
01:07PM  23  officers to behave.  That's another -- and suggestion that he
01:07PM  24  made which we believe is totally inappropriate, Judge.  It's
01:07PM  25  not what the jury is going to do.  The jury is supposed to

```
01:07PM   1   decide the guilt or innocence of Officer Krug; not to suggest
01:07PM   2   that what they're going to do is to decide how we want our
01:07PM   3   other officers to behave.
01:07PM   4             THE COURT:  All right.  Your objection is noted.  The
01:07PM   5   jury is having lunch so, I'll bring them back here about 2
01:07PM   6   o'clock.
01:07PM   7             MR. MANGO:  Yes, Your Honor.
01:08PM   8             THE COURT:  Two o'clock.
01:08PM   9   (Proceedings ended.)
```

```
 1                  *      *      *      *      *      *      *

 2

 3              I certify that the foregoing is a

 4         correct transcription of the proceedings

 5         recorded by me in this matter.

 6

 7

 8

 9                                    s/ Megan E. Pelka, RPR

10                                    Court Reporter,
```